1   ROBERT W. FERGUSON
    Attorney General
2   DANIEL J. JEON
    DAVID WARD
3   Assistant Attorneys General
    Attorney General of Washington
4   Civil Rights Division
    800 Fifth Avenue, Suite 2000
5   Seattle, WA 98104
    (206) 464-7744
6

7

8
                    **UNITED STATES DISTRICT COURT**
9                   **EASTERN DISTRICT OF WASHINGTON**

10  UNION GOSPEL MISSION OF              NO. 1:23-cv-3027-MKD
    YAKIMA, WASH.,
11                                       DEFENDANTS' MOTION
                Plaintiff,               TO DISMISS
12
                                         MAY 31, 2023 AT 9 AM
13      v.                               WITH ORAL ARGUMENT

14  ROBERT FERGUSON, in his
    official capacity as Attorney
15  General of Washington State;
    ANDRETA ARMSTRONG, in
16  her official capacity as Executive
    Director of the Washington State
17  Human Rights Commission; and
    DEBORAH COOK,
18  GUADALUPE GAMBOA, JEFF
    SBAIH, and HAN TRAN, in
19  their official capacities as
    Commissioners of the
20  Washington State Human Rights
    Commission,
21
                Defendants.
22

DEFENDANTS' MOTION

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  RELEVANT FACTUAL BACKGROUND ...................................... 2

III. ARGUMENT ..................................................................... 5

    A.  UGM Lacks Standing .................................................. 6

        1.  UGM fails to allege injury in fact ........................... 6

        2.  UGM fails to allege facts establishing defendants have caused its alleged injuries ................................... 10

        3.  UGM's alleged injuries are not redressable ........................ 12

    B.  UGM's Claims Are Not Ripe for Review ................................ 17

IV.  CONCLUSION ................................................................. 20

DEFENDANTS' MOTION TO
DISMISS

i

1                    **TABLE OF AUTHORITIES**

2

3                       <u>Cases</u>

4 *Abbott Lab'ys v. Gardner,*
   387 U.S. 136 (1967) ...................................................................................17

5 *Alaska Right to Life Pol. Action Comm. v. Feldman,*
   504 F.3d 840 (9th Cir. 2007) ...............................................................17, 18

6

7 *Americopters, LLC v. F.A.A.,*
   441 F.3d 726 (9th Cir. 2006) .......................................................................5

8 *Arizona v. Yellen,*
   34 F.4th 841 (9th Cir. 2022) ................................................................6, 8, 9

9

10 *ASARCO, Inc. v. Kadish,*
   490 U.S. 605 (1989) ...................................................................................15

11 *Ass'n of Irritated Residents v. EPA,*
   10 F.4th 937 (9th Cir. 2021) .........................................................................6

12

13 *Cal. Trucking Ass'n v. Bonta,*
   996 F.3d 644 (9th Cir. 2021) .......................................................................9

14 *California v. Texas,*
   141 S. Ct. 2104 (2021) ................................................................................5

15

16 *City of Boerne v. Flores,*
   521 U.S. 507 (1997) ................................................................................7, 18

17 *Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ..............................................................................10, 11

18

19 *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) .....................................................................................6

20 *Gonzales v. Gorsuch,*
   688 F.2d 1263 (9th Cir. 1982)....................................................................12

21

22 *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
   565 U.S. 171 (2012) ...................................................................................19

DEFENDANTS' MOTION TO DISMISS       ii

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................................6, 11

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018)...........................................................12

*Noble v. Dibble*,
    205 P. 1049 (Wash. 1922)...................................................................16

*Ockletree v. Franciscan Health Sys.*,
    317 P.3d 1009 (Wash. 2014)...............................................................14

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) .................................................................19, 20

*Safer Chems., Healthy Fams. v. EPA*,
    943 F.3d 397 (9th Cir. 2019)................................................................6

*Sch. of the Ozarks, Inc. v. Biden*,
    41 F.4th 992 (8th Cir. 2022) .......................................................8, 9, 10

*Scott v. Pasadena Unified Sch. Dist.*,
    306 F.3d 646 (9th Cir. 2002)..............................................................18

*Seattle Pac. Univ. v. Ferguson*,
    No. 22-35986 (9th Cir. 2023)................................................................4

*State v. Barefield*,
    756 P.2d 731 (Wash. 1988)................................................................15

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000)...................................................8, 18, 19

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ...........................................................17

*Warth v. Sedlin*,
    422 U.S. 490 (1975) ..........................................................................17

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013)............................................................10

DEFENDANTS' MOTION TO
DISMISS

iii

*Whole Women's Health v. Jackson*,
   142 S. Ct. 522 (2021) .............................................................................7

*Woods v. Seattle's Union Gospel Mission*,
   481 P.3d 1060 (Wash. 2021), *cert. denied*,
   142 S. Ct. 1094 (2022) ..................................................................passim

Constitutional Provisions

U.S. Const. art. III..............................................................................passim

U.S. Const. art. III, § 2.............................................................................5

Statutes

Wash. Rev. Code § 49.60.030(2).............................................................16

Wash. Rev. Code § 49.60.040(11) ..........................................................13

Other Authorities

*AG Ferguson: Judge Dismisses Seattle Pacific University's Lawsuit to Stop
   Attorney General's Inquiry Into Discrimination Complaint*,
   Wash. State Office of the Att'y Gen. (Oct. 26, 2022),
   https://www.atg.wa.gov/news/news-releases/ag-ferguson-judge-dismisses-
   seattle-pacific-university-s-lawsuit-stop-attorney.......................................3, 4

Phil Ferolito, *Yakima Union Gospel Mission Sues State Over Sexual
   Orientation Hiring Laws*, Yakima Herald-Republic (Mar. 3, 2023)
   https://www.yakimaherald.com/news/local/yakima-union-gospel-mission-
   sues-state-over-sexual-orientation-hiring-laws/article_f9a754ba-b951-11ed-
   a639-e3defb9cb76.html............................................................................4

Rules

Fed. R. Civ. P. 12(b)(1) ...........................................................................5

DEFENDANTS' MOTION TO
DISMISS

iv

## I.    INTRODUCTION

Plaintiff Union Gospel Mission of Yakima (UGM)—a stranger to Defendants—inexplicably filed this action asserting multiple First Amendment violations and requesting declaratory and injunctive relief "enjoining Defendants from enforcing (including through investigations)" the Washington Law Against Discrimination (WLAD) against UGM. ECF No. 1 at 51. But Defendants have had no dealings with UGM, nor is it under investigation by Defendants concerning any potential violation of the WLAD, as illustrated by the absence of any such allegations in the Complaint. Instead, the only conduct by Defendants alleged in the Complaint is the Attorney General's inquiry into the employment practices of an unrelated entity (Seattle Pacific University) on the other side of the state, "[w]ithin the last year." ECF No. 1 ¶ 10. Devoid of any supporting factual allegations, the only basis for UGM's Complaint is its speculation that it may someday become a "target" of some law enforcement official in the state. *Id*. ¶ 11. UGM's naked speculation falls woefully short of creating a justiciable case or controversy that may be adjudicated by this Court.

What *is* clear from UGM's Complaint is that it disagrees with the Washington Supreme Court's decision two years ago in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021), *cert. denied*, 142 S. Ct. 1094 (2022). *Woods* interpreted the WLAD's religious employer exemption as applied to another member of the Union Gospel Mission network. *Id*. UGM transparently wishes to use this lawsuit as a vehicle to re-litigate the Washington Supreme

DEFENDANTS' MOTION TO DISMISS

1

1  Court's decision in *Woods* and "[d]eclare that the recent narrowed interpretation
2  of the WLAD" is unconstitutional. *See* ECF No. 1 at 50.

3      But federal district courts are not courts of direct review of state court
4  decisions. Plaintiff's generalized complaints do not create an Article III case or
5  controversy that would confer this federal Court with jurisdiction. Because
6  Plaintiff lacks standing and presents no issues that are ripe for review, this case
7  should be dismissed with prejudice.

8          **II.    RELEVANT FACTUAL BACKGROUND**

9      Washington courts regularly interpret the scope and application of the
10  WLAD, including the Washington Supreme Court's 2021 decision in *Woods* that
11  serves as the basis of UGM's lawsuit. In *Woods*, a case involving the
12  employment-discrimination provisions of the WLAD, the Washington Supreme
13  Court considered whether the statute's exemption of "religious or sectarian
14  organization[s] not organized for private profit" from the definition of
15  "employer[s]" complied with the Washington Constitution. The state high court
16  held that the provision was facially constitutional, but that it may be
17  unconstitutional as applied to particular employees who do not have the job duties
18  of "ministers," as defined by the U.S. Supreme Court's First Amendment
19  doctrine. *Woods*, 481 P.3d at 1070; *see also id*. at 1065 n.2 (holding that the court
20  does "not opine on the effect of this decision on *every* prospective employee").
21  The U.S. Supreme Court denied a petition for certiorari pursued by the same law

22

DEFENDANTS' MOTION TO
DISMISS

2

1 firm that now represents UGM in the present action. *See Woods*, 142 S. Ct. at

2 1094.

3       In May 2022, the employment practices at Seattle Pacific University

4 (SPU), a religious educational institution in Seattle, came to the AGO's attention

5 via constituent correspondence. Mot. to Dismiss at 10, *Seattle Pac. Univ. v.*

6 *Ferguson*, No. 3:22-cv-5540-RJB (W.D. Wash. Sept. 16, 2022), ECF No. 18.

7 Numerous SPU students and faculty raised concerns that the University's

8 employment policies may violate the WLAD's prohibition on employment

9 discrimination based on sexual orientation. *Id*. In June 2022, the AGO sent a

10 private letter to SPU's general counsel and four employees, asking four questions

11 that would help clarify, based on the facts specific to SPU's hiring practices,

12 whether or how the WLAD would apply. *Id*. at 11. The letter made clear that the

13 AGO has "not made any determination as to whether the University has violated

14 any law," explicitly acknowledged the ministerial exception contained in the

15 WLAD through a citation to *Woods*, and did not threaten any legal action if SPU

16 did not comply with the information request. *Id*.

17       SPU responded to the letter by filing suit against the AGO in the U.S.

18 District Court for the Western District of Washington, alleging First Amendment

19 violations and requesting declaratory and injunctive relief. *See* Complaint, *Seattle*

20 *Pac. Univ. v. Ferguson*, 3:22-cv-5540-RJB (W.D. Wash. July 27, 2022),

21 ECF No. 1. Judge Bryan dismissed that lawsuit for lack of standing and on

22 *Younger* abstention grounds. *See AG Ferguson: Judge Dismisses Seattle Pacific*

1  *University's Lawsuit to Stop Attorney General's Inquiry Into Discrimination*

2  *Complaint*, Wash. State Office of the Att'y Gen. (Oct. 26, 2022).[1] SPU has

3  appealed the dismissal, and the matter is pending in the Ninth Circuit. *See Seattle*

4  *Pac. Univ. v. Ferguson*, No. 22-35986 (9th Cir. 2023).

5       Months later, out of the blue, UGM filed this action against the Attorney

6  General, the Executive Director and four individual Commissioners of the

7  Washington State Human Rights Commission (Commission), a state agency

8  authorized to enforce the WLAD. Defendants have confirmed publicly that UGM

9  is not under investigation by any Defendant for any alleged violation of the

10  WLAD. *See* Phil Ferolito, *Yakima Union Gospel Mission Sues State Over Sexual*

11  *Orientation Hiring Laws*, Yakima Herald-Republic (Mar. 3, 2023).[2] UGM has

12  not alleged that, since the *Woods* decision, the AGO or the Commission have

13  ever determined that any religious employer (whether UGM or anyone else)

14  violated the WLAD for engaging in employment practices that fall within First

15  Amendment protections. Nonetheless, UGM alleges five First Amendment

16  violations, pleading claims under the Religion Clauses, Free Exercise Clause,

17  _____

18      [1] Available at: https://www.atg.wa.gov/news/news-releases/ag-ferguson-

19  judge-dismisses-seattle-pacific-university-s-lawsuit-stop-attorney.

20      [2] Available at: https://www.yakimaherald.com/news/local/yakima-union-

21  gospel-mission-sues-state-over-sexual-orientation-hiring-

22  laws/article_f9a754ba-b951-11ed-a639-e3d7efb9cb76.html.

**DEFENDANTS' MOTION TO DISMISS**     4

1    Establishment Clause, Expressive Association protection, and Free Speech

2    Clause.

3                              **III.    ARGUMENT**

4         UGM alleges no action whatsoever that Defendants have taken against

5    UGM, let alone any conduct giving rise to a justiciable controversy under

6    Article III. Defendants respectfully move to dismiss this action under Federal

7    Rule of Civil Procedure 12(b)(1). Dismissal pursuant to Rule 12(b)(1) is

8    warranted because UGM lacks Article III standing and any purported controversy

9    is not remotely ripe for review.

10        Federal courts' jurisdiction is constitutionally limited to "cases" and

11   "controversies." U.S. Const. art. III, § 2. The doctrines of standing and ripeness

12   reflect that constitutional requirement, and exist to prevent federal courts from

13   being conscripted into a forum for parties to seek advisory opinions that provide

14   no legal relief. *See, e.g.*, *California v. Texas*, 141 S. Ct. 2104, 2116 (2021). When

15   considering a Rule 12(b)(1) challenge to the Court's subject matter jurisdiction,

16   this Court "need not assume the truthfulness of the complaint" and may make

17   legal judgments as to the finality of a party's actions and its jurisdiction over the

18   claims. *See Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

19   Because UGM's Complaint is based on nothing more than speculation about

20   conduct it alleges Defendants may take in the future, the Complaint should be

21   dismissed under Rule 12(b)(1) for lack of standing and ripeness.

22

DEFENDANTS' MOTION TO                    5          ATTORNEY GENERAL OF WASHINGTON
DISMISS                                                          Civil Rights Division
                                                              800 Fifth Avenue, Suite 2000
                                                                  Seattle, WA  98104
                                                                    (206) 464-7744

A.    **UGM Lacks Standing**

"[S]tanding is measured at the time of the complaint." *See Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022). To establish Article III standing, a plaintiff bears the burden of showing injury in fact, causation, and a likelihood that a favorable decision will redress the alleged injury. *See Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). Here, UGM has no injury in fact; fails the causation test because its purported injuries cannot be traced to anything Defendants have done; and fails the redressability test because its alleged harms would not be remedied by a favorable order from the Court. The Court should dismiss.

1.    **UGM fails to allege injury in fact**

To satisfy Article III's injury in fact requirement, plaintiffs must show a "concrete and particularized" injury where enforcement is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 410-11 (9th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is concrete if it "actually exist[s]," such that it is "real, and not abstract." *Id*. (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).

While plaintiffs may challenge statutes or agency action before they are subject to them (*i.e.*, a pre-enforcement challenge), those claims may not

"disregard the traditional limits on the jurisdiction of federal courts." *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 537-38 (2021). As the U.S. Supreme Court recently made unmistakably clear: There is no "unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Women's Health* at 537-38. Instead, "many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one." *Id.* at 538 (citing *Snyder v. Phelps*, 562 U.S. 443 (2011)) ("[T]hose seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments.").

Moreover, the mere "chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit," and there must instead be proof of "a more concrete injury." *Id.* (internal quotation marks omitted) (quoting *Younger v. Harris*, 401 U.S. 37, 42, 50-51 (1971)). "The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id.*; *see also City of Boerne v. Flores*, 521 U.S. 507, 544 (1997) (Scalia, J., concurring) ("[T]he abstract proposition that the government should not, even in its general, nondiscriminatory laws, place unreasonable burdens upon religious practice[] . . . must ultimately be reduced to concrete cases.").

DEFENDANTS' MOTION TO DISMISS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    In pre-enforcement challenges, courts look to whether the plaintiff alleges

2    an "(1) 'intention to engage in a course of conduct arguably affected with a

3    constitutional interest,' (2) 'but proscribed by a statute,' and (3) there must be 'a

4    credible threat of prosecution' under the statute." *Yellen*, 34 F.4th at 849

5    (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). In

6    assessing whether the plaintiff has a "credible threat of enforcement," courts

7    consider "(1) whether the plaintiffs have articulated a 'concrete plan' to violate

8    the law in question, (2) whether the prosecuting authorities have communicated

9    a specific warning or threat to initiate proceedings, and (3) the history of past

10   prosecution or enforcement under the challenged statute." *Yellen*, 34 F.4th at 850

11   (cleaned up) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134,

12   1139 (9th Cir. 2000)).

13   The Eighth Circuit in *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992

14   (8th Cir. 2022), held that plaintiff lacked standing to bring claims strikingly

15   similar to those raised by UGM here. In that case, the religious college plaintiff

16   challenged a memorandum by the U.S. Department of Housing and Urban

17   Development (HUD) that explained the Fair Housing Act's prohibitions on

18   sexual-orientation and gender-identity discrimination. *Id.* at 996. The

19   memorandum also directed an office within HUD to "fully enforce" the Fair

20   Housing Act. *Id.* The religious college argued that there was an "imminent threat"

21   that HUD would enforce the law, requiring the college to change its student

22   housing policies in violation of the college's religious beliefs, and sought

DEFENDANTS' MOTION TO
DISMISS

8

1    injunctive and declaratory relief that the memorandum was unlawful. *Id*. at 997-

2    98. But the Eighth Circuit rejected that argument, holding that that because "it is

3    speculative that HUD will file a charge of discrimination against the College in

4    the first place" and the memorandum "does not, as the [plaintiff] presupposes,

5    require that HUD reach the specific enforcement decision that the plaintiff's

6    current housing policies violate federal law," *id*. at 998, the college's concerns

7    were "too speculative to establish Article III standing," *id*. at 1000.

8        Dismissal is similarly appropriate here. Plaintiff does not allege that

9    Defendants have communicated any "specific warning or threat to initiate

10    proceedings" against UGM. *Yellen*, 34 F.4th at 850. Indeed, Defendants have not

11    communicated anything to UGM *at all*. And the AGO's private inquiry letter to

12    SPU—which made clear that the AGO has "not made any determination as to

13    whether the University has violated any law," and did not threaten any legal

14    action—is a far cry from the Secretary of the Treasury's letter in *Yellen*,

15    "confirming that the [challenged statute] will be enforced," *id*., or the letters

16    California sent to businesses affirmatively "notifying them" of its that a specific

17    rule "must be used" to classify employees, *Cal. Trucking Ass'n v. Bonta*,

18    996 F.3d 644, 653 (9th Cir. 2021).

19        Moreover, Plaintiff alleges "no history of past prosecution or enforcement"

20    under the WLAD by Defendants involving the protected activities of religious

21    employers. *Yellen*, 34 F.4th at 850. There are no allegations that the AGO or the

22    Commission have alleged or found that any religious employer has violated the

DEFENDANTS' MOTION TO
DISMISS

9

1    WLAD since *Woods*. While UGM "presupposes" that Defendants may someday

2    investigate it, standing requires more than pure conjecture. *See Sch. of the Ozarks*,

3    41 F.4th at 998. UGM's injuries are "too speculative to establish Article III

4    standing." *Id*. at 1000.

5         **2.    UGM fails to allege facts establishing defendants have caused its
              alleged injuries**

6

7         UGM's alleged injuries have no causal link to any action by the AGO or

8    Commission. Article III requires plaintiff's injury to be "causally linked" or

9    "fairly traceable" to defendant's alleged misconduct, "and not the result of

10   misconduct of some third party not before the court." *Wash. Env't Council v.*

11   *Bellon*, 732 F.3d 1131, 1141, 1144 (9th Cir. 2013); *see also id*. at 1144 ("Because

12   a multitude of independent third parties are responsible for the changes

13   contributing to Plaintiffs' injuries, the causal chain is too tenuous to support

14   standing."). Standing cannot "rest on speculation about the decisions of

15   independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

16   "[A]ttenuated chain[s] of conjecture" that string incidents "together by

17   conclusory, generalized statements" do not establish standing. *Wash. Env't*

18   *Council*, 732 F.3d at 1142. Purely "self-inflicted injuries" are similarly

19   insufficient. *Clapper*, 568 U.S. at 418; *see also id*. at 416 ("[Plaintiff] cannot

20   manufacture standing merely by inflicting harm on themselves based on their

21   fears of hypothetical future harm that is not certainly impending.").

22

DEFENDANTS' MOTION TO                        10                  ATTORNEY GENERAL OF WASHINGTON
DISMISS                                                              Civil Rights Division
                                                                 800 Fifth Avenue, Suite 2000
                                                                      Seattle, WA 98104
                                                                      (206) 464-7744

1     At bottom, UGM is unhappy with the law as set forth by the U.S. Supreme

2     Court and Washington Supreme Court. *See infra* Section III.A.3. Defendants

3     cannot be considered the cause of those legal standards. *See Clapper*,

4     568 U.S. at 417 (holding plaintiff's alleged harms are not "fairly traceable" to a

5     statute that did not change how plaintiff should act).

6     Even if Defendants had created the *Woods* standard that UGM seeks to

7     challenge, the Complaint nonetheless makes clear that UGM's injuries cannot be

8     traced to any action of the AGO or the Commission. The Complaint alleges that

9     the AGO's letter to SPU asking for information—a letter sent to a different

10     employer with its individualized set of fact circumstances—somehow led to a

11     discussion on an online forum about UGM's job posting on *Indeed.com*.

12     ECF No. 1 ¶¶ 148-50. Then, UGM alleges that unidentified forum users

13     exchanged comments with each other showing hostility toward religion.

14     *Id*. ¶¶ 152-54. That online forum discussion led to a news media article, which in

15     turn led to an anonymous, hostile voicemail to UGM. *Id*. ¶¶ 151, 155-56. And

16     because of that, UGM alleges that it stopped advertising for its position on

17     *Indeed.com*, which led to a decrease in the number of applications it received. *Id*.

18     ¶¶ 157-58. UGM finally alleges that this chilled UGM from posting its "religious

19     hiring statement," which it created nearly half a year after this incident. *Id*. ¶¶

20     *Id*. ¶¶ 161-62; ECF 1-8 at 1.

21     This attenuated chain of events involves numerous "independent action[s]

22     of some third party not before the court." *Lujan*, 504 U.S. at 560. UGM's injuries

DEFENDANTS' MOTION TO       11
DISMISS

1    cannot be fairly traced to any conduct of Defendants and its Complaint should be

2    dismissed.

3         **3.    UGM's alleged injuries are not redressable**

4         To satisfy the redressability prong of standing, the remedies sought must

5    be "substantially likely to redress" the claimed injury. *M.S. v. Brown*,

6    902 F.3d 1076, 1083 (9th Cir. 2018). A plaintiff cannot establish redressability if

7    the remedies sought "are beyond the district court's remedial power to issue." *Id.*

8    As a result, "[r]edressability requires an analysis of whether the court has the

9    power to right or to prevent the claimed injury." *Gonzales v. Gorsuch*,

10   688 F.2d 1263, 1267 (9th Cir. 1982).

11        Here, UGM seeks two remedies: (1) a declaration that "the recent

12   narrowed interpretation of the WLAD" by the Washington Supreme Court, as

13   well as Defendants' enforcement of the WLAD, violates UGM's asserted rights

14   and (2) injunctive relief barring Defendants "from enforcing (including through

15   investigations) the WLAD against the Mission (and other religious organizations

16   with similar religious beliefs and hiring practices) for engaging in its

17   constitutionally protected activities." ECF No. 1 at 50-51. These sweeping

18   requests are beyond the power of this Court to grant. And, even if the Court *did*

19   grant them, UGM's injuries would not be redressed.

20        Throughout its complaint, UGM makes clear that its dispute is with the

21   Washington Supreme Court's decision in *Woods*. *See* ECF No. 1 ¶ 8 ("[T]he

22   Washington Supreme Court recently gutted the religious employer exemption,

DEFENDANTS' MOTION TO          12          ATTORNEY GENERAL OF WASHINGTON
DISMISS                                           Civil Rights Division
                                               800 Fifth Avenue, Suite 2000
                                                  Seattle, WA 98104
                                                   (206) 464-7744

1   reducing it to the 'ministerial exception.'"); *id*. ¶ 148 (referring to "*Woods'*
2   decimation of the religious employer exemption"); *id*. ¶ 166 ("[T]he Washington
3   Supreme Court effectively abolished the WLAD's statutory religious employer
4   exemption for sexual orientation discrimination claims outside the ministerial
5   context."); *id*. 193 ("[T]he Washington Supreme Court single-handedly
6   terminated the religious employer exemption overnight."); *id*. ¶ 196 ("The
7   decision in *Woods* . . . shows hostility toward the Mission's religious beliefs").

8          To be clear, UGM's breathless characterization of the *Woods* decision is
9   significantly overstated. In *Woods*, the Washington Supreme Court first held that
10  WLAD's       exemption      of     non-profit     religious     employers,
11  Wash. Rev. Code § 49.60.040(11),      was     facially     constitutional.   *Woods*,
12  481 P.3d at 1064-65. The court then held that the religious employer exemption,
13  as applied to the plaintiff's claim for employment discrimination based on sexual
14  orientation, may violate the Washington Constitution. *Id*. at 1067. The court
15  "look[ed] to the ministerial exception outlined by the United States Supreme
16  Court," *id*., and found that issues of material fact existed on whether the attorney
17  position sought by the plaintiff fell within the ministerial exception, *id*. at 1070.

18         Contrary to UGM's overstated assertions, in resolving the fact-bound
19  *Woods* appeal, the Washington Supreme Court did not "terminate[]" the religious
20
21
22

DEFENDANTS' MOTION TO                    13          ATTORNEY GENERAL OF WASHINGTON
DISMISS                                                      Civil Rights Division
                                                          800 Fifth Avenue, Suite 2000
                                                              Seattle, WA  98104
                                                               (206) 464-7744

1    employer exemption, ECF No. 1 ¶ 193, or "judicially re-wri[te]" it, *id*. ¶ 225.[3]

2    Instead, the court held that the exemption may violate the Washington

3    Constitution as applied to the individual plaintiff in that case. *Woods*,

4    481 P.3d at 1063 (holding that the religious exemption is not facially

5    unconstitutional "but may be constitutionally invalid as applied to Woods"). The

6    court noted that "[w]e do not opine on the effect of this decision on *every*

7    prospective employee seeking work with any religious nonprofit such as

8    universities, elementary schools, and houses of worship." *Id*. at 1065 n.2.

9    Following *Woods*, the WLAD's religious employer exemption remains alive and

10   well, to be applied to the particular facts of future cases as they arise.

11        Apparently dissatisfied with the case-by-case process of judicial

12   consideration, UGM is asking this Court to declare that the Washington Supreme

---

14   [3] UGM also alleges that before *Woods*, the WLAD "completely exempted

15   nonprofit religious and sectarian organizations." ECF No. 1 ¶ 92. This is a

16   misstatement of law. In 2014, the Washington Supreme Court had previously

17   held that the religious employer exemption could not be applied to an employee

18   "whose job description and responsibilities are wholly unrelated to any religious

19   practice or activity." *Ockletree v. Franciscan Health Sys.*, 317 P.3d 1009, 1028

20   (Wash. 2014) (controlling opinion of Wiggins, J.). UGM makes no allegation that

21   it has been sued or threatened with suit over its employment practices in the near

22   decade since *Ockletree* was decided.

DEFENDANTS' MOTION TO          14          ATTORNEY GENERAL OF WASHINGTON
DISMISS                                            Civil Rights Division
                                              800 Fifth Avenue, Suite 2000
                                                  Seattle, WA  98104
                                                    (206) 464-7744

1   Court incorrectly decided the *Woods* case and to enjoin Defendants from

2   enforcing the WLAD consistent with the *Woods* decision. But, as noted above,

3   UGM's request comes in the wake of the denial of a petition for certiorari in

4   *Woods*.[4] As a result, UGM is effectively asking this Court to do what the U.S.

5   Supreme Court already declined to do in *Woods* itself. *See* ECF No. 1 at 50 (asking

6   the Court to "[d]eclare that the recent narrowed interpretation of the WLAD" by

7   the Washington Supreme Court violates UGM's First Amendment rights).

8       But federal district courts do not have the power to review or overturn

9   decisions by the Washington Supreme Court, even on questions of federal law—

10  only the U.S. Supreme Court has that power. *See, e.g.*, *ASARCO, Inc. v. Kadish*,

11  490 U.S. 605, 620 (1989) ("[S]tate courts . . . have it both within their power and

12  their proper role to render binding judgments on issues of federal law, subject

13  only to review by this Court."). Furthermore, the Washington Supreme Court is

14  "not bound by the interpretations placed on federal law by inferior federal

15  courts." *State v. Barefield*, 756 P.2d 731, 733 n.2 (Wash. 1988); *see also Noble*

16

17  ───────────────

18      [4] UGM claims the U.S. Supreme Court denied certiorari in *Woods*

19  "because of its interlocutory posture." ECF No. 1 ¶ 8. But the Court provided no

20  reasons for the denial of certiorari, stating simply that "[t]he petition for a writ of

21  certiorari is denied." *Woods*, 142 S. Ct. at 1094. The statement of Justices Alito

22  and Thomas respecting the denial of certiorari expresses their views only, not the

    views of the Court.

**DEFENDANTS' MOTION TO DISMISS**                    15

1    *v. Dibble*, 205 P. 1049, 1049 (Wash. 1922) ("[T]he highest court of a state is not

2    bound by the decisions of any federal court except the Supreme Court of the

3    United States."). This Court cannot adjudicate UGM's claims without reviewing

4    *Woods* and declaring that it was wrongly decided. Because this Court lacks the

5    power to overrule the *Woods* decision, it cannot redress UGM's claimed injuries.

6          But even if this Court were authorized to grant the declaratory and

7    injunctive relief requested by UGM, such remedies would not immunize UGM

8    from lawsuits under the WLAD brought by private parties who may be harmed

9    if UGM discriminates in employment based on sexual orientation. Such private

10   lawsuits under the WLAD do not require involvement of any of the Defendants.

11   *See* Wash. Rev. Code. § 49.60.030(2) ("Any person deeming himself or herself

12   injured by any act in violation of this chapter shall have a civil action in a court

13   of competent jurisdiction to enjoin further violations, or to recover the actual

14   damages sustained by the person, or both."). UGM itself cites "lawsuits brought

15   by private parties" as an injury it allegedly faces due to the *Woods* decision.

16   ECF No. 1 ¶ 165.

17         However, parties not before this Court would not be bound by a declaration

18   that the Washington Supreme Court's "narrowed interpretation" of the WLAD's

19   religious employer exemption violates UGM's First Amendment rights—nor can

20   non-parties be bound by the injunctive relief requested by UGM against

21   Defendants. As a result, the relief requested by UGM would not prevent private

22

DEFENDANTS' MOTION TO
DISMISS

16

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

parties from maintaining WLAD claims for sexual orientation discrimination against UGM.

As a final matter, UGM asks this Court to enjoin Defendants from "enforcing (including through investigations) the WLAD" not only against UGM, but also against "other religious organizations with similar religious beliefs and hiring practices." ECF No. 1 at 51. But UGM cannot seek relief on behalf of parties not before the Court. "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Warth v. Sedlin*, 422 U.S. 490, 499 (1975).

**B.    UGM's Claims Are Not Ripe for Review**

Nor are UGM's claims ripe for review. Ripeness prevents the "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967). Courts assess whether a case is both constitutionally and prudentially ripe for review. *See Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007).

Because the injury-in-fact prong stems from the same Article III limitation as constitutional ripeness, courts often analyze the two doctrines together. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting *Cal. Pro-*

1    *Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003)). Thus,

2    UGM's claims are not ripe under Article III for the same reasons it fails to allege

3    an injury in fact for purposes of standing.

4         Prudential ripeness considerations also require dismissal. Federal courts

5    "cannot decide constitutional questions in a vacuum." *Alaska Right to Life*, 504

6    F.3d at 849; *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662

7    (9th Cir. 2002) ("[P]articularly where constitutional issues are concerned,

8    problems such as the 'inadequacy of the record,' or 'ambiguity in the record,'

9    will make a case unfit for adjudication on the merits." (citations omitted)). In

10   assessing prudential ripeness, courts look to whether (1) the case is fit for review

11   and (2) the hardship on the parties in withholding review. *See Thomas*,

12   220 F.3d at 1141. While "'pure legal questions that require little factual

13   development are more likely to be ripe,' a party bringing a preenforcement

14   challenge must nonetheless present a 'concrete factual situation . . . to delineate

15   the boundaries of what conduct the government may or may not regulate without

16   running afoul' of the Constitution." *Alaska Right to Life*, 504 F.3d at 849 (quoting

17   *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996));

18   *see also City of Boerne*, 521 U.S. at 544.

19        The Ninth Circuit sitting en banc in *Thomas v. Anchorage Equal Rights*

20   *Commission* squarely held that academic challenges such as Plaintiff's are not

21   ripe for review. There, plaintiff landlords challenged Alaska's housing laws

22   prohibiting discrimination on the basis of marital status, alleging that the law

DEFENDANTS' MOTION TO          18          ATTORNEY GENERAL OF WASHINGTON
DISMISS                                              Civil Rights Division
                                                  800 Fifth Avenue, Suite 2000
                                                     Seattle, WA  98104
                                                        (206) 464-7744

1   violated their free speech and free exercise of religion rights under the First

2   Amendment. *Thomas*, 220 F.3d at 1138. When the landlords brought that case,

3   no one had complained to the landlords, complained about the landlords, started

4   any investigation, and "the principal enforcement agencies had never even heard

5   of these landlords before they filed this action." *Id*. at 1137. Consequently, the

6   Ninth Circuit held that, even if plaintiffs had standing under Article III, prudential

7   ripeness required dismissal. *Id*. at 1141. Because plaintiffs' claim was brought

8   "devoid of any specific factual context" that the Court would need to assess "the

9   intersection of marital status discrimination and the First Amendment," it was not

10  fit for review. *Id*. . The Court held that the hardship prong also required dismissal,

11  as there was no "real or imminent threat of enforcement, particularly criminal

12  enforcement," and the state would suffer hardship in being forced to defend their

13  laws "in a vacuum and in the absence of any particular victims of discrimination."

14  *Id*. at 1142.

15       This case similarly presents no factual situation where this court can assess

16  the "variety of factors" that the U.S. Supreme Court has held are relevant to

17  assessing whether the First Amendment protects a religious employer's

18  employment decisions. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*,

19  140 S. Ct. 2049, 2063-64 (2020) (identifying factors including the employee's

20  job duties, religious title, academic requirements, and religious training); *see also*

21  *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171,

22  191-93 (2012). For instance, in analyzing the First Amendment's protections of

DEFENDANTS' MOTION TO
DISMISS

19

1    a religious employer, the *Our Lady of Guadalupe* Court underscored that the

2    employees there "performed vital religious duties," including in "[e]ducating and

3    forming students in the Catholic faith," "guid[ing] their students, by word and

4    deed," "pray[ing] with their students, attend[ing] Mass with the students, and

5    prepar[ing] the children for their participation in other religious activities." *Our*

6    *Lady of Guadalupe*, 140 S. Ct. at 2066. The Court noted that the employees there

7    "were the members of the school staff who were entrusted most directly with the

8    responsibility of educating their students in the faith." *Id.*

9          In adjudicating this lawsuit, this Court would be required to know these

10    fact details about each employment position at UGM, and then assume how

11    Defendants would analyze those same facts and apply them to the WLAD. A case

12    requiring the Court to engage in this type of thought experiment is flatly

13    inconsistent with the ripeness requirement of Article III.

14          UGM's claims are not ripe for review and should be dismissed.

15    **IV.    CONCLUSION**

16          Based on the foregoing reasons, Defendants respectfully request that this

17    action be dismissed with prejudice.

18          DATED this 29th day of March, 2023.

19          Respectfully Submitted,

20          ROBERT W. FERGUSON
              Attorney General of Washington

21

22          DANIEL J. JEON, WSBA #58087
              DAVID WARD, WSBA #28707

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Assistant Attorneys General
Wing Luke Civil Rights Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 342-7744
daniel.jeon@atg.wa.gov
david.ward@atg.wa.gov

DEFENDANTS' MOTION TO
DISMISS

21

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing document was electronically filed with

3    the United States District Court using the CM/ECF system. I further certify that

4    all participants in the case are registered CM/ECF users and that service will be

5    accomplished by the CM/ECF system.

6          DATED this 29th day of March, 2023.

7

8                                              _Tiffany Jennings_
                                               TIFFANY JENNINGS
9                                              Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' MOTION TO                    22        ATTORNEY GENERAL OF WASHINGTON
DISMISS                                                     Civil Rights Division
                                                        800 Fifth Avenue, Suite 2000
                                                            Seattle, WA  98104
                                                              (206) 464-7744