1  ROBERT W. FERGUSON
   Attorney General
2  DAVID WARD
   DANIEL J. JEON
3  Assistant Attorneys General
   Attorney General of Washington
4  Civil Rights Division
   800 Fifth Avenue, Suite 2000
5  Seattle, WA 98104
   (206) 464-7744
6
7
8
                    **UNITED STATES DISTRICT COURT**
9                   **EASTERN DISTRICT OF WASHINGTON**

10 UNION GOSPEL MISSION OF               NO. 1:23-cv-3027-MKD
   YAKIMA, WASH.,
11
                    Plaintiff,           DEFENDANTS' RESPONSE
12                                        TO PLAINTIFF'S MOTION
            v.                            FOR PRELIMINARY
13                                        INJUNCTION
   ROBERT FERGUSON, in his
14 official capacity as Attorney          MAY 31, 2023, AT 9:00 AM
   General of Washington State;          WITH ORAL ARGUMENT
15 ANDRETA ARMSTRONG, in
   her official capacity as Executive
16 Director of the Washington State
   Human Rights Commission; and
17 DEBORAH COOK,
   GUADALUPE GAMBOA, JEFF
18 SBAIH, and HAN TRAN, in
   their official capacities as
19 Commissioners of the
   Washington State Human Rights
20 Commission,

21                  Defendants.

22

   DEFENDANTS' RESPONSE TO                    ATTORNEY GENERAL OF WASHINGTON
   PLAINTIFF'S MOTION FOR                            Civil Rights Division
                                                  800 Fifth Avenue, Suite 2000
   PRELIMINARY INJUNCTION                          Seattle, WA  98104
                                                       (206) 464-7744

1               **I.    INTRODUCTION**

2         If Plaintiff Union Gospel Mission of Yakima's (UGM) filing of this federal

3 lawsuit based on zero allegations of any conduct whatsoever by Defendants

4 toward UGM came as a surprise, UGM's claim that it will suffer irreparable harm

5 absent a preliminary injunction is truly mind-boggling. While UGM is plainly

6 frantic to pick a fight, there is simply no fight here to pick.

7         As Defendants demonstrated in their motion to dismiss, UGM has filed a

8 complaint that fails to present a justiciable case or controversy. *See* ECF No. 11.

9 As a result, UGM's motion for a preliminary injunction must be denied because

10 this Court lacks subject matter jurisdiction over UGM's claims in the first place.

11         But even if the Court were to find that UGM has raised justiciable claims,

12 UGM fails to show that it is entitled to the extraordinary remedy of a preliminary

13 injunction. UGM asks the Court to enjoin Defendants' enforcement of the

14 Washington Law Against Discrimination (WLAD) against it, arguing that the

15 organization is constitutionally entitled to employ only people who are

16 "coreligionists"—a term that UGM describes as "those who agree with and will

17 adhere to its religious tenets and behavior requirements." ECF No. 14 at 7. But

18 UGM does not and cannot point to any precedent that provides religious

19 employers with such a boundless constitutional right.

20         Under UGM's theory, religious employers must be exempt from *any* claim

21 for discrimination in employment, regardless of an employee's position or job

22 duties, whenever the employer asserts a religious belief to justify the

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

1

1  discrimination—a theory that would not only apply to discrimination based on

2  sexual orientation and marital status, but also on race, sex, national origin,

3  disability, or any other protected characteristic under state or federal anti-

4  discrimination law. This unprecedented position is not the law and UGM's claims

5  are likely to fail on the merits. And, because UGM does not seriously argue—

6  much less meet—the remaining requirements for preliminary relief, its motion

7  should be denied.

8  ## II.    RELEVANT FACTUAL BACKGROUND

9  ### A.    UGM's Religious Hiring Practices Have Not Been Subject to Investigation or Enforcement Action by Defendants

10

11  Before UGM filed this lawsuit, Defendants had no interaction with the

12  organization regarding its hiring practices. UGM offers no allegations or

13  evidence that Defendants have ever investigated the organization's hiring

14  practices or sought in any way to enforce the WLAD against it. The Attorney

15  General's Office (AGO) reviewed its records and confirmed that UGM has not

16  been subject to any investigations or enforcement actions by the AGO. *See*

17  Tafoya Decl. ¶¶ 7, 9. For its part, between 2014 and 2015 the Human Rights

18  Commission (Commission) received three complaints from the same person

19  regarding UGM nearly a decade ago, but none had to do with religious hiring

20  practices and neither resulted in any enforcement action. Gonzales Decl. ¶¶ 6-8,

21  Exs. A-C.

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

2

1   Since UGM filed this lawsuit and issued a press release to draw attention
2   to it,[1] the AGO received one communication from a member of the public about
3   UGM's employment practices. This person reported that their mother, who is
4   now deceased, was fired by UGM eight years ago after becoming involved in a
5   sexual relationship outside of marriage. *See* Tafoya Decl. ¶ 8, Ex. A. The AGO
6   has not opened any investigation into that allegation. *Id.* Also after UGM's
7   complaint was filed, the Commission received an inquiry from an independent
8   contractor who was told that her Catholicism represented "different views in
9   religion" from UGM's, and that UGM would need to terminate the contract "due
10  to the lawsuit." *See* Gonzales Decl. ¶ 9, Ex. D. The Commission took no action
11  on this inquiry because it does not have jurisdiction over complaints submitted
12  by independent contractors. *Id.* Simply put, neither the AGO nor the Commission
13  has any pending matter regarding UGM. Tafoya Decl. ¶ 9; Gonzales Decl. ¶ 11.

14  And as to other religious employers, Defendants have not enforced the
15  WLAD in the manner UGM claims. Rather, in June 2022, after receiving
16  hundreds of complaints, the AGO sent a private letter to Seattle Pacific
17  University (SPU) indicating that the office was opening an inquiry on whether
18  the University's employment practices comply with the WLAD. ECF No. 1-5.
19  This letter did not require any compulsory production from the University and

---

21  [1] *Union Gospel Mission v. Ferguson*, ALL. DEFENDING FREEDOM (Apr. 6,
22  2023), https://adflegal.org/case/union-gospel-mission-yakima-v-ferguson.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

3

1  indicated that the AGO had not made any determination that the University had

2  violated any law. *Id.* at 2. The letter asked four questions that would help clarify,

3  based on the facts specific to SPU's hiring practices, whether or how the WLAD

4  would apply. *Id.* at 3.

5      Shortly after receiving this letter, the University filed suit against the

6  Attorney General. Judge Bryan granted the Attorney General's motion to dismiss

7  the lawsuit on standing and *Younger* abstention grounds. *See* Order Granting

8  Mtn. & Dismissing Case, *Seattle Pac. Univ. v. Ferguson*, No. 3:22-cv-5540-RJB

9  (W.D. Wash. Oct. 26, 2022), ECF No. 29.

10  **B.    UGM Seeks to Challenge the Washington Supreme Court's Decision

11        in *Woods v. Seattle's Union Gospel Mission***

12      As UGM's complaint and its motion for a preliminary injunction make

13  clear, UGM's dispute here is not with Defendants, but with the Washington

14  Supreme Court's decision in *Woods v. Seattle's Union Gospel Mission,*

15  481 P.3d 1060 (Wash. 2021), *cert. denied*, 142 S. Ct 1094 (2022). In *Woods*, a

16  bisexual Christian man brought a lawsuit under the WLAD alleging sexual

17  orientation discrimination by Seattle's Union Gospel Mission, a religious

18  nonprofit organization that is part of the same network of organizations as UGM

19  here. The plaintiff brought suit after the organization refused to consider him for

20  a staff attorney position in its legal aid clinic after he disclosed that he was in a

21  same-sex relationship. *Id.* at 1063. The plaintiff challenged the constitutionality

22  of the WLAD's exemption of "any religious or sectarian organization not

DEFENDANTS' RESPONSE TO           4
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

organized for private profit" (Wash. Rev. Code § 49.60.040(11)) from the statute's definition of the term "employer." *Id.* at 1064.

The Washington Supreme Court first held that the WLAD's religious employer exemption is facially constitutional. *Id.* at 1065-66. However, the court then held that the exemption may be unconstitutional as applied to the facts of the plaintiff's case. In reaching this decision, the court "look[ed] to the ministerial exception outlined by the United States Supreme Court." *Id.* at 1067. The court remanded the case to the trial court to determine whether the legal aid position sought by the plaintiff was ministerial or non-ministerial. *Id.* at 1070. The defendant in *Woods*, represented by the same law firm representing UGM in this matter, then filed a petition for certiorari, which the U.S. Supreme Court denied, and the case is no longer pending.[2]

*Woods* was not the first case to address the constitutionality of the WLAD's religious employer exemption. In 2014, the Washington Supreme Court held that the exemption was unconstitutional as applied to the plaintiff in

---

[2] UGM asserts that Justice Alito stated that the *Woods* decision "**has** 'created a conflict with the Federal Constitution.'" ECF No. 14 at 8 (emphasis added). That is not accurate. Justice Alito, writing for two justices, suggested that the Washington Supreme Court's decision "***may***, however, have created a conflict." *Woods*, 142 S. Ct. at 1096 (Alito, J., respecting the denial of certiorari) (emphasis added).

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

5

1    *Ockletree v. Franciscan Health System*, 317 P.3d 1009 (Wash. 2014). As a result,

2    religious organizations and job seekers in Washington have been on notice for

3    nearly ten years that the WLAD's religious employer exemption does not apply

4    where the particular "job qualifications and responsibilities are unrelated to

5    religion." *Id.* at 1028 (controlling opinion of Wiggins, J.). UGM makes no

6    allegation that Defendants or any private party has brought a WLAD claim

7    against UGM regarding its hiring practices in the decade since.

8    ### III.    ARGUMENT

9        UGM seeks a preliminary injunction enjoining Defendants from enforcing

10   the WLAD against it (including through investigations) for hiring only

11   "coreligionists" and publicizing that hiring criteria. ECF No. 14 at 7. UGM's

12   request for a preliminary injunction must fail. First, as discussed in Defendants'

13   motion to dismiss (ECF No. 11), UGM's complaint fails to present a justiciable

14   case or controversy, leaving the Court without subject matter jurisdiction over

15   UGM's claims. But even putting that threshold issue aside, UGM fails to meet

16   any of the four factors necessary for preliminary relief.

17   **A.    Preliminary Injunction Standards**

18       A preliminary injunction is an "extraordinary remedy that may only be

19   awarded upon a clear showing that the plaintiff is entitled to such relief."

20   *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The proper legal

21   standard for preliminary injunctive relief requires a party to demonstrate 'that he

22   is likely to succeed on the merits, that he is likely to suffer irreparable harm in

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

**B.    UGM Fails to Demonstrate a Likelihood of Success on the Merits**

**1.    UGM fails to present a justiciable case or controversy**

As Defendants demonstrated in their motion to dismiss, UGM has failed to present a justiciable case or controversy. As a result, UGM's complaint must be dismissed and its motion for a preliminary injunction must be denied. *See, e.g.*, *Taitz v. Obama*, 707 F. Supp. 2d 1, 4 n.2 (D.D.C. 2010) (denying plaintiff's motion for preliminary injunction as moot because plaintiff lacked standing to pursue the action).

Put simply, "a district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the claim before it." *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 842 (D. Alaska 2012); *see also Sinochem Int'l. Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("'Without jurisdiction the court cannot proceed at all in any cause'; it may not assume jurisdiction for the purpose of deciding the merits of the case.") (internal citation omitted). Accordingly, "the jurisdictional question raised by [a defendant's] Rule 12(b)(1) motion must be considered before evaluating [plaintiff's] motion for a preliminary injunction, as the latter issue is moot if the court is without subject matter jurisdiction." *Shell Offshore*, 864 F. Supp. 2d at 842. That is the case here.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

**2.    UGM's "coreligionist exemption" is unsupported by precedent**

Defendants and UGM agree that the WLAD cannot be applied to employment decisions regarding a religious organization's ministerial employees—a point underscored by the Washington Supreme Court in *Woods.* However, UGM asserts that the First Amendment not only requires an exception for ministerial employees, but also provides religious organizations with a far broader "coreligionist exemption" to laws that prohibit discrimination in employment. UGM maintains that the "coreligionist exemption" applies "to *all employees.*" ECF No. 14 at 15. However, UGM points to no precedent that recognizes such a sweeping First Amendment "coreligionist exemption" to anti-discrimination laws.

Instead of citing constitutional cases, UGM relies on cases that addressed a statutory exemption in Title VII that applies to religious employers. *See, e.g.*, *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327 (1987); *Spencer v. World Vision, Inc.*, 633 F.3d 723 (9th Cir. 2011); *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618 (6th Cir. 2000); *Killinger v. Samford Univ.*, 113 F.3d 196 (11th Cir. 1997); *Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988); *EEOC v. Miss. Coll.*, 626 F.2d 477 (5th Cir. 1980). This provision of Title VII (often referred to as "Section 702") provides an exemption to "a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

8

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a). But UGM's reliance on cases involving this statutory exemption in Title VII[3] do not support its arguments that the First Amendment requires the sweeping "coreligionist exemption" claimed by UGM. Indeed, none of the cases cited by UGM holds that a religious organization has a constitutional right to be exempt from employment discrimination claims whenever the organization asserts that an employment decision is motivated by its religious beliefs.

Instead, courts have long recognized that "[l]ike any other person or organization . . . [a church's] employment decisions may be subject to [antidiscrimination law] scrutiny, where the decision does not involve the church's spiritual functions." *See Rayburn v. Gen. Conf. of Seventh-Day*

---

[3] Even under the federal statute, which is not at issue in this case, the Ninth Circuit has emphasized that the statutory exemption provided by Section 702 only permits religious organizations to prefer to hire members of their own faith and does not permit religious organizations to discriminate based on other characteristics protected by Title VII. *See EEOC v. Pac. Press Pub. Ass'n*, 676 F.2d 1272, 1276 (9th Cir. 1982) ("[A]lthough Congress permitted religious organizations to discriminate in favor of members of their faith, religious employers are not immune from liability for discrimination based on race, sex, [or] national origin.").

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

9

*Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). The Ninth Circuit has permitted non-ministerial employees to maintain Title VII claims against religious organizations, even when employment decisions are motivated by religious beliefs. *See, e.g.*, *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986) (religious school could not enforce religious belief that only men can be the head of a household by paying health insurance benefits to married men but not to married women); *EEOC v. Pac. Press Pub. Ass'n*, 676 F.2d 1272, 1276-77, 1280 (9th Cir. 1982) (religious publishing house barred from firing an employee for filing a discrimination complaint with the EEOC, even though church doctrine prohibited members from filing lawsuits against the church). District courts have also held that non-ministerial LGBTQ+ employees may maintain claims for sexual orientation discrimination under Title VII against religious employers, even when the employer holds religious beliefs opposing marriages of same-sex couple or sexual intimacy between people of the same sex. *See, e.g., Doe v. Cath. Relief Servs.*, 618 F. Supp. 3d 244 (D. Md. 2022); *Billard v. Charlotte Cath. High Sch.*, No. 3:17-cv-00011, 2021 WL 4037431, at *22 (W.D.N.C. Sept. 3, 2021).

UGM also points to the U.S. Supreme Court's decision in *National Labor Relations Board v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). In that case, the Court held that Congress did not clearly grant jurisdiction to the NLRB over teachers in church-operated schools, and consequently declined to read the NLRB's jurisdiction in such a way that would require the

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

10

1  Court to rule on constitutional issues. *Id.* at 507. It explained that if the NLRB

2  were to continue to oversee private religious institutions, it would, among others

3  things, "open the door to conflicts between clergy-administrators and the Board."

4  *Id.* at 503. Here, because the First Amendment and WLAD only permit

5  employment discrimination claims regarding non-ministers, there is no similar

6  risk of such conflict.

7      In short, UGM is unlikely to succeed on its claims that the First

8  Amendment provides a "coreligionist exemption" that bars the WLAD from

9  being enforced against religious employers whenever discrimination is motivated

10 by religious belief. UGM's position is not only unsupported by precedent, but

11 would also allow religious organizations to discriminate against non-ministerial

12 employees on the basis of race, sex, or any other protected characteristic under

13 the WLAD. No court has ever issued such a sweeping holding.

14     **3.    The WLAD is a neutral law of general applicability**

15     UGM next argues that the WLAD is not a neutral and generally applicable

16 law and must be subject to strict scrutiny. UGM again fails to show a likelihood

17 of success on the merits of this claim. Indeed, many of UGM's arguments were

18 previously    rejected    by    the    Washington    Supreme    Court    in

19 *State v. Arlene's Flowers*, 441 P.3d 1203, 1231 (Wash. 2019), *cert. denied*, 141

20 S. Ct. 2884 (2021)  ("The WLAD is a neutral, generally applicable law subject

21 to rational basis review.").

22

1    A law that is neutral and generally applicable is not subject to strict

2    scrutiny "even if the law has the incidental effect of burdening a particular

3    religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,

4    508 U.S. 520, 531 (1993). In contrast, "if the *object* of a law is to infringe upon

5    or restrict practices because of their religious motivation, the law is not neutral."

6    *Id.* at 533.

7    Here, UGM offers no specific argument to support its contention that the

8    WLAD is not a neutral law. Instead, UGM maintains that the WLAD is not a

9    generally applicable law. But the Ninth Circuit classifies a law as not generally-

10   applicable where, "'in a selective manner, [it] imposes burden[s] *only* on conduct

11   motivated by religious belief.'" *See Stormans, Inc. v. Wiesman*, 794 F.3d 1064,

12   1079 (9th Cir. 2015), *cert. denied*, 579 U.S. 942 (2016) (emphasis added)

13   (quoting *Lukumi*, 508 U.S. at 543). But the WLAD is not applied in a selective

14   manner; the WLAD covers no religious hiring practices that are not also covered

15   for a "comparable secular" entities. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296

16   (2021).

17   UGM points to the fact that the WLAD includes an exemption for small

18   employers. However, the small employer exemption applies regardless of

19   whether the employer is religious or secular—the treatment is exactly the same.

20   *See* Wash. Rev. Code § 49.60.040(11)

21   UGM also argues that the WLAD is not a generally applicable law because

22   it provides that "it shall not be an unfair practice for an employer . . . to base other

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

12

1    terms or conditions of employment on the sex of employees where the

2    [Commission] by regulation or ruling in a particular instance has found the

3    employment practice to be appropriate for the practical realization of equality of

4    opportunity between the sexes." Wash. Rev. Code § 49.60.180(3) (codified in

5    1971 Wash. 1st Exec. Sess. Laws 551). UGM suggests that this provision

6    impermissibly "provide[s] a mechanism for individualized exemptions."

7    ECF No. 14 at 20 (quoting *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877

8    (2021)).

9    But this provision of the WLAD has never been implemented by rule or

10   regulation of the Commission, and has never been used to permit sex

11   discrimination. Gonzales Decl. ¶ 10. And, more importantly, the Commission

12   could not use it now or in the future: the Washington Supreme Court has

13   definitively held that the adoption of the Equal Rights Amendment to the

14   Washington Constitution in 1972 swept away statutes that permit "special

15   treatment" of one sex, because the state constitution no longer permits "special

16   exemptions or exceptions because of sex." *Marchioro v. Chaney*, 582 P.2d 487,

17   491-92 (Wash. 1978). UGM finds no support in a provision of the WLAD that

18   has been inoperable for more than fifty years. The WLAD is generally applicable,

19   neutral, and constitutional.

20

21

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

13

1
    **4.     The First Amendment right of expressive association does not permit employers to evade anti-discrimination laws**

2

3
    Next, UGM suggests that the First Amendment's right to expressive

4
association protects its ability to hire "only likeminded individuals." ECF No. 14

5
at 22. But UGM cites no decision by the U.S. Supreme Court or the Ninth Circuit

6
holding that the right to expressive association applies in the context of

7
employment decisions. Such a holding would open the door to widespread

8
discrimination in employment under the guise of expressive association. This is

9
because "[t]he right to freedom of association is a right enjoyed by religious and

10
secular groups alike." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v.*

11
*EEOC*, 565 U.S. 171, 189 (2012). As a result, if a religious employer has an

12
expressive association right to discriminate, secular employers would also have

13
such a right.

14
    UGM's argument on this point relies almost entirely on the U.S. Supreme

15
Court's decision in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000). But

16
*Dale* is inapplicable here. That case concerned the right of the Boy Scouts—as a

17
private membership organization, not as an employer—to exclude gay people

18
from membership and leadership positions, in conflict with a New Jersey law

19
prohibiting discrimination in places of public accommodation. *Id.* at 647. *Dale*

20
did not hold that the right of expressive association provides employers with an

21
exemption from employment anti-discrimination laws. Indeed, the U.S. Supreme

22
Court specifically rejected the proposition that the First Amendment's rights of

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

14

1  association and expression prohibit laws prohibiting discriminatory employment

2  decisions. *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984).

3       Other courts have soundly rejected similar arguments offered here by

4  UGM. *See, e.g.*, *Billard*, 2021 WL 4037431, at *22 ("This argument fails because

5  it disregards clear precedent that the freedom of expressive association is

6  inapplicable in commercial contexts where Title VII's antidiscrimination

7  provisions apply, ignores critical aspects of the *Dale* opinion that make it

8  inapplicable to this case, and fails to consider the overall purpose of the freedom

9  of expressive association."); *Starkey v. Roman Cath. Archdiocese of*

10  *Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1208 (S.D. Ind. 2020) (rejecting

11  argument that right to expressive association applied to employment relationships

12  and declining to "read *Dale* as expansively as Defendants suggest").

13       As the district court observed in *Billard*, "if freedom of association applied

14  to any entity with an expressive mission, then businesses engaged in some small

15  amount of expressive association would be granted an exemption from all statutes

16  governing the relationship between a business and the people they interact with.

17  This preposterous result cannot be the case." *Billard*, 2021 WL 4037431, at *22.

18      **5.**    **UGM is unlikely to succeed on its Free Speech claims**

19       Finally, UGM seeks a preliminary injunction restraining Defendants from

20  "publishing and communicating its religious beliefs and behavior requirements

21  for non-ministerial employees to others, including by publishing its Religious

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

15

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    Hiring Statement." ECF 14 at 7. UGM's "Religious Hiring Statement," which is

2    dated February 1, 2023, a month before this lawsuit was filed, reads as follows:

3        Yakima Union Gospel Mission (YUGM) is a Christian ministry that serves
        the community in accordance with Christian doctrine, spreads the Gospel
4        of Jesus Christ, and helps fellow believers grow in their faith.

5        Because Yakima Union Gospel Mission seeks to collectively share its
        religious ideals, it can only hire employees (who are its hands and feet and
6        its messengers) who agree with, adhere to, and live out the Mission's
        religious beliefs and practices. This includes the Mission's religious beliefs
7        on biblical marriage and sexuality, as set forth in its Statement of Faith[.]

8    ECF No. 1-8.

9        UGM expresses concern that publication of its Religious Hiring Statement

10   would run afoul of the WLAD's prohibition on employers using job

11   announcements and advertisements that "express any limitation, specification, or

12   discrimination as to . . . marital status [or] sexual orientation."

13   Wash. Rev. Code § 49.60.180(4). Of course, the Religious Hiring Statement on

14   its face does not do this—it does not state that UGM will not hire LGBTQ+

15   individuals or that UGM intends to discriminate based on marital status.

16       Even if it did, and some regulator someday sought to enforce the WLAD

17   against UGM, the WLAD would withstand First Amendment scrutiny. This

18   provision of the WLAD relates specifically to speech regarding job

19   advertisements—commercial activity. *See Yim v. City of Seattle*, 63 F.4th 783,

20   801 (2023) (Wardlaw, J., concurring) ("[C]ourts have found that speech related

21   to hiring constitutes commercial speech.") (citing cases). While commercial

22   speech still enjoys First Amendment protections, the purported First Amendment

DEFENDANTS' RESPONSE TO                    16          ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR                                          Civil Rights Division
PRELIMINARY INJUNCTION                                 800 Fifth Avenue, Suite 2000
                                                              Seattle, WA  98104
                                                               (206) 464-7744

interest "is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." *See Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973). For instance, in *Pittsburgh Press Co.*, the U.S. Supreme Court held that a regulation that prohibited a newspaper from publishing job advertisements indicating a preference for men or women employees did not run afoul of the First Amendment because the underlying employment practice— hiring based on sex—was not protected. *Id.* So too here. While UGM certainly has a First Amendment interest in expressing its sincerely held religious beliefs, any First Amendment interest in publishing a *job advertisement* that would discriminate on the basis of a protected class would be "incidental to a valid limitation on economic activity." *See id.*

UGM also suggests that as a result of the *Woods* decision, UGM may face liability under a provision of the WLAD adopted in 2018 that prohibits employers from "[r]equir[ing] an employee to disclose his or her sincerely held religious affiliation or beliefs, unless the disclosure is for the purpose of providing a religious accommodation at the request of the employee." Wash. Rev. Code § 49.60.208(1). UGM argues that this provision of the WLAD is a content-based restriction on speech and notes that "the Mission's application plainly asks about applicants' religious beliefs about marriage and sexuality." ECF No. 14 at 24.

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

17

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    However, UGM ignores that Wash. Rev. Code § 49.60.208 does not

2    prohibit any disclosures that an employer may require from an *applicant* for a

3    position; instead, this provision prohibits employers from requiring an "*employee*

4    to disclose his or her sincerely held religious affiliation or beliefs." (Emphasis

5    added). It is unclear why UGM would view this provision as restricting its ability

6    to ask job applicants about their religious affiliation or beliefs.

7    Moreover, UGM ignores that this provision of the WLAD does not restrict

8    *its* speech in any way. Wash. Rev. Code § 49.60.208 does not prohibit an

9    employer from asking an employee about their religious affiliations or beliefs;

10    instead, the provision prohibits employers from requiring an employee to disclose

11    such information. This provision protects employees from being forced by

12    employers to speak about their religious affiliation or beliefs, rather than

13    restricting any speech by employers. As a result, it is baffling why UGM suggests

14    that this provision constitutes a content-based restriction on its speech.

15    **C.    UGM Fails to Satisfy the Other Requirements for a Preliminary**

16    **Injunction**

17    In addition to UGM's high likelihood of failure on the merits, UGM cannot

18    establish that it is "likely to suffer irreparable harm in the absence of preliminary

19    relief," or that the public interest or equities favor exempting UGM from the

20    WLAD altogether. *Winter*, 555 U.S. at 20. UGM does not even try to make these

21    showings, hoping that the Court will agree with UGM on the merits and simply

22    skip the remaining *Winter* factors. But "[e]ven where a plaintiff has demonstrated

DEFENDANTS' RESPONSE TO              18              ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR                                    Civil Rights Division
PRELIMINARY INJUNCTION                              800 Fifth Avenue, Suite 2000
                                                        Seattle, WA  98104
                                                         (206) 464-7744

1   a likelihood of success on the merits of a First Amendment claim, he 'must also

2   demonstrate that he is likely to suffer irreparable injury in the absence of a

3   preliminary injunction.'" *Doctors for a Healthy Montana v. Fox*,

4   460 F. Supp. 3d 1023, 1029 (D. Mont. 2020) (internal citation omitted).

5   And, "plaintiffs must establish that irreparable harm is *likely*, not just

6   possible, in order to obtain a preliminary injunction." *All. for Wild Rockies v.*

7   *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Though '[b]y bringing a colorable

8   First Amendment claim, [the movant] certainly raises the specter of irreparable

9   injury,' 'simply raising a serious [First Amendment] claim is not enough to tip

10  the hardship scales.'" *Selecky*, 586 F.3d at 1138 (quoting *Paramount Land Co.*

11  *LP v. Cal. Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007)). Even if there

12  were to be the loss of "some First Amendment freedoms," a preliminary

13  injunction is inappropriate when "that injury would be modest." *No on E, San*

14  *Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu*, 62 F.4th 529, 546

15  (9th Cir. 2023).

16  Nothing about UGM's claims establish irreparable injury to warrant an

17  injunction here. UGM's purported injurious chill in using Indeed.com to post job

18  ads, and in refraining from posting a hiring statement that it authored a month

19  prior to filing this litigation, are modest burdens that cannot overcome the

20  government's important interest in preventing discrimination. *See, e.g.*, *id.* at

21  543-44; *Yamada v. Snipes*, 786 F.3d 1182, 1202 (9th Cir. 2015). With respect to

22  its other "harms," Defendants are not investigating UGM—there is nothing to

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

19

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    enjoin. No one has threatened anything like the "criminal prosecution" or

2    "substantial penalties" UGM invokes. ECF No. 14 at 13. And even if this Court

3    *did* enjoin Defendants here, UGM would *still* be subject to possible lawsuits by

4    private parties who may be harmed if UGM discriminates in employment. *See*

5    ECF No. 11 at 21.

6        Finally, the public interest and balance of the equities sharply tilt in favor

7    of Defendants. Where the government is a party to a case in which a preliminary

8    injunction is sought, the balance of the equities and public interest factors merge."

9    *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020). An injunction enjoining

10   Washington from enforcing Washington law constitutes irreparable injury. *See*

11   *Maryland v. King*, 567 U.S. 1301, 1303 (2012). There is no question that there is

12   a great public interest in the civil rights law that UGM seeks to enjoin here. *See,*

13   *e.g.*, *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) ("We do not

14   doubt that this interest [in equal treatment of gay foster parents and foster

15   children] is a weighty one, for '[o]ur society has come to the recognition that gay

16   persons and gay couples cannot be treated as social outcasts or as inferior in

17   dignity and worth.'") (quoting *Masterpiece Cakeshop, Ltd. v. Colo. C.R.*

18   *Comm'n*, 138 S. Ct. 1719, 1727 (2018)). All *Winter* factors require denial of

19   UGM's motion for preliminary injunction.

20                    **IV.    CONCLUSION**

21        UGM's motion for a preliminary injunction should be denied.

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

20

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1     DATED this 26th day of April, 2023.

2            Respectfully Submitted,

3            ROBERT W. FERGUSON
               Attorney General of Washington

4

5

6            DAVID WARD, WSBA #28707
               DANIEL J. JEON, WSBA #58087

7            Assistant Attorneys General
               Wing Luke Civil Rights Division

8            Office of the Attorney General
               800 Fifth Avenue, Suite 2000
               Seattle, WA 98104

9            (206) 464-7744
               david.ward@atg.wa.gov

10           daniel.jeon@atg.wa.gov

11          *Attorneys for Defendants*

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' RESPONSE TO      21
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 26th day of April, 2023.

TIFFANY JENNINGS
Legal Assistant

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

22

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT FACTUAL BACKGROUND ......................................... 2

    A.  UGM's Religious Hiring Practices Have Not Been Subject to Investigation or Enforcement Action by Defendants .................. 2

    B.  UGM Seeks to Challenge the Washington Supreme Court's Decision in *Woods v. Seattle's Union Gospel Mission* ................. 4

III.  ARGUMENT ....................................................................................... 6

    A.  Preliminary Injunction Standards ................................................. 6

    B.  UGM Fails to Demonstrate a Likelihood of Success on the Merits ........................................................................................... 7

       1.   UGM fails to present a justiciable case or controversy .......... 7

       2.   UGM's "coreligionist exemption" is unsupported by precedent .............................................................................. 8

       3.   The WLAD is a neutral law of general applicability ........... 11

       4.   The First Amendment right of expressive association does not permit employers to evade anti-discrimination laws ...... 14

       5.   UGM is unlikely to succeed on its Free Speech claims ....... 15

    C.  UGM Fails to Satisfy the Other Requirements for a Preliminary Injunction ................................................................................... 18

IV.  CONCLUSION ................................................................................. 20

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

i

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*All. for Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011)..................................................................19

*Billard v. Charlotte Cath. High Sch.*,
    No. 3:17-cv-00011, 2021 WL 4037431 (W.D.N.C. Sept. 3, 2021)..........10, 15

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000) ......................................................................14

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) .......................................................................12

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
    483 U.S. 327 (1987) ........................................................................8

*Doctors for a Healthy Montana v. Fox*,
    460 F. Supp. 3d 1023 (D. Mont. 2020) ........................................................19

*Doe v. Cath. Relief Servs.*,
    618 F. Supp. 3d 244 (D. Md. 2022) .............................................................10

*EEOC v. Fremont Christian Sch.*,
    781 F.2d 1362 (9th Cir. 1986)................................................................10

*EEOC v. Miss. Coll.*,
    626 F.2d 477 (5th Cir. 1980)..................................................................8

*EEOC v. Pac. Press Pub. Ass'n*,
    676 F.2d 1272 (9th Cir. 1982)................................................................9, 10

*EEOC v. Townley Eng'g & Mfg. Co.*,
    859 F.2d 610 (9th Cir. 1988)..................................................................8

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868, (2021) ...................................................................20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Hall v. Baptist Mem'l Health Care Corp.*,
  215 F.3d 618 (6th Cir. 2000)...........................................................................8

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984)........................................................................................15

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171, (2012)......................................................................................14

*Killinger v. Samford Univ.*,
  113 F.3d 196 (11th Cir. 1997).........................................................................8

*Little v. Wuerl*,
  929 F.2d 944 (3d Cir. 1991).............................................................................8

*Marchioro v. Chaney*,
  582 P.2d 487 (Wash. 1978)............................................................................13

*Maryland v. King*,
  567 U.S. 1301 (2012)......................................................................................20

*National Labor Relations Board v. Catholic Bishop of Chicago*,
  440 U.S. 490 (1979).................................................................................10, 11

*No on E, San Franciscans Opposing the Affordable Hous. Prod. Act v. Chiu*,
  62 F.4th 529 (9th Cir. 2023) ..........................................................................19

*Ockletree v. Franciscan Health System*,
  317 P.3d 1009 (Wash. 2014)............................................................................6

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
  413 U.S. 376 (1973)........................................................................................17

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
  772 F.2d 1164 (4th Cir. 1985).........................................................................10

*Roman v. Wolf*,
  977 F.3d 935 (9th Cir. 2020)...........................................................................20

*Seattle Pac. Univ. v. Ferguson*,
  No. 3:22-cv-5540-RJB (W.D. Wash. Oct. 26, 2022).......................................4

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

iii

1

2

*Shell Offshore Inc. v. Greenpeace, Inc.*,
    864 F. Supp. 2d 839 (D. Alaska 2012) ..............................................7, 8

3

*Sinochem Int'l. Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)....................................................................................7

4

5

*Spencer v. World Vision, Inc.*,
    633 F.3d 723 (9th Cir. 2011)......................................................................8

6

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
    496 F. Supp. 3d 1195 (S.D. Ind. 2020) ...................................................15

7

8

*State v. Arlene's Flowers*,
    441 P.3d 1203 (Wash. 2019)..............................................................11, 12

9

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009)..............................................................7, 19

10

11

*Stormans, Inc. v. Wiesman*,
    794 F.3d 1064 (9th Cir. 2015)..................................................................12

12

*Taitz v. Obama*,
    707 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................7

13

14

*Tandon v. Newsom*,
    141 S. Ct. 1294 (2021) ..............................................................................12

15

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................6, 18, 20

16

17

*Woods v. Seattle's Union Gospel Mission*,
    481 P.3d 1060 (Wash. 2021)..........................................................4, 5, 8, 17

18

*Yamada v. Snipes*,
    786 F.3d 1182  (9th Cir. 2015)...................................................................19

19

20

*Yim v. City of Seattle*,
    63 F.4th 783 (2023) ...................................................................................16

### Statutes

21

42 U.S.C. § 2000e-1(a)....................................................................................9

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Wash. Rev. Code § 49.60.040(11) .................................................................5, 12

Wash. Rev. Code § 49.60.180(3)........................................................................13

Wash. Rev. Code § 49.60.180(4)........................................................................16

Wash. Rev. Code § 49.60.208 ............................................................................18

Wash. Rev. Code § 49.60.208(1)........................................................................17

<u>Other Authorities</u>

*Union Gospel Mission v. Ferguson*, ALL. DEFENDING FREEDOM (Apr. 6, 2023),
    https://adflegal.org/case/union-gospel-mission-yakima-v-ferguson ................3

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

v

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

i