ROBERT W. FERGUSON
Attorney General
DANIEL J. JEON
DAVID WARD
Assistant Attorneys General
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| UNION GOSPEL MISSION OF YAKIMA, WASH., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT FERGUSON, in his official capacity as Attorney General of Washington State; ANDRETA ARMSTRONG, in her official capacity as Executive Director of the Washington State Human Rights Commission; and DEBORAH COOK, GUADALUPE GAMBOA, JEFF SBAIH, and HAN TRAN, in their official capacities as Commissioners of the Washington State Human Rights Commission, <br><br> Defendants. | NO. 1:23-cv-3027-MKD <br><br> DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS <br><br> MAY 31, 2023 AT 9 AM WITH ORAL ARGUMENT |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ............................................................................................ 1

    A. UGM Fails to Establish Standing ..................................................... 1

        1. With no credible threat of enforcement, there is no injury in fact ............................................................................................. 1

        2. UGM's alleged injuries are not caused by Defendants .......... 4

        3. UGM's alleged injuries are not redressable ........................... 5

    B. UGM's Claims Are Not Ripe for Review ....................................... 9

III. CONCLUSION ..................................................................................... 10

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS

i

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

Cases

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) ................................................................. 2, 3

*ASARCO Inc. v. Kadish*,
  490 U.S. 605 (1989) ................................................................................ 8

*Cal. Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ................................................................... 3

*Larson v. Valente*,
  456 U.S. 228 (1982) ................................................................................ 8

*Marquis v. City of Spokane*,
  922 P.2d 43 (Wash. 1996) ....................................................................... 8

*Massachusetts v. E.P.A.*,
  549 U.S. 497 (2007) ................................................................................ 8

*Ockletree v. Franciscan Health System*,
  317 P.3d 1009 (Wash. 2014) ................................................................... 4

*Sch. of the Ozarks, Inc. v. Biden*,
  41 F.4th 992 (8th Cir. 2022) ................................................................... 4

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) ................................................................. 10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ............................................................................ 1, 2

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ........................................................... 1, 10

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ................................................................. 2

*Vegan Outreach, Inc. v. Chapa*,
  454 F. App'x 598 (9th Cir. 2011) ........................................................... 8

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS

ii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Whole Women's Health v. Jackson*,
   142 S. Ct. 522 (2021) .......................................................................................... 4

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ......................................................................... 7, 8

*Woods v. Seattle's Union Gospel Mission*,
   481 P.3d 1060 (Wash. 2021) ....................................................................... passim

## Constitutional Provisions

U.S. Const. art. III .................................................................................................... 4

## Statutes

Wash. Rev. Code § 49.60.030(2) ............................................................................... 7

## Rules

Fed. R. Civ. P. 10(c) .................................................................................................. 9

## I.     INTRODUCTION

The Union Gospel Mission of Yakima (UGM) continues to seek to manufacture a hypothetical case or controversy against Defendants that is wholly speculative. UGM's response makes clear that its dispute is with the Washington Supreme Court's decision in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021), *cert. denied*, 142 S. Ct. 1094 (2022). But the theoretical injuries that UGM claims from *Woods* are too speculative for standing, were not caused by Defendants, cannot be redressed by a favorable decision by this Court, and are not ripe. UGM's complaint must be dismissed because it fails to raise any justiciable claims.

## II.     ARGUMENT

### A.     UGM Fails to Establish Standing

#### 1.     With no credible threat of enforcement, there is no injury in fact

Unable to allege any conduct by Defendants against it, the best UGM can do to substantiate its claim of injury is argue that Defendants have not said they *won't* seek to enforce the Washington Law Against Discrimination (WLAD) against it. That means next to nothing, given that the filing of this lawsuit is the first Defendants have heard about UGM's alleged religious hiring practices. Simply put, where, as here, "the prospect of future enforcement" is merely "speculative" on plaintiff's part, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 165 (2014), *there is no credible threat of prosecution. See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000).

1       And while the government's "failure to disavow enforcement of the law" may "weigh in favor of standing," ECF No. 15 at 14, here, there are insufficient facts to determine whether the WLAD applies at all. UGM filed this lawsuit out of the blue, and its complaint, with its contradictory allegations and exhibits, makes it impossible to tell whether or how the WLAD would apply to UGM's employment practices. *Compare* ECF No. 1 ¶ 128 ("[T]he Mission employs non-ministerial employees in addition to 'ministers.'"), *and* ¶ 142 (alleging IT Technician and Operations Assistant "are not 'ministerial' employees"), *with* ECF No. 1-6 at 3 (IT Technician's "Duties and Responsibilities" include "[m]inister to our clients, staff, donors, and volunteers"), *and* ECF No. 1-7 at 3 (same for Operations Assistant). It is not clear how the law applies to UGM, and that makes this case different from *Driehaus*, *Tingley*, and *Yellen*. *Cf.* ECF No. 15 at 14.

        UGM concedes that two of the factors "[t]he Ninth Circuit looks to" in evaluating whether there is a credible threat of enforcement are (1) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (2) whether there is a history of past prosecution or enforcement. *Id.* at 13 (citing *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022)). Neither factor favors UGM's standing.

        First, given Defendants' lack of dealings with UGM leading up to this lawsuit, it is no surprise that UGM cannot identify any communication from Defendants making a "specific warning or threat to initiate proceedings" against

UGM—like the government letters in *Yellen* and *California Trucking Association*. *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022); *see Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). UGM simply ignores the inconvenient (and dispositive) differences in warnings or threats that distinguish those credible-threat-of-prosecution cases from this one. *See* ECF No. 15 at 14-15.

Second, UGM has no choice but to admit "sparse enforcement in the past"—by which it is referring to the Attorney General's Office's (AGO) single, unrelated inquiry into Seattle Pacific University's (SPU) hiring practices last year. *Id.* at 17-18. But rather than a record of sparse enforcement, there is *no* record of enforcement by Defendants.[1] UGM chalks this up to "the WLAD's prohibition on sexual orientation discrimination as applied to religious organizations" being "new." *Id.* at 17. This argument is based on UGM's continued insistence that, "before the *Woods* decision in 2021, religious organizations were completely exempt from the WLAD." *Id.* But that is a bald misstatement of the law, as Defendants pointed out in their opening papers. *See*

---

[1] The inquiry letter to SPU made no determination as to whether SPU's hiring practices violated any law, and did not threaten any legal action. *See* ECF No. 1-5. And its request that SPU retain records during its inquiry, *id.* at 3, 5, as the AGO routinely does in order to ensure that information relevant to its inquiry is preserved, is in no way a foregone conclusion of litigation.

ECF No. 11 at 19 n.3. UGM completely ignores the Washington Supreme Court's 2014 decision in *Ockletree v. Franciscan Health System*, 317 P.3d 1009 (Wash. 2014), which held that the WLAD's religious employer exemption could not be applied to an employee "whose job description and responsibilities are wholly unrelated to any religious practice or activity." *Id.* at 1028 (controlling opinion of Wiggins, J.). UGM never even *once* mentions *Ockletree* in its opposition, and fails to allege *any* history of WLAD enforcement by Defendants against any religious employer in the decade since *Ockletree* was decided.

UGM lastly argues that "the recently re-written WLAD has chilled" its First Amendment rights. ECF No. 15 at 16. But the U.S. Supreme Court has been clear that the "chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit." *Whole Women's Health v. Jackson*, 142 S. Ct. 522, 538 (2021) (internal quotation marks omitted). And the Washington Supreme Court's decision in *Woods* and the AGO's letter, "do[] not, as the [Plaintiff] presupposes, require that [Defendants] reach the specific enforcement decision that the [Plaintiff's] current [employment] policies violate [the] law." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 998 (8th Cir. 2022). UGM fails to address these cases, and its speculative fear of enforcement does not create Article III standing.

### 2. UGM's alleged injuries are not caused by Defendants

UGM's alleged injuries in this case arise from their disagreement with the law as set forth by the U.S. Supreme Court and the Washington Supreme Court.

1    Defendants cannot be considered the cause of those legal standards. Indeed,
2    UGM does not deny that the only "attacks" on its religious hiring practices have
3    been by third parties, not Defendants. *See* ECF No. 15 at 20-21. Nonetheless,
4    UGM takes the remarkable position that Defendants are the cause of its alleged
5    injuries simply because they have the theoretical power to enforce the WLAD
6    against it at some unknown time in the future. *See id*. But none of the cases UGM
7    cites for this incredible proposition involved a situation remotely similar to the
8    one presented here: Where a plaintiff is not challenging a state statute as written
9    by the legislature, but instead challenges a state supreme court's interpretation of
10   a state law. No case cited by UGM suggests that a plaintiff's alleged injuries may
11   be fairly traceable to a state official who might be called upon to follow the
12   interpretation of a state law by the state's highest court.

       **3.    UGM's alleged injuries are not redressable**

14   UGM also cannot satisfy the redressability prong of standing because (1)
15   this Court lacks the authority to overturn *Woods*; and (2) even if the Court were
16   to grant the relief requested by UGM, private parties would still be free to bring
17   employment discrimination actions under the WLAD against the organization,
18   leaving UGM susceptible to the same alleged injuries that would result from
19   Defendants' hypothetical enforcement of the WLAD against UGM.

20   Seeking to avoid these fatal flaws, UGM disclaims that it is asking this
21   Court to review *Woods* or to declare that the case was wrongly decided by the
22   Washington Supreme Court. *See* ECF No. 15 at 22. But UGM's prayer for relief

explicitly asks this Court to "[d]eclare that the recent narrowed interpretation of the WLAD" by the Washington Supreme Court "violates the Mission's First Amendment rights." ECF No. 1 at 50. That is relief the Court cannot grant.

Now pivoting, UGM suggests it seeks only to restrain Defendants from enforcing the WLAD against the organization, not to overturn *Woods*. But UGM cannot explain how this Court could rule in its favor without declaring that *Woods* was incorrectly decided by the Washington Supreme Court. As Defendants noted in their motion to dismiss, only the U.S. Supreme Court has the power to review or overturn a decision of the Washington Supreme Court—and here, the U.S. Supreme Court has already declined to review *Woods*. ECF No. 11 at 20-21.[2] UGM's request is unprecedented, which is why UGM fails to point to a single

---

[2] UGM also claims "the State" opposed the petition for certiorari filed by Seattle's Union Gospel Mission in the *Woods* case and "admitted" certain points in its supposed opposition brief. ECF No. 15 at 22-23. This assertion is false. Neither the State of Washington nor any Defendants were involved in the *Woods* case. Instead, the opposition to the petition for certiorari in *Woods* that UGM cites was filed by private attorneys representing Mr. Woods. *See* Br. in Opp'n to Pet. for Writ of Cert., *Seattle's Union Gospel Mission v. Woods*, 142 S. Ct. 1094 (2022) (No. 21-144), 2021 WL 5138203 (listing Mr. Woods's private counsel). UGM presumably should be well aware of this point because it is represented here by the same law firm that filed the petition for certiorari in *Woods*.

case in which a federal district court declared that a state supreme court's interpretation of a state statute was unconstitutional—much less any federal district court decision that enjoined state agencies from enforcing a state law consistent with their state supreme court's interpretation of the statute.

UGM also relies on *Wolfson v. Brammer*, 616 F.3d 1045 (9th Cir. 2010), to argue that its alleged injuries are redressable despite this Court's inability to overturn *Woods*. In *Wolfson*, the plaintiff challenged canons of the Arizona Code of Judicial Conduct that applied to judicial candidates. *Id.* at 1052-53. The plaintiff sued the members of the Arizona Commission of Judicial Conduct, the Arizona Supreme Court Disciplinary Commission, and the Arizona Chief Bar Counsel. *Id.* at 1051. Defendants argued the plaintiff's alleged injuries were not redressable because they lacked authority to change the Arizona Code of Judicial Conduct, a power reserved only for the Arizona Supreme Court. *Id.* at 1056.

The Ninth Circuit held that the plaintiff's alleged injuries were redressable because a favorable ruling would entirely prevent enforcement of the challenged policies. The court emphasized that "*[w]ithout a possibility of the challenged canons being enforced*, those canons will no longer have a chilling effect on speech." *Id.* at 1057 (emphasis added). Here, in sharp contrast, Defendants are not the only persons who have authority to enforce the WLAD against UGM.

As UGM admits, private parties may bring actions to enforce the WLAD. *See* Wash. Rev. Code § 49.60.030(2). Indeed, "a plaintiff bringing a discrimination case [under the WLAD] assumes the role of a private attorney

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  general, vindicating a policy of the highest priority." *Marquis v. City of Spokane*,
2  922 P.2d 43, 49 (Wash. 1996). Unlike *Wolfson*, enjoining Defendants from
3  enforcing the WLAD will <u>not</u> leave UGM "without a possibility" of enforcement
4  of the WLAD against it. 616 F.3d at 1057. UGM dooms its own case by admitting
5  it paused hiring for two positions because "third parties could file complaints
6  under the WLAD" against the organization. ECF No. 15 at 11.

7  UGM briefly suggests that the ability of private parties to bring WLAD
8  actions against the organization does not defeat redressability, selectively quoting
9  snippets from *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982), and
10 *Massachusetts v. E.P.A.*, 549 U.S. 497, 526 (2007). ECF No. 15 at 24. But neither
11 case involved a situation where a favorable decision by a court would leave third
12 parties free to enforce the challenged law against the plaintiff. The redressability
13 prong of standing cannot be met when it "depends on the unfettered choices made
14 by independent actors not before the courts and whose exercise of broad and
15 legitimate discretion the courts cannot presume either to control or to predict."
16 *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989); *see also Vegan Outreach,*
17 *Inc. v. Chapa*, 454 F. App'x 598, 600-01 (9th Cir. 2011) (holding that plaintiff
18 lacked standing because a favorable result would not be "likely [to] prevent the
19 law from being applied").

20 In sum, UGM asserts that its First Amendment rights are chilled by the
21 possible enforcement of the WLAD against it in a manner consistent with *Woods*.
22 UGM maintains that it "needs judicial relief so it can fill its open IT technician

and operations assistant positions, and post its hiring statements, without facing penalties for violating the WLAD." ECF No. 15 at 25. But enjoining Defendants from enforcing the WLAD against UGM will not change the law, will not prevent enforcement of the WLAD against it by private parties, and cannot immunize UGM from "facing penalties for violating the WLAD." *Id.* As a result, a favorable decision for UGM in this case would not redress its alleged injuries.

**B.   UGM's Claims Are Not Ripe for Review**

Finally, UGM asserts that its claims are ripe for review because the issues presented are "purely legal and no further facts need [to be] developed" and "the challenged action is final." *Id.* at 24. UGM is wrong on both points.

UGM asserts that "[t]he record shows" that its "coreligionist hiring practices" violate the WLAD as interpreted by *Woods*, *id.* at 24-25, and that "[t]he only facts the Court needs to decide that legal issue are already before it: the Mission's religious beliefs and employment requirements." *Id.* at 25. But this argument is belied by UGM's own pleadings in this case. Although UGM's complaint asserts at various points that it employs both ministerial and non-ministerial employees, the exhibits UGM attached to its complaint—part of its complaint pursuant to Fed. R. Civ. P. 10(c)—contradict these allegations by repeatedly asserting that UGM only employs ministerial employees. *See supra* at 3; ECF No. 1-2 at 2 (stating that UGM "view[s] all our permanent staff as ministers"); ECF No. 1-4 at 2 (indicating that UGM requires all employees to "accept the role and responsibility of fulfilling the YUGM's

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

uniquely Christian purposes (what is called a *minister* by law & judicial decision)").

Of course, if all of UGM's employees are truly ministers, the WLAD would not apply to its employment decisions. But UGM's own pleadings create conflict in the record on this question. And as the Ninth Circuit has noted, "particularly where constitutional issues are concerned, problems such as the 'inadequacy of the record,' or 'ambiguity in the record,' will make a case unfit for adjudication on the merits." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citations omitted). This case is not ripe for review where UGM's own pleadings make contradictory allegations as to whether it has any non-ministerial employees.

Nor is there any final "action" toward UGM to challenge. Even assuming the "action" is the AGO's private inquiry letter to a different entity, that letter made clear that the AGO made no determination as to whether there were any violations of law, did not threaten any legal action, and did not compel any further action. *See* ECF No. 1-5.

UGM's complaint is wholly "devoid of any specific factual context" or any threat of enforcement. *Thomas*, 220 F.3d at 1141. "This is a case in search of a controversy" and should be dismissed. *Id.* at 1137.

### III. CONCLUSION

UGM's complaint should be dismissed with prejudice.

DATED this 10th day of May, 2023.

Respectfully Submitted,

ROBERT W. FERGUSON
Attorney General of Washington

DANIEL J. JEON, WSBA #58087
DAVID WARD, WSBA #28707
Assistant Attorneys General
Wing Luke Civil Rights Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 342-7744
daniel.jeon@atg.wa.gov
david.ward@atg.wa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 10th day of May, 2023.

*Tiffany Jennings*
TIFFANY JENNINGS
Legal Assistant