Katherine Anderson  
WA Bar No. 41707  
AZ Bar No. 29490  
Ryan Tucker*  
AZ Bar No. 034382  
Jeremiah Galus*  
AZ Bar No. 30469  
ALLIANCE DEFENDING FREEDOM  
15100 N. 90th Street  
Scottsdale, AZ 85260  
Telephone: (480) 444-0020  
kanderson@ADFlegal.org  
rtucker@ADFlegal.org  
jgalus@ADFlegal.org  

Jacob Reed*  
VA Bar No. 97181  
ALLIANCE DEFENDING FREEDOM  
44180 Riverside Parkway  
Lansdowne, VA 20176  
Telephone: (571) 707-4655  
jreed@ADFlegal.org  

*Counsel for Plaintiff*  

\* Admitted *Pro Hac Vice*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNION GOSPEL MISSION OF YAKIMA, WASH.,** *Plaintiff,* v. **ROBERT FERGUSON, ET AL.,** *Defendants.* | Civil Case No.: 1:23-cv-03027<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>MAY 31, 2023, AT 9:00 a.m.<br>ORAL ARGUMENT |

**Contents**

Introduction ........................................................................................................... 1

Argument .............................................................................................................. 1

    I.    The Mission has standing and this Court has jurisdiction. ........................ 1

    II.    The Mission is likely to succeed on the merits of its claims. ..................... 3

        A.    The WLAD violates the Mission's autonomy rights. ............................ 3

        B.    The WLAD is not generally applicable because it is underinclusive. ....... 6

        C.    The WLAD violates the Mission's association rights. ........................... 7

        D.    The WLAD infringes the Mission's freedom of speech. ......................... 9

    III.    The Mission satisfies the other preliminary injunction factors ................. 10

Conclusion ......................................................................................................... 10

Certificate of Service ......................................................................................... 12

# Table of Authorities

**Cases**

*Ariix, LLC v. NutriSearch Corp.*,
  985 F.3d 1107 (9th Cir. 2021)...........................................................................9

*Bear Creek Bible Church v. Equal Employment Opportunity Commission*,
  571 F. Supp. 3d 571 (N.D. Tex. 2021)................................................................6

*Billard v. Charlotte Catholic High School*,
  No. 3:17-cv-00011, 2021 WL 4037431 (W.D.N.C. Sept. 2, 2021)...................6, 8

*Bryce v. Episcopal Church in the Diocese of Colorado*,
  289 F.3d 648 (10th Cir. 2002)............................................................................4

*Butler v. St. Stanislaus Kostka Catholic Academy*,
  609 F. Supp. 3d 184 (E.D.N.Y. 2022)................................................................4

*California Trucking Association v. Bonta*,
  996 F.3d 644 (9th Cir. 2021).............................................................................3

*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
  447 U.S. 557 (1980) ..........................................................................................9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ..........................................................................................7

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
  483 U.S. 327 (1987) ..........................................................................................5

*Doe v. Catholic Relief Services*,
  618 F. Supp. 3d 244 (D. Md. 2022) ..................................................................6

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014)...........................................................................10

*Equal Employment Opportunity Commission v. Fremont Christian Sch.*,
  781 F.2d 1362 (9th Cir. 1986)...........................................................................5

*Equal Employment Opportunity Commission v. Pacific Press Publishing Association,*
　676 F.2d 1272 (9th Cir. 1982)..................................................................5, 6

*Fulton v. City of Philadelphia*,
　141 S. Ct. 1868 (2021) ............................................................................6, 7

*Green v. Miss United States of America, LLC,*
　52 F.4th 773 (9th Cir. 2022) .........................................................................8

*Hishon v. King & Spalding*,
　467 U.S. 69 (1984) ..................................................................................7, 8

*Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission.,*
　565 U.S. 171 (2012) ................................................................................4, 5

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*,
　344 U.S. 94 (1952) .......................................................................................1

*Kennedy v. Bremerton School District,*
　 142 S. Ct. 2407 (2022) ................................................................................7

*National Labor Relations Board v. Catholic. Bishop of Chicago,*
　440 U.S. 490 (1979) ....................................................................................2

*Our Lady's Inn v. City of St. Louis,*
　349 F. Supp. 3d 805 (E.D. Mo. 2018).........................................................8

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
　487 U.S. 781 (1988) ....................................................................................8

*Seattle Pacific University v. Ferguson,*
　No. 3:22-cv-05540 (W.D. Wash. Oct. 26, 2022) .........................................2

*Seattle's Union Gospel Mission v. Woods*,
　142 S. Ct. 1094 (2022) ............................................................................3, 4

*Slattery v. Hochul,*
　61 F.4th 278 (2d Cir. 2023).................................................................1, 8, 9

*Spencer v. World Vision, Inc.*,
   633 F.3d 723 (9th Cir. 2011).................................................................................4

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
   41 F.4th 931, 946 (7th Cir. 2022)..........................................................................6

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
   41 F.4th 931 (7th Cir. 2022)..................................................................................8

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ..........................................................................................2, 3

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) ..........................................................................................6

*Watson v. Jones*,
   80 U.S. 679 (1871) ................................................................................................4

*Yim v. City of Seattle*,
   63 F.4th 783 (9th Cir. 2023)................................................................................10

**Statutes**

42 U.S.C. § 2000e-1.....................................................................................................4

Alaska Stat. § 18.80.300 ..............................................................................................4

Cal. Gov't Code § 12926..............................................................................................4

WRC § 49.60.040.........................................................................................................7

WRC § 49.60.180.........................................................................................................9

WRC § 49.60.208.........................................................................................................9

WRC § 49.60.222.........................................................................................................7

#### INTRODUCTION

The Religion Clauses create a sphere of autonomy for religious organizations, giving them "independence from secular control or manipulation" to decide "matters of [internal] government." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). This ensures they can freely define and further their religious missions, which often include noble causes of serving the less fortunate—like the Mission does here.

Contrary to the State's assertions, this right to autonomy includes a coreligionist exemption, as supported by Supreme Court precedent. Indeed, the courts of appeal have recognized for decades the detrimental burdens on religious organizations antidiscrimination employment law would impose. Further, the State miscomprehends comparability under the Free Exercise Clause: the WLAD fails general applicability because it exempts some employers entirely, undermining any interest in combating discrimination. And the Mission's right to association applies full force in the employment context, as the Second Circuit recently held in *Slattery v. Hochul,* 61 F.4th 278, 286 (2d Cir. 2023). An injunction is warranted.

#### ARGUMENT

**I.    The Mission has standing and this Court has jurisdiction.**

As explained in the Mission's Opposition to the State's Motion to Dismiss, ECF No. 15, this Court has jurisdiction. The Mission will not rehash all of those arguments here, but a few points need clarification. First, the State continues to characterize its past action as something less than enforcement. *See* ECF No. 16 ("MPI Resp.") at 2–3. But pre-enforcement standing does not hinge on whether the

State has previously enforced the law at issue *against the plaintiff*. *See* ECF No. 15 at 7–14. Rather, the State is actively enforcing the law "against the same conduct" that the Mission engages in, which suffices for standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). The State itself acknowledges its investigation of SPU is a "quasi-criminal ongoing civil *enforcement action*." Motion to Dismiss at 15, *Seattle Pac. University v. Ferguson,* No. 3:22-cv-05540 (W.D. Wash. Oct. 26, 2022) (cleaned up and emphasis added). And it admits the investigation's purpose is to "sort out" and "categor[ize]" Seattle Pacific's employees to "determine which positions are ministerial and which are not." Reply in Support of Motion to Dismiss at 6, *Seattle Pac. University v. Ferguson*, No. 3:22-cv-05540 (W.D. Wash. Oct. 26, 2022) (cleaned up).

 Such an intrusive inquiry into a religious organization—where the government seeks to parse employees position-by-position to determine if they are sufficiently religious-enough to warrant protection—constitutes "enforcement" of the law. Indeed, the threat of such "administrative action" that requires a party "to divert significant time and resources" and hire counsel "justif[ies] pre-enforcement review." *SBA List*, 573 U.S. at 165; *see also N.L.R.B. v. Cath. Bishop of Chicago,* 440 U.S. 490 (1979) ("the very process of inquiry" "may impinge on rights guaranteed by the Religion Clauses"). Simply put, the Mission is "engag[ing] in the same [conduct] that was the subject of a prior enforcement proceeding," thus posing a credible threat of enforcement. *SBA List*, 573 U.S. at 166.

 And in any event, enforcement history is effectively irrelevant because "the [S]tate's refusal to disavow enforcement of [the WLAD] against [the Mission]

Reply in Support of Motion for Preliminary Injunction - 2

*during this litigation* is strong evidence that the state intends to enforce the law." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2903 (2022) (emphasis added). In fact, the State is currently arguing the Mission's hiring practices *are* unlawful. *See* MPI Resp. at 1–2, 8–11.

Second, the State cites five complaints that have been submitted against the Mission, proving the Mission's fear of enforcement is not speculative. *See* ECF Nos. 16-1, 16-2. While the State has opted not to prosecute those complaints, it admits it did not do so because those complaints were procedurally defective—they were either untimely or not filed by an employee. *Id.* What's more, the majority of the complaints were filed, or alleged discrimination, pre-*Woods*, when the WLAD's religious employer exemption was completely intact; the law then did not allow the State to prosecute those complaints. The fact that "any person" can file a complaint under the law—and several have—"bolster[s]" the threat of enforcement. *SBA List*, 573 U.S. at 164. Because "the universe of potential complainants" is not limited to the government, "there is a real risk of complaints from" religious, philosophical, and ideological opponents—evidenced by the fact two complaints were submitted *after* this lawsuit was filed and made public. *Id.*

**II.    The Mission is likely to succeed on the merits of its claims.**

   **A.    The WLAD violates the Mission's autonomy rights.**

The State knows the WLAD interferes with the Mission's internal employment decisions, so it doesn't try to argue otherwise. Instead, the State discounts the Mission's right to hire only coreligionists. But this bedrock constitutional principle has long been recognized both by legislatures and the

courts. *See, e.g.*, *Watson v. Jones*, 80 U.S. 679, 729 (1871); 42 U.S.C. § 2000e-1 (Title VII's religious employer exemption). Though the Religion Clauses guarantee it, "the freedom of religious groups to select their own" predates the founding. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 184 (2012); *see id.* at 182–85 (discussing this history). The right is so well understood that nearly every state employment law exempts religious organizations, giving them full autonomy to conduct their internal operations as they see fit. *See, e.g.*, Alaska Stat. § 18.80.300(5); Cal. Gov't Code § 12926(d).

While the Supreme Court has not yet needed to endorse a coreligionist exemption given the ubiquity of these statutory exemptions, the Court's "precedents suggest that the guarantee of church autonomy" includes such a right. *Seattle's Union Gospel Mission v. Woods*, 142 S. Ct. 1094, 1096 (2022) (Alito, J., respecting the denial of certiorari). And "the courts of appeals have generally protected the autonomy of religious organizations to hire personnel who share their beliefs." *Id.* at 1094. In fact, various courts have held the religious autonomy doctrine protects employing only coreligionists. *See, e.g.*, *Bryce v. Episcopal Church in the Diocese of Colorado,* 289 F.3d 648, 659 (10th Cir. 2002); *Butler v. St. Stanislaus Kostka Cath. Acad.*, 609 F. Supp. 3d 184, 198 (E.D.N.Y. 2022).

The Title VII cases also all support a constitutional coreligionist exemption. The courts of appeal in those cases all noted the likely constitutional violations that would occur absent Title VII's religious employer exemption, so they limited their specific holdings to Title VII under the canon of constitutional avoidance. *See, e.g.*, *Spencer v. World Vision, Inc.*, 633 F.3d 723, 728 (9th Cir. 2011) (O'Scannlain, J.,

concurring) ("the canon of constitutional avoidance counsels against [a] stringent interpretation" of the exemption). The Supreme Court itself implicitly recognized the constitutional coreligionist exemption in upholding Title VII's religious employer exemption against an Establishment Clause attack. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334–39 (1987). There the Court explained how—absent an exemption for religious organizations—Title VII could "burden[ ] the exercise of religion," *id.* at 338, by forcing religious groups "to predict which of [their] activities [the government] will consider religious" thus pressuring them to alter "the way they carry out their religious missions" to avoid "potential liability," *id.* at 336 (cleaned up).

Lastly, the State's cited cases are inapposite. Neither *E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986), nor *E.E.O.C. v. Pac. Press Pub. Ass'n,* 676 F.2d 1272 (9th Cir. 1982), dealt with coreligionist hiring, but with the unequal payment of wages and insurance benefits. And in analyzing free exercise claims to Title VII, both applied a form of strict scrutiny.[1] *Fremont,* 781 F.2d at

---

[1] The right to religious autonomy "is categorical, not contingent; there is no balancing of competing interests, public or private." *Korte v. Sebelius,* 735 F.3d 654, 678 (7th Cir. 2013). So constitutional scrutiny does not apply to the Mission's internal coreligionist hiring. *Hosanna-Tabor*, 565 U.S. at 190; *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940, 946 (9th Cir. 1999) ("Some religious interests ... are so strong that no compelling state interest justifies

1368; *Pacific Press*, 676 F.2d at 1279. Moreover, the State's reliance on *Doe v. Catholic Relief Services*, 618 F. Supp. 3d 244 (D. Md. 2022) and *Billard v. Charlotte Catholic High School*, No. 3:17-cv-00011, 2021 WL 4037431 (W.D.N.C. Sept. 2, 2021) (which is pending appeal at the Fourth Circuit), is misplaced because both incorrectly interpreted the scope of Title VII's religious employer exemption, splitting with other courts *See, e.g.*, *Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n*, 571 F. Supp. 3d 571, 591 (N.D. Tex. 2021); *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 946 (7th Cir. 2022) (Easterbrook, J., concurring). Yet the Mission's constitutional autonomy rights are not limited by lower court interpretations of Title VII's text.

**B.    The WLAD is not generally applicable because it underinclusive.**

The State argues the WLAD is generally applicable because it treats religious organizations the same as "comparable" secular employers. MPI Resp. at 11–13. The State, however, misunderstands what it means to be "comparable." Comparability does not depend on how many employees an organization has. Rather, "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). Put another way, the Court must first determine the government's compelling interest *and then*

---

government intrusion into the ecclesiastical sphere."). Regardless, the State does not even try to justify the WLAD under strict scrutiny.

weigh the religious activity (the Mission's hiring practices) against the "exempted" activity (small employers' hiring practices).

If the State's interest is to prevent discrimination, the WLAD is woefully underinclusive. Any small employer with fewer than eight employees in Washington can freely discriminate and impose any employment practices they like. WRC § 49.60.040(11). But the Mission remains subject to the WLAD for its non-ministerial hires. The State also ignores the fact other organizations remain permitted to "discriminate" in their services. *See id.* §§ 49.60.040(2), 49.60.222(3). Plus, the mere creation of a mechanism for individualized exemptions makes the WLAD not generally applicable, regardless of if it was ever used. *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1879 (2021). Because the WLAD "fail[s] to prohibit" secular activity that hinders the State's "interests in a similar or greater degree" than the religious activity, it is not generally applicable. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

C.   **The WLAD violates the Mission's association rights.**

Next, the State argues there is no right to expressive association in the employment context. MPI Resp. at 14–15. But there is no employment exception to the First Amendment. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 213 L. Ed. 2d 755, 142 S. Ct. 2407, 2424 (2022) (applying the First Amendment to school's suspension of a football coach). The State's cited cases fail to support its position. First, *Hishon v. King & Spalding*, 467 U.S. 69 (1984), did not hold that the right to expressive association was inapplicable to employment disputes. Instead, the Supreme Court held that a large, for-profit law firm failed to show how the

1  "association" at issue—making women partners—would limit its "ability to
2  contribute its ideas and beliefs." *Hishon*, 467 U.S. at 78 (cleaned up). Second, both
3  *Billard*, 2021 WL 4037431, and *Starkey v. Roman Cath. Archdiocese of*
4  *Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1209 (S.D. Ind. 2020), incorrectly added
5  a "non-commercial contexts" requirement to *Dale* that is found nowhere in
6  precedent. Nothing in *Dale* suggests the right does not apply simply because the
7  member receives a paycheck. *Green v. Miss United States of Am., LLC*, 52 F.4th
8  773, 804–05 (9th Cir. 2022) (Vandyke, J., concurring) (rejecting the contention
9  that because an organization has "commercial aspects" it cannot be an expressive
10 association). Indeed, "it will not do simply to ignore the First Amendment ...
11 merely because compensation is received." *Riley v. Nat'l Fed'n of the Blind of*
12 *N.C., Inc.,* 487 U.S. 781, 801 (1988).

13    To the contrary, multiple courts have held that the right to expressive
14 association does apply in the employment context. *See, e.g.*, *Bear Creek,* 571 F.
15 Supp. at 613–16; *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 822
16 (E.D. Mo. 2018). Most notably, the Second Circuit's decision from just two
17 months ago in *Slattery v. Hochul,* 61 F.4th 278, 286 (2d Cir. 2023), is directly on
18 point. There, a pro-life pregnancy center claimed New York's law that prohibited
19 discrimination in employment based on "reproductive health decision making"
20 impinged its right to expressive association by forcing it to employ individuals
21 who supported abortion. 61 F.4th at 283–84. The Second Circuit agreed, holding
22 the center's "right to expressive association allows [it] to determine that its
23 message will be effectively conveyed only by employees who sincerely share its

views." *Id.* at 288. The New York law violated that right by "forc[ing] [the center] to employ individuals who act or have acted against the very mission of [the] organization." *Id.* And the court was not concerned with the fact the law forced association in *employment*: "'compelled hiring, like compelled membership, may be a way in which a government mandate can affect in a significant way a group's ability to advocate public or private viewpoints.'" *Id.* (citation omitted). Same here. The WLAD "foreclos[es] [the Mission's] ability to reject employees whose actions suggest that it believes the opposite of the message it is trying to convey." *Id.*

### D. The WLAD infringes the Mission's freedom of speech.

The Mission's speech is not commercial speech. The Mission is a *nonprofit* organization asking fellow believers to join in its work for a higher purpose; it does not act "*primarily* out of economic motivation" when it publishes its hiring statements. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 (9th Cir. 2021). In any event it does not matter if the speech is commercial or not because the State fails to justify the publication ban, WRC § 49.60.180(4), even under intermediate scrutiny. *See Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n*, 447 U.S. 557 (1980). Instead, the State says the Mission's speech is unprotected because its underlying action—employing *only* coreligionists for all positions—is unprotected. MPI Resp. at 16–17. But the Mission's right to hire only coreligionists *is* protected by the First Amendment, so its speech is too.

Further, the disclosure provision restricts the Mission's speech by prohibiting it from *asking* about an employee's religious beliefs—such inquiry would be necessary in order to "require disclosure" of those beliefs. WRC § 49.60.208(1).

Reply in Support of Motion for Preliminary Injunction - 9

The Ninth Circuit recently held that a similar law violated landlords' freedom of speech by prohibiting them from "requiring disclosure or inquiring about" prospective tenants' criminal records. *Yim v. City of Seattle*, 63 F.4th 783, 789, 799 (9th Cir. 2023). Like the law in *Yim*, prohibiting someone from requiring disclosure of certain information necessarily regulates speech. And it matters not whether the provision restricts speech only with respect to current employees, future employees, or both. MPI Resp. at 18. It restricts speech all the same.

### III. The Mission satisfies the other preliminary injunction factors.

The State's argument on the other preliminary injunction factors largely repeats its standing arguments, asserting there is no irreparable harm because there is no threatened WLAD enforcement, *id.* at 20, and characterizing the Mission's chill on its First Amendment rights as "modest burdens," *id.* at 19. Yet, as explained, these harms are actual, imminent, and irreparable. *See* ECF Nos. 14 at 20, 15 at 7–14. As much as the State wants to soften the chill on the Mission's First Amendment rights, it "unquestionably constitutes irreparable injury" which is "sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (cleaned up).

Finally, an injunction benefits the public interest, for even if there is "some hardship" on the State, equity favors the Mission, "whose First Amendment rights are being chilled." *Id.* And the State would only be prohibited from enforcing the WLAD *against the Mission*, leaving it free to enforce it against everyone else.

### Conclusion

The Court should grant the Mission's Motion for Preliminary Injunction.

Reply in Support of Motion for Preliminary Injunction - 10

Respectfully submitted this 10th day of May 2023,

*s/ Katherine Anderson*
Katherine Anderson
WA Bar No. 41707
AZ Bar No. 29490
Ryan Tucker*
AZ Bar No. 034382
Jeremiah Galus*
AZ Bar No. 30469
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
kanderson@ADFlegal.org
rtucker@ADFlegal.org
jgalus@ADFlegal.org

Jacob E. Reed*
VA Bar No. 97181
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
jreed@ADFlegal.org

*Counsel for Plaintiff*

* Admitted *Pro Hac Vice*

Reply in Support of Motion for Preliminary Injunction - 11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10th, 2023, I electronically filed the foregoing paper with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

*s/ Katherine Anderson*
Katherine Anderson
