FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 01, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNION GOSPEL MISSION OF YAKIMA, WASH., <br><br>             Plaintiff, <br><br> vs. <br><br> ROBERT FERGUSON, et al. <br><br>             Defendants. | No. 1:23-CV-3027-MKD <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION <br><br> **ECF Nos. 11, 14** |

Before the Court are Defendants' Motion to Dismiss, ECF No. 11, and Plaintiff Union Gospel Mission of Yakima, Washington ("YUGM")'s Motion for a Preliminary Injunction, ECF No. 14. On May 31, 2023, the Court held a hearing on both motions. Ryan Tucker, David DeWolf, and Jacob Reed appeared on behalf of YUGM. David Ward and Daniel Jeon appeared on behalf of Defendants Robert Ferguson, in his official capacity as Attorney General of Washington State; Andreta Armstrong, in her official capacity as Executive Director of the Washington State Human Rights Commission; and Deborah Cook, Guadalupe Gamboa, Jeff Sbaih, and

ORDER - 1

Han Tran, in their official capacities as Commissioners of the Washington State Human Rights Commission.[1]  The Court has reviewed the record, heard from counsel, and is fully informed.  For the reasons below, the Court grants Defendants' Motion to Dismiss, ECF No. 11, and denies as moot YUGM's Motion for Preliminary Injunction, ECF No. 14.

## BACKGROUND

### A. *Woods v. Seattle's Union Gospel Mission*

In 2021, the Washington Supreme Court issued its opinion in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021).  There, the Washington Supreme Court analyzed an as-applied constitutional challenge to the Washington Law Against Discrimination's ("WLAD") religious exemption[2] with

_____

[1] Throughout this Order, the Court refers to the defendants collectively as "Defendants" unless referring to Attorney General Ferguson ("AG Ferguson") or the Washington State Human Rights Commission ("WSHRC") in their separate capacities.

[2] "'Employer' includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and *does not include any religious or sectarian organization not organized for private profit*."  RCW 49.60.040(11) (emphasis added).

respect to non-ministerial positions.  *Id.* at 1063-70.  The Washington Supreme Court held that the religious exemption should parallel the ministerial exception set forth by the United States Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565 U.S. 171 (2012), and refined by the Supreme Court's decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).  *Woods*, 481 P.3d at 1070.

Seattle's Union Gospel Mission ("SUGM") is a Christian nonprofit that provides services to the city's homeless population.  *Id.* at 1063.  Its services include a legal aid clinic at which Woods interned as a law student.  *Id.*  Before he began interning, Woods "signed SUGM's statement of faith, which requires, among other things, agreement that the Bible is the infallible word of God [but] did not mention sexual orientation."  *Id.* at 1074 (Stephens, J., concurring in part); *see id.* at 1063.  However, "[a]s a condition of employment, SUGM requires employees to obey a biblical moral code that excludes 'homosexual behavior.'"  *Id.* at 1073 (Stephens, J., concurring in part) (citation omitted).

After Woods graduated from law school, a staff attorney position opened at the legal aid clinic, and Woods inquired about the position.  *Id.* at 1063.  Woods told the staff that he was in a same-sex relationship.  *Id.*  SUGM told Woods that his relationship was "contrary to biblical teaching" and that it would not hire him, but Woods applied for the position anyway.  *Id.*  SUGM did not change its hiring policy

ORDER - 3

or hire Woods.  *Id.*

Woods brought an employment discrimination suit under the WLAD against SUGM in King County Superior Court.  *Id.*  Woods argued that RCW 49.60.040(11)'s employer exemption was unconstitutional as applied to him because the position of staff attorney was not related to the organization's religious practices or activities.  *Id.*  "SUGM argued that the religious exemption to WLAD applied under RCW 49.60.040(11), which excludes religious and sectarian nonprofit organizations from the definition of 'employer.'"  *Id.*  SUGM moved for summary judgment, which the trial court granted.  *Id.*

The Washington Supreme Court has previously found WLAD's religious exemption facially constitutional under article I, section 12's privileges and immunities clause of Washington's constitution.  *See Ockletree v. Franciscan Health Sys.*, 317 P.3d 1009 (2014) (plurality opinion).  In *Woods*, however, the Washington Supreme Court found that the same provision may be unconstitutional as applied to Woods.  *Woods*, 481 P.3d at 1067.  The Washington Supreme Court discussed *Hosanna-Tabor* and *Our Lady of Guadalupe*'s guidance to assess the potential limitations of the religious employer exemption.  *Id.*  The Court looked to *Our Lady of Guadalupe* because "SUGM argu[ed] that all of its employees are expected to minister to their clients."  *Id.*  The Court determined that it should apply the ministerial exception set forth in *Hosanna-Tabor* and refined in *Our Lady of*

*Guadalupe* "[t]o properly balance the competing rights advanced by Woods and

SUGM." *Id.* at 1070. Ultimately, it concluded that the trial court did not have a

sufficient factual record to determine whether the position of staff attorney was

"ministerial" as defined under *Hosanna-Tabor* and *Our Lady of Guadalupe* and

remanded so an inquiry could take place. *Id.* at 1070 ("It is best left to the trial court

to determine whether staff attorneys can qualify as ministers and, consequently,

whether Woods' discrimination claim under WLAD must be barred.").

SUGM petitioned the United States Supreme Court for a writ certiorari. *See*

*Seattle's Union Gospel Mission v. Woods*, 142 S. Ct. 1094, 1094 (2022). It was

denied. *Id.* After the matter was remanded to King County Superior Court, the case

was dismissed without prejudice. *Woods v. Seattle Union Gospel Mission*, Case No.

17-2-29832-8 SEA, Dkt. 81.

**B.** *Seattle Pacific University v. Ferguson*

In May 2022, the Washington Attorney General's Office ("AGO") received

complaints regarding Seattle Pacific University ("SPU")'s employment practices.

ECF No. 11 at 8.[3] The AGO represents that "[n]umerous SPU students and faculty

raised concerns that [SPU's] employment policies may violate the WLAD's

---

[3] Throughout this Order, the Court's citations reference page numbers included in the

digital stamp provided by CM/ECF.

ORDER - 5

prohibition on employment discrimination based on sexual orientation." ECF No. 11 at 8. In response, the AGO sent SPU a letter, informing SPU that the AGO was "opening an inquiry to determine whether [SPU] is meeting its obligations under state law," and citing to *Woods* as an authority to support its inquiry. ECF No. 1-5 at 2-4. The AGO requested cooperation and requested that SPU provide certain documents and information to "ensure that [SPU] is in compliance with its legal obligations regarding workplace discrimination[.]" ECF No. 1-5 at 1-2. It did not include potential consequences should SPU decline to cooperate with the inquiry. *See* ECF No. 1-5 at 1-3. SPU declined to cooperate and instead filed suit in the Western District of Washington. *See Seattle Pacific University v. Ferguson*, 3:22-CV-05540-RJB (W.D. Wash., July 27, 2022).

SPU sought from the district court a declaration that the First Amendment protects SPU's:

> decisions regarding its ministerial employees free from governmental interference; . . . ability to make employment decisions based on its sincerely held religious beliefs; [and] [d]eclare that the Washington Law Against Discrimination cannot be applied to Seattle Pacific University in a manner that violates the University's rights under the United States Constitution[.]

*Id.* at 21 ¶¶ b-d. SPU also sought a preliminary injunction enjoining the AGO from potentially enforcing the WLAD against it. *Id.* at 21 ¶ e.

The AGO moved to dismiss the first amended complaint. *See Seattle Pacific University*, 3:22-CV-05540-RJB, Doc. 18. It argued that SPU lacked standing. *Id.* at

ORDER - 6

11-19.  The AGO made two arguments in the alternative: first, the *Younger*[4] doctrine required abstention, *id.* at 20-23, and second, the first amended complaint failed to state a claim upon which relief can be granted, *id.* at 23-30.

The district court granted the motion for dismissal.  *Seattle Pacific University*, 3:22-CV-05540-RJB, Doc. 29, Doc. 33 at 32-40.  The district court assumed "for the benefit of th[e] proceeding" that SPU's first amended complaint alleged a sufficient injury in fact and causation.  *Seattle Pacific University*, 3:22-CV-05540-RJB, Doc. 33 at 33.  The district court referenced the AGO's "effort to investigate [SPU's] hiring practices" to support its assumption.  *Id.* at 33-34.  However, the district court did not make legal determinations with respect to injury in fact and causation.  *Id.* The district court determined SPU failed to establish the third prong of standing, finding SPU's claim was not redressable in federal court.  *Id.*  Specifically, the district court determined that it could not make the requested declarations because they would be akin to advisory opinions and that SPU's request for a preliminary injunction would require the district court to impermissibly change or limit a state law.  *Id.* at 34-36.  The district court also noted that it should abstain on comity grounds under *Younger* given that there was an active inquiry into SPU's hiring practices.  *Id.* at 36-38.

---

[4] *Younger v. Harris*, 401 U.S. 37 (1971).

ORDER - 7

1    SPU has appealed.  The matter is fully briefed but no date for argument has

2    been set.  *Seattle Pacific University v. Ferguson*, No. 22-35986, Dkts. 16, 21, 26, 32,

3    41.

4    **C. YUGM**

5    YUGM is a private, nonprofit religious organization in Yakima, Washington,

6    that operates a homeless shelter and thrift stores, the funding from which supports the

7    homeless shelter, and provides other services to the community.  ECF No. 1 at 2 ¶ 2,

8    9-12 ¶¶ 40-48.  YUGM avers that "its overarching goal through all of its programs

9    and services is to spread the Gospel of Jesus Christ and Christian teachings to

10   others."  ECF No. 1 at 2 ¶ 4.  YUGM asserts that it provides services to "everybody

11   equally," but it simultaneously requires its employees to "adhere to certain Christian

12   belief and behavior requirements—including abstaining from any sexual conduct

13   outside of biblical marriage between one man and one woman[.]"  ECF No. 1 at 2-3

14   ¶¶ 5-6.  YUGM requires its employees to be coreligionists, who it defines as "those

15   who agree with its religious beliefs and who will adhere to its religious tenets and

16   behavior requirements."  ECF No. 1 at 50-51 ¶ A(a).  Indeed, YUGM "requires all

17   employees to embrace and follow its beliefs on marriage and sexuality and thus

18   prohibits them from engaging in sexually immoral conduct."  ECF No. 1 at 15 ¶ 66.

19   YUGM will not hire an individual who does not adhere to its beliefs, and thereby

20

refuses to hire gay, lesbian, bisexual, and pansexual individuals.  *See* ECF No. 1 at 2-3 ¶¶ 5-6, 15 ¶ 66.

YUGM has two open positions it seeks to fill: IT Technician and Operations Assistant.  ECF No. 1 at 5 ¶ 13; ECF No. 1-6; ECF No. 1-7.  YUGM had these job opportunities advertised on Indeed.com, but it removed them for multiple reasons.  YUGM references hostility it received regarding its application.  ECF No. 1 at 5 ¶ 13.  YUGM explains that a prior applicant posted snippets of its application on Reddit.com.  ECF No. 1 at 35 ¶ 150; ECF No. 14-4.  YUGM asserts the attention the Reddit forum garnered caused Newsweek to write a story about the application.  ECF No. 1 at 36 ¶ 151; *see* ECF No. 14-3; *see also Thrift Store Job Application Asks 'What Do You Believe About the Bible?'*, THE DAILY DOT, (Aug. 31, 2022), https://perma.cc/27YU-W9Q7.  YUGM pleads that the newfound attention it received from the Reddit forum and the articles caused it to "fear[] it would be investigated for its coreligionist hiring and that it would incur substantial liability under the WLAD for its practices."  ECF No. 1 at 37 ¶ 157.  YUGM then removed its job openings from Indeed.com "to reduce the number of disagreeable applications and to lessen the risk of enforcement and punishment under the WLAD."  ECF No. 1 at 37 ¶ 158.  YUGM now complains that its applications have decreased.  ECF No. 1 at 37 ¶ 159.  YUGM also alleges that this fear has caused it to chill its own speech because it has refrained from posting its newly drafted Religious Hiring Statement on

1  its website.  ECF No. 1 at 37 at ¶ 161; ECF No. 1-8 at 2.  It asserts that it "is thus

2  suffering ongoing harm because it is unable to fully advertise its positions and is

3  forced to self-censor, modify its behavior, and chill its speech to avoid punishment

4  under the WLAD."  ECF No. 1 at 38-39 ¶ 164.

5       YUGM argues that it "faces multiple forms of imminent punishment and

6  liability for violating the WLAD[.]"  ECF No. 1 at 39 ¶ 165.  YUGM acknowledges

7  that the WLAD permits private parties to bring claims against it.  ECF No. 1 at 39 ¶

8  165.

9       YUGM alleges violations of (1) the First Amendment's Free Exercise Clause,

10  (2) the First Amendment's Establishment Clause, and (3) the First Amendment's

11  right of expressive association.  ECF No. 1 at 40-47 ¶¶ 170-210, 49-50 ¶¶ 222-29.

12  YUGM also challenges the constitutionality of the WLAD, alleging it violates the

13  Free Speech Clause of the First Amendment.  ECF No. 1 at 47-48 ¶¶ 211-21.  YUGM

14  also moves the Court to declare YUGM has a constitutional right to "prefer and hire

15  only coreligionists," rendering the Washington Supreme Court's statutory

16  interpretation in *Woods* unconstitutional.  ECF No. 1 at 50-51 ¶ A.  YUGM also

17  seeks a preliminary injunction enjoining Defendants from enforcing the WLAD

18  against YUGM and other religious organizations.  ECF No. 1 at 51 ¶ B.

19

20

**D. The Complaint**

On March 3, 2023, YUGM filed the Complaint in which it alleges violations of (1) the First Amendment's Free Exercise Clause, (2) the First Amendment's Establishment Clause, and (3) the First Amendment's right of expressive association. ECF No. 1 at 40-47 ¶¶ 170-210, 49-50 ¶¶ 222-29.  YUGM also seeks a declaration that the WLAD as interpreted in *Woods v. Seattle's Union Gospel Mission* is unconstitutional.  ECF No. 1 at 50-51 ¶ A.  It also asks for this Court to declare there is a constitutional right for religious employers to hire coreligionists, which it defines as "those who agree with its religious beliefs and who will adhere to its religious tenets and behavior requirements," even in non-ministerial positions.  ECF No. 1 at 50-51 ¶ A.  Moreover, it seeks a preliminary injunction enjoining Defendants from:

> Enforcing (including through investigations) the WLAD  against [YUGM] (and other religious organizations with similar religious beliefs and hiring practices) for engaging in its constitutionally protected activities, including: (a) its right to prefer employing coreligionists, (b) its right to religious exercise, (c) its right to associate for expressive purposes, (d) its right to communicate its beliefs and behavior requirements to others, including by publishing its Religious Hiring Statement, and (e) its right to be free from excessive governmental entanglement.

ECF No. 1 at 51 ¶ B.

ORDER - 11

# LEGAL STANDARD

## A. Article III Standing

"Article III [of the Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A case or controversy under Article III requires a plaintiff to "have a 'personal stake' in the case—in other words, standing." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). Article III standing requires a showing "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "[C]ertain harms readily qualify as concrete injuries under Article III." *Id.* at 2204. These include "traditional tangible harms, such as physical harms and monetary harms." *Id.* Harms precluded by the Constitution can also be concrete. *Id.*

### A. Pre-enforcement Challenges

Pre-enforcement review is permitted "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (hereinafter "*SBA List*"). This standard applies to "[c]onstitutional challenges based on the First Amendment" because they "present unique standing considerations." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Pre-enforcement challenges only require a

1   "tempered" injury in fact. *Id.* (citing *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143

2   (1974)).  Indeed, permitting litigation prior to the potential consequences has been

3   recognized by the Supreme Court. *Id.*; *Spokeo, Inc. v. Robins*, 578 U.S. 340 (2016)

4   ("*Spokeo II*") (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)

5   (abridgment of free speech) and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508

6   U.S. 520 (1993) (infringement of free exercise) (recognizing an abridgment of free

7   speech and infringement of free exercise have both been held to be sufficient injuries

8   in pre-enforcement cases)); *see SBA List*, 573 U.S. at 161-162; *Steffel v. Thompson*,

9   415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to

10  actual arrest or prosecution to be entitled to challenge a statute that he claims deters

11  the exercise of his constitutional rights."); *MedImmune, Inc. v. Genentech, Inc.*, 549

12  U.S. 118, 128–129 (2007) ("[W]here threatened action by *government* is concerned,

13  we do not require a plaintiff to expose himself to liability before bringing suit to

14  challenge the basis for the threat") (emphasis in original).  Accordingly, to establish

15  an injury in fact in a pre-enforcement challenge, a plaintiff must "allege[] 'an

16  intention to engage in a course of conduct arguably affected with a constitutional

17  interest, but proscribed by a statute, and there exists a credible threat of prosecution

18  thereunder.'"  *SBA List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S.

19  289, 298 (1979)).

20

1     *B.  Burden of Proof*

2     "'The party invoking federal jurisdiction bears the burden of establishing' the

3     elements of standing." *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting

4     *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  All three elements of standing

5     "must be supported . . . with the manner and degree of evidence required at the

6     successive stages of the litigation." *Defs. of Wildlife*, 504 U.S. at 561.  "At the

7     pleading stage, [the plaintiff] is not required to *prove* the[] elements [of standing]."

8     *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1054 (9th Cir. 2022) (emphasis in

9     original).  YUGM must only show that it "allege[d] facts that, when accepted as true,

10    show that [the elements] are satisfied. *Id.*; *Arizona v. Yellen*, 34 F.4th 841, 849 (9th

11    Cir. 2022) ("the Supreme Court has . . . instructed [the courts] to take as true all

12    material allegations in the complaint and construe the complaint in favor of the

13    plaintiff").

14                                 **DISCUSSION**

15    Defendants move to dismiss this action, contending that YUGM has failed to

16    establish Article III standing.  ECF No. 11 at 11-22.  Defendants specifically allege

17    that YUGM has not sufficiently demonstrated injury in fact, causation, and

18    redressability.  ECF No. 11 at 11-22.  Defendants also seek dismissal contending that

19    YUGM's claims are not ripe for review.  ECF No. 11 at 22-25.  As the proponent of

20    Article III standing, YUGM bears the burden of demonstrating that there is a

1   sufficient case or controversy for the Court to exercise its limited jurisdiction.

2   **A. Injury in Fact**

3     The parties dispute whether a credible threat of prosecution has occurred.

4   *Compare* ECF No. 11 at 14-15 *with* ECF No. 15 at 12-19.  YUGM argues that

5   Defendants do not contest and thereby concede that YUGM intends to engage in a

6   course of conduct that is arguably affected with a constitutional interest and that

7   conduct is proscribed by statute.  ECF No. at 15 at 13-14.  However, given the

8   establishment of Article III standing falls to YUGM as the proponent of standing, the

9   Court will assess whether the requisites have been sufficiently pled by YUGM.

10     *1.  Intention to Engage in a Course of Conduct Arguably Affected with a*

11      *Constitutional Interest*

12     YUGM pleads that, as a Christian non-profit, the "Gospel of Jesus Christ and

13   Christian teachings" are essential to YUGM's mission and the services it offers.  *See*

14   ECF No. 1 at 2 ¶ 4.  YUGM pleads that it accepts clients of all sexual orientations

15   and gender identities.  ECF No. 1 at 9 ¶¶ 39-40.  However, YUGM pleads it requires

16   its employees to "adhere to certain Christian belief and behavior requirements—

17   including abstaining from any sexual conduct outside of biblical marriage between

18   one man and one woman[.]"  ECF No. 1 at 2-3 ¶¶ 5-6.  Indeed, YUGM pleads it

19   requires its employees to be coreligionists, and it intends to require its new hires to be

20   coreligionists.  ECF No. 1 at 2-3 ¶¶ 5-6, 15 ¶ 66.  Defendants do not contest that

ORDER - 15

1    YUGM intends to do so.  *See* ECF Nos. 11, 18.  Thus, YUGM's pleadings are

2    sufficient to establish that YUGM has an intention to engage in a course of conduct

3    arguably affected with a constitutional interest—the right to free exercise.

4         *2.  Proscribed by a Statute*

5         The pleadings discussed above are also sufficient to establish that YUGM's

6    intended course of conduct is potentially proscribed by statute.  The *Woods* opinion

7    informed religious organizations that an applicant or employee is permitted to bring

8    an employment discrimination claim against an organization if the position for which

9    the applicant applies or the employee holds is non-ministerial.  *Woods*, 481 P.3d at

10   1069 (holding "that article I, section 12 is not offended if WLAD's exception for

11   religious organizations is applied concerning the claims of a 'minister' as defined by

12   *Our Lady of Guadalupe* and *Hosanna-Tabor*").  YUGM pleads that it intends to

13   require its future IT Technician and Operations Assistant—which YUGM concedes

14   are non-ministerial positions—to be coreligionists, who believe that engaging in

15   "immoral sexual conduct" is a sin.  Accordingly, YUGM admits that it will not hire a

16   gay, lesbian, bisexual, or pansexual applicant.  To do so would be proscribed by the

17   Washington Supreme Court's statutory interpretation of the WLAD's religious

18   exemption in *Woods*.

19

20

### 3. Credible Threat of Prosecution

Defendants argue there is no credible threat of prosecution. ECF No. 11 at 14-15. Defendants advise that there is no active investigation into YUGM's hiring or employment practices, ECF No. 11 at 14, and YUGM filed this action "out of the blue," ECF No. 11 at 9. Defendants note that the AGO has opened only a single inquiry under WLAD following the *Woods* decision, that inquiry being into SPU following a number of complaints from faculty, staff and students. ECF No. 11 at 7-9. In contrast, YUGM argues a credible threat of prosecution exists. It argues that Defendants' failure to disavow the enforcement of the law combined with the AGO's inquiry into SPU last year is sufficient to show that Defendants may enforce the WLAD as interpreted by *Woods* against it and other religious organizations. ECF No. 15 at 14-15.

The Court must consider three factors to determine whether YUGM's "claimed threat of enforcement is genuine enough to confer standing." *Yellen*, 34 F.4th at 850. These three factors, known as the *Thomas* factors, are:

> (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.

*Id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)) (internal quotation marks omitted).

ORDER - 17

a.  Concrete Plan

"A concrete plan need not be 'cast in stone' but must be 'more than a hypothetical intent to violate the law.'"  *Id.* (quoting *Thomas*, 220 F.3d at 1139). YUGM intends to hire more than 50 employees this year, including an IT Technician and Operations Assistant which are non-ministerial positions.  ECF No. 1 at 31 ¶ 130, 34 ¶ 145, 38 ¶ 163.  YUGM intends to disregard job applications from anyone who is not a coreligionist, *see* ECF No. 1 at 16-17, 20 ¶¶ 70-75, 85, meaning it will exclude from its applicant pool anyone "who actively engages in any sexual activity outside of biblical marriage, such as homosexual conduct," ECF No. 15 at 13; *see* ECF No. 1 at 20 ¶ 85, 34 ¶ 145.  This is sufficient to establish that YUGM has a concrete plan to violate the *Woods*' statutory interpretation of the WLAD's religious exemption.

b.  Specific Warning or Threat

Defendants advise that they have "had no dealings with [YUGM]," ECF No. 11 at 6, noting that YUGM filed this action "out of the blue."  ECF No. 11 at 9.  The Complaint does not include an allegation that Defendants have communicated a specific warning or threat to YUGM.  *See* ECF No. 1.  At the May 31, 2023 hearing, YUGM conceded that Defendants have not communicated a specific warning or threat to it.  Instead, it relies on the fact that Defendants have not disavowed enforcement.

The Ninth Circuit has "interpreted the government's failure to *disavow* enforcement of the law as weighing in favor of standing."  *Tingley v. Ferguson*, 47

F.4th 1055, 1068 (9th Cir. 2022) (emphasis in original).  In *Tingley*, the appellate court found that Washington's failure to disavow enforcing the ban on conversion therapy, combined with its affirmative confirmation that the state would enforce the ban "as it enforces other restrictions on unprofessional conduct[,]" was sufficient to the second prong of the *Thomas* inquiry.  *Id.* (internal quotation marks omitted).  The Ninth Circuit found the same in *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021).  There, it explained that "the state's refusal to disavow enforcement of [the challenged law] . . . is strong evidence that the state intends to enforce the law and that [plaintiffs] face a credible threat" of enforcement.  *Id.*  In *Yellen*, the Ninth Circuit found that the federal government's failure to disavow the enforcement of the new provision, along with the agency's letter detailing the new provision's requirements and the agency's dedication to creating and outlining specific processes to enforce the new provision, was sufficient to meet the second *Thomas* factor.  *Yellen*, 34 F.4th at 850.  The Ninth Circuit has also found that in alleged violations of free speech, a "plaintiff need only demonstrate that a threat of potential enforcement will cause him to self-censor."  *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014).

AG Ferguson issued a press release after SPU filed its lawsuit in the Western District.  There, he stated:

> My office protects the civil rights of Washingtonians who have historically faced harmful discrimination. That's our job — we uphold

Washington's law prohibiting discrimination, including on the basis of sexual orientation.

*Attorney General Ferguson Confirms Civil Rights Investigation of Seattle Pacific University*, WASH. STATE OFF. OF THE ATT'Y GENERAL: NEWS RELEASES (July 29, 2022), https://www.atg.wa.gov/news/news-releases/attorney-general-ferguson-confirms-civil-rights-investigation-seattle-pacific.  Moreover, in the Motion to Dismiss he filed in *Seattle Pacific University*, he argued:

> And while the First Amendment clearly protects the University's employment practices with respect to its ministers, those protections do not extend to discrimination against the University's non-ministerial employees, to whom the WLAD's prohibition of employment discrimination on the basis of sexual orientation would apply.

*Seattle Pacific University*, 3:22-CV-05540-RJB, ECF No. 18 at 23.  These affirmative statements, combined with his failure to disavow, is sufficient to demonstrate the second *Thomas* factor with respect to AG Ferguson.  YUGM similarly argues that WSHRC has also failed to disavow enforcement of the *Woods* interpretation, but YUGM points to no similar statements or actions taken by the WSHRC.  *Tingley*, *California Trucking Association*, and *Yellen* all involve a failure to disavow in conjunction with an additional statement or affirmative action taken by the state actor.  Because YUGM has failed to make such an allegation with respect to WSHRC, YUGM has failed to demonstrate the second *Thomas* factor with respect to the WSHRC.

1   c.  <u>History of Past Enforcement</u>

2 Generally, "sparse enforcement history weighs against standing[.]"  *Tingley*,

3 47 F.4th at 1069.  However, "this factor has 'little weight' when the challenged law is

4 'relatively new and the record contains little information as to enforcement or

5 interpretation.'"  *Cal. Trucking Ass'n*, 996 F.3d at 653 (quoting *Wolfson v. Brammer,*

6 *616 F.3d 1045, 1060 (9th Cir. 2010)*.  The WLAD is not new; it was originally

7 enacted in the 1940s:

> WLAD was enacted in 1949 with the purpose of ending discrimination
> by employers "on the basis of race, creed, color, or national origin."
> *Griffin v. Eller*, 130 Wash.2d 58, 63, 922 P.2d 788 (1996). WLAD has
> expanded over the years to bar discrimination on the basis of age, sex,
> sexual orientation, and disability, and to incorporate a private right of
> action for employees and persons who use public accommodations.

*Ockletree*, 317 P.3d at 1012.  However, the Washington Supreme Court's

interpretation of the religious exemption was rendered in 2021.

 Defendants deny intending to enforce the WLAD in this context against

YUGM, and Defendants denied enforcing it against any other religious organizations

in the past.  *See* ECF No. 11 at 11-15.  At the May 31, 2023 hearing, YUGM

acknowledged that Defendants have not sent any direct communications to it that

would dispute Defendants' intention.

 YUGM next points to the letter the AGO sent to SPU to show past

enforcement.  Defendants argue the AGO was not enforcing the WLAD through that

letter, but instead characterize it as an "inquiry."  ECF No. 18 at 7-8.  The AGO's

ORDER - 21

inquiry letter to SPU included the following language:

> The AGO has recently learned about possible discriminatory employment policies and practices by Seattle Pacific University . . . that may violate the [WLAD]. I am writing to inform you that the AGO is opening an inquiry to determine whether the University is meeting its obligations under state law.   Specifically, we have learned of information that suggests that the University may utilize employment policies and practices that permit or require discrimination on the basis of sexual orientation, including by prohibiting same-sex marriage and activity. *See Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 246, 481 P.3d 1060 (2021); RCW 49.60.180(3); RCW 49.60.180(4).

ECF No. 1-5 at 2.  The letter cites *Woods* to support its investigation into SPU's employment policies and practices.  However, the letter states the AGO had not determined whether SPU violated the WLAD, and it only asked SPU to retain certain documents and records to further the AGO's investigation.  ECF No. 1-5 at 2-3.  At the hearing, Defendants represented that no other action had been taken in the SPU inquiry.  The Court must now determine whether a single inquiry initiated by the AGO is sufficient to demonstrate a history of past enforcement.  This letter was sent by the AGO, not the WSHRC, and YUGM has not pleaded any additional facts to suggest that the WSHRC has a history of prior enforcement of the *Woods* interpretation of the WLAD's religious exemption.  Accordingly, YUGM has failed to demonstrate the third *Thomas* factor with respect to the WSHRC.

The Court turns to the Supreme Court's recent opinion in *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), for guidance.  On appeal, the Tenth Circuit determined that the plaintiff established a credible threat of enforcement.  *303*

1    *Creative LLC v. Elenis*, 6 F.4th 1160, 1168 (10th Cir. 2021), *cert. granted in part*,

2    142 S. Ct. 1106 (2022), *rev'd on other grounds*, 143 S. Ct. 2298 (2023).  The

3    Supreme Court agreed.  *Id.* at 2309-10.  The Supreme Court's conclusion was based

4    in part upon "the fact that 'Colorado has a history of past enforcement [of the

5    Colorado Anti-Discrimination Act (CADA)] against nearly identical conduct—*i.e.*,

6    *Masterpiece Cakeshop*[5].'"  *Id.* (citing *303 Creative LLC v. Elenis*, 6 F.4th at 1174;

7    *see also 303 Creative LLC v. Elenis*, 2022 WL 3215065, *25-*155 (U.S. May 26,

8    2022) (joint appendix demonstrating Colorado's enforcement of CADA in at least

9    four other matters within a two-year timeframe).

10          This case is distinguishable from the facts underlying *303 Creative*.  While

11   YUGM has demonstrated that AG Ferguson has initiated an inquiry into SPU's hiring

12   practices, this is the only instance of *potential* enforcement to which YUGM can

13   point since the *Woods* decision.  YUGM does not provide the Court with evidence of

14   any other enforcement actions that the AGO or WSHRC took to enforce the WLAD

15   prior to the *Woods* decision either.  A single inquiry is insufficient to demonstrate

16   enforcement.  The Court finds that this is insufficient to demonstrate the third

17   *Thomas* factor with respect to AG Ferguson.

18

19

20   —————————
     [5] *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719 (2018).

1      d.  Conclusion as to Injury in Fact

2          YUGM has sufficiently pled that it has an intention to engage in a course of

3   conduct arguably affected with a constitutional interest that is proscribed by statue.

4   YUGM has failed to demonstrate that the three *Thomas* factors weigh in favor of a

5   credible threat of prosecution by the WSHRC.  YUGM has provided the Court with

6   no evidence that the WSHRC has made a specific warning or threat to it, nor has it

7   demonstrated that the WSHRC has a history of enforcing the WLAD.  YUGM

8   pleadings establish that AG Ferguson's failure to disavow is a sufficient specific

9   warning or threat.  However, YUGM cannot demonstrate a sufficient history of past

10  enforcement of the WLAD by AG Ferguson.  Taken together, the Court finds that

11  YUGM has failed to demonstrate a credible threat of prosecution by AG Ferguson.

12  YUGM has not met its burden to establish an injury in fact.  This is sufficient cause

13  to grant Defendants' motion.  However, the Court will analyze the other requisites of

14  Article III standing, assessing each in turn.

15  **B. Causation**

16         Defendants contend that Plaintiff's injury cannot be traced to them.  They

17  assert that Plaintiff takes issue with the Washington Supreme Court's interpretation

18  of the statute.  However, when a state official has the power to enforce a challenged

19  provision, "the requisite causal connection for standing purposes" is established.

20  *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004); *see*

ORDER - 24

1   *Sullivan v. Ferguson,* 636 F. Supp. 1276, 1284 (W.D. Wash. 2022) ("That state

2   officials are entrusted with the enforcement of state criminal laws and have the actual

3   power to enforce allegedly unconstitutional laws is sufficient to demonstrate"

4   causation.).  Defendants do not contest that they have the ability to do so.

5          Defendants also point to the fact that they are not the only potential enforcers.

6   The WLAD permits private causes of action, so theoretically any applicant that is not

7   a coreligionist but seeks employment with Plaintiff in a non-ministerial position

8   could file a claim against them.  However, standing does not "require the defendant's

9   action to be the 'sole source' of injury." *Moore v. Apple Inc*., 309 F.R.D. 532, 540

10  (N.D. Cal. 2015) (quoting *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir.

11  2011) (holding that a plaintiff "need not eliminate any other contributing causes to

12  establish its standing")); *see Envtl. Def. Ctr. v. EPA*, 344 F.3d 832, 867 (9th Cir.

13  2003) ("A plaintiff who shows that a causal relation is 'probable' has standing, even

14  if the chain cannot be definitively established.").  Because YUGM has demonstrated

15  that Defendants could enforce the WLAD against it, causation has been established.

16  The fact that private actors could also enforce the WLAD against YUGM does not

17  negate this.

18  **C. Redressability**

19          To satisfy the redressability prong of Article III standing, the remedies sought

20  must be "substantially likely to redress" the claimed injury.  *M.S. v. Brown*,

902 F.3d 1076, 1083 (9th Cir. 2018).  A plaintiff cannot establish redressability if the remedies sought "are beyond the district court's remedial power to issue."  *Id*. As a result, "[r]edressability requires an analysis of whether the court has the power to right or to prevent the claimed injury."  *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982).

Defendants contend that YUGM's request is really a veiled attempt to seek appellate review from *Woods*.  The Court agrees.  YUGM seeks the Court's determination regarding the constitutionality of the Washington Supreme Court's interpretation of RCW 49.60.040(11)'s employer exemption.  Specifically, YUGM seeks the Court's declaration "that the recent narrowed interpretation" of RCW 49.60.040(11)'s employer exemption by the Washington Supreme Court, and Defendants' potential enforcement of that interpretation, to be unconstitutional under the First Amendment.  ECF No. 1 at 50 ¶ A.  The Court does not have the authority to do so.

28 U.S.C. § 1257 provides: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the . . . validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution . . ."  This section provides the United States Supreme Court "with appellate jurisdiction over state court judgments."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (citing

1    *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)).  Accordingly, the United

2    States Supreme Court is the only federal court that has "jurisdiction to hear direct

3    appeals from the judgment of state courts."  *Id.*; *Rooker v. Fid. Tr. Co.*, 263 U.S. 413,

4    416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482

5    (1983).  This doctrine has become known as the *Rooker–Feldman* doctrine.  *Cooper*,

6    704 F.3d at 777.  "The [*Rooker–Feldman*] bars a district court from exercising

7    jurisdiction not only over an action explicitly styled as a direct appeal, but also over

8    the 'de facto equivalent' of such an appeal."  *Id.* (quoting *Noel v. Hall*, 341 F.3d

9    1148, 1155 (9th Cir. 2003)).

10          YUGM does not characterize this action as an appeal of the *Woods* decision.

11   However, Defendants contend that this action is essentially the "de factor

12   equivalent."  "It is a forbidden de facto appeal under *Rooker–Feldman* when the

13   plaintiff in federal district court complains of a legal wrong allegedly committed by

14   the state court, and seeks relief from the judgment of that court."  *Noel*, 341 F.3d at

15   1163.  This prohibition includes constitutional challenges that are "inextricably

16   intertwined with the state court's" holding.  *Feldman*, 460 U.S. at 482 n.16.

17          The Ninth Circuit has indicated that Justice Marshall's concurrence in *Pennzoil*

18   *Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), is "useful" in determining "what issues are

19   inextricably intertwined with a forbidden appeal."  *Cooper*, 704 F.3d at 778-79.

20   Justice Marshall wrote in *Pennzoil*:

ORDER - 27

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

481 U.S. at 25. The Ninth Circuit has further explained a prohibited appeal arising from an inextricably intertwined constitutional challenge exists "where 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Cooper*, 704 F.3d at 779 (quoting *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002)).

YUGM seeks a declaration that Washington Supreme Court's decision in *Woods* is unconstitutional. ECF No. 1 at 50 ¶ A (YUGM "requests that this Court enter judgment against Defendants[ d]eclare that the recent narrowed interpretation of the WLAD . . . violates [YUGM]'s First Amendment rights[.]"). YUGM's requested relief in this action would "effectively reverse" or "void" the Washington Supreme Court's decision in *Woods*. Accordingly, the relief YUGM seeks from the Court is prohibited by 28 U.S.C. § 1257 and the *Rooker–Feldman* doctrine.

## CONCLUSION

For the reasons set forth above, the Court dismisses this matter.

Accordingly, **IT IS ORDERED:**

**1.**    Defendants' Motion to Dismiss, **ECF No. 11**, is **GRANTED.**

**2.**    Given the Court's ruling as to Defendants' Motion to Dismiss,

Plaintiff's Motion for Preliminary Injunction, **ECF No. 14**, is

**DENIED as moot.**

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this order,

provide copies to counsel, and **CLOSE the file.**

**DATED** September 1, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 29