NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 12 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNION GOSPEL MISSION OF YAKIMA WASHINGTON, <br><br> Plaintiff - Appellant, <br><br> v. <br><br> ROBERT FERGUSON, in his official capacity as Attorney General of Washington State; ANDRETA ARMSTRONG, in her official capacity as Executive Director of the Washington State Human Rights Commission; DEBORAH COOK, in her official capacity as Commissioner of the Washington State Human Rights Commission; GUADALUPE GAMBOA, in her official capacity as Commissioner of the Washington State Human Rights Commission; JEFF SBAIH, in his official capacity as Commissioner of the Washington State Human Rights Commission; HAN TRAN, in his official capacity as Commissioner of the Washington State Human Rights Commission, <br><br> Defendants - Appellees. | No. 23-2606 <br><br> D.C. No. 1:23-cv-03027-MKD <br><br> MEMORANDUM* |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted July 19, 2024
San Francisco, California

Before: M. SMITH, BENNETT, and JOHNSTONE, Circuit Judges.

The Washington Law Against Discrimination ("WLAD") prohibits discrimination in employment because of sexual orientation. Wash. Rev. Code § 49.60.030(1)(a). The WLAD gives the Washington State Human Rights Commission ("WSHRC") the power to investigate "unfair practices," as defined in § 49.60.180 of the WLAD. *Id.* § 49.60.120(4). The Washington Attorney General represents the WSHRC in administrative hearings. *See* Cases, Washington State Office of the Attorney General, https://perma.cc/47T5-4SQT. In addition, private individuals may sue employers, including to enjoin violations of the WLAD. *Id.* § 49.60.030(2).

As enacted, the WLAD exempted religious nonprofit organizations from its definition of "employer." *Id.* § 49.60.040(11). In 2021, however, the Washington Supreme Court held in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021), *cert. denied*, 142 S. Ct. 1094 (2022), that while this religious-employer exemption was facially constitutional under the Washington constitution, it might be constitutionally invalid as applied to the plaintiff, a bisexual job applicant. *Id.* at 1063, 1065, 1070. In doing so, the court narrowed the religious-

employer exemption to correspond to the ministerial exception under the U.S. Supreme Court's First Amendment jurisprudence. *See id*. at 1069–70.

The Union Gospel Mission of Yakima, Washington ("YUGM"), a Christian ministry, sued the Washington Attorney General and other state officials (collectively, "State"). YUGM asked the district court to declare multiple sections of the WLAD unconstitutional in light of *Woods*. YUGM alleged that its employment policies require that all its employees sign and agree to YUGM's "Statement of Faith" and core values, which require them to agree in belief and adhere to a Christian lifestyle and behavior, including certain beliefs on marriage and sexuality. In the complaint, YUGM referenced the Washington Attorney General's Office's ("AGO") prior investigation into Seattle Pacific University ("SPU"). There, the AGO sent a letter to SPU, requesting that SPU submit four categories of documents and stating that SPU's employment policies are possibly discriminatory and may violate the WLAD. That investigation resulted in a recent Ninth Circuit opinion in *Seattle Pacific University v. Ferguson* ("*SPU*"), 104 F.4th 50 (9th Cir. 2024).[1]

The State moved to dismiss. YUGM moved for a preliminary injunction to prohibit enforcement of the WLAD. The district court granted the State's motion to

---

[1] The complaint alleged that the Attorney General made clear in *SPU* that "the WLAD now prohibits *religious organizations* from considering sexual orientation in hiring their non-ministerial employees."

dismiss for lack of Article III standing and denied YUGM's motion for a preliminary injunction as moot.

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand.

1. We review the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing de novo. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1049 (9th Cir. 2019). To establish standing, YUGM must meet well-established requirements: "injury in fact, causation, and a likelihood that a favorable decision will redress [YUGM's] alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). The parties contest injury-in-fact and redressability.

A. Injury-in-Fact

In *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), the Supreme Court provided a three-prong framework for determining when a plaintiff could bring a pre-enforcement suit: "[A] plaintiff could bring a pre[-]enforcement suit when he 'has alleged [(1)] an intention to engage in a course of conduct arguably affected with a constitutional interest, but [(2)] proscribed by a statute, *and* [(3)] there exists a credible threat of prosecution thereunder.'" *Id.* at 160 (emphasis added) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). YUGM's allegations satisfy all three *Driehaus* prongs.

On the first prong, YUGM has alleged that its religious belief-based hiring policies and practices mandate that all employees, including those in positions such

as IT technician and operations assistant, adhere to its religious beliefs, which encompass those concerning its view of sexual morality. The complaint further alleges that YUGM will continue to adhere to these hiring practices, and nothing in the record suggests otherwise. *See SPU*, 104 F.4th at 59 (holding that the first prong was satisfied because SPU, "[i]n the face of faculty and student pressure to change its policies, the [SPU] Board voted to retain the existing employee conduct policy prohibiting same-sex marriage and intimacy").

On the second prong, we only require that YUGM's intended future conduct be "*arguably* . . . proscribed by [the] statute" it wishes to challenge. *Driehaus*, 573 U.S. at 160 (emphasis added) (quoting *Babbitt*, 442 U.S. at 298). YUGM challenges the WLAD's sections with respect to employment discrimination. On this challenge, *SPU* directly controls, as YUGM has similar, if not the same, employment practices and policies as SPU. *See SPU*, 104 F.4th at 60 (holding that the allegations that "SPU has and will continue to apply its sexual conduct policies to . . . ministers and non-ministers alike" satisfied the second *Driehaus* prong because "[t]hese policies arguably violate the WLAD" as interpreted by the AGO).

YUGM also challenged two additional sections of the WLAD: Wash. Rev. Code §§ 49.60.180(4) (employment advertisement), 49.60.208(1) (disclosure of religious affiliation). YUGM's intended conduct—including regarding its Religious Hiring Statement and its requirement that employees and prospective employees

5                                                                 23-2606

disclose their sincerely held religious affiliations or beliefs—arguably also violates these sections of the WLAD.

On the third prong, we apply the three-factor test articulated in *Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134 (9th Cir. 2000) (en banc). As we recently clarified:

> The final *Driehaus* prong requires [p]laintiffs to show a "credible threat of prosecution." To evaluate the threat of prosecution, we consider: (1) whether the plaintiff has a "concrete plan" to violate the law, (2) whether the enforcement authorities have "communicated a specific warning or threat to initiate proceedings," and (3) whether there is a "history of past prosecution or enforcement."

*Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023) (quoting *Thomas*, 220 F.3d at 1139); *see also Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33 (2023).[2]

Applying this three-factor test, we find that the third *Driehaus* prong is also satisfied. The first *Thomas* factor favors standing. A plaintiff need not specify "when, to whom, where, or under what circumstances" it plans to violate the law. *Tingley*, 47 F.4th at 1068 (quoting *Thomas*, 220 F.3d at 1139). Instead, a plaintiff need only allege that it "intend[s] to engage in conduct arguably proscribed by" the

---

[2] *Thomas* first articulated this framework to analyze the ripeness of a plaintiff's claimed injury. *See Thomas*, 220 F.3d at 1138–39. *Tingley* applied the framework to determine injury-in-fact. *Tingley*, 47 F.4th at 1067. But as *Thomas* noted, constitutional ripeness—unlike prudential ripeness—"is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138.

challenged statute. *Isaacson*, 84 F.4th at 1099. As discussed above, YUGM has sufficiently alleged that it intends to engage in conduct arguably proscribed by multiple sections of the WLAD.

We "have taken a broad view" of the second *Thomas* factor, *id.* at 1100, and have "interpreted the government's failure to disavow enforcement of the law as weighing in favor of standing," *Tingley*, 47 F.4th at 1068 (emphasis omitted). We may also find in favor of standing when the government is "only one of the many enforcers of" the challenged statute. *Isaacson*, 84 F.4th at 1100–01. Here, not only did the State repeatedly refuse to disavow enforcement to the extent that YUGM seeks to hire non-ministerial employees, *see generally* Oral Arg., but the State is only one enforcer of the WLAD, *see* Wash. Rev. Code § 49.60.030(2). "And in the context of pre-enforcement challenges to laws on First Amendment grounds, a plaintiff 'need only demonstrate that a threat of potential enforcement will cause him to self-censor.'" *Tingley*, 47 F.4th at 1068 (quoting *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 839 (9th Cir. 2014)). YUGM has sufficiently alleged that the WLAD has forced it to self-censor its conduct and its speech.

We need not decide whether the AGO's letter to SPU constitutes a history of past enforcement under the third *Thomas* factor because this factor "carries 'little weight' when the challenged law is 'relatively new' and the record contains little information as to enforcement." *Id.* at 1069 (quoting *Cal. Trucking Ass'n v. Bonta*,

996 F.3d 1044, 653 (9th Cir. 2021)). The WLAD, as interpreted by the Washington Supreme Court in *Woods* in 2021, is relatively new.

Therefore, we find that the third *Driehaus* prong is also satisfied under the *Thomas* test. Because we find that all three *Driehaus* prongs are satisfied, we hold that the district court erred in its injury-in-fact analysis.

B. Redressability

The State next argues that YUGM's claims are not redressable. Our conclusion that SPU's similar claims were redressable directly controls in this instance. *See SPU*, 104 F.4th at 61–63. We thus hold that the district court also erred in its redressability analysis.

Because we find that YUGM has alleged Article III standing, we reverse the district court's order granting the State's motion to dismiss.

2. Because the district court granted the State's motion to dismiss on injury-in-fact and redressability grounds, it did not address the State's argument on prudential ripeness. We thus remand to the district court to consider prudential ripeness in the first instance. *See id.* at 66 ("Because the district court did not rule on th[e] issue [of prudential ripeness] below, . . . we remand to the district court to consider the issue in the first instance.").

3. The district court denied YUGM's motion for a preliminary injunction as moot. We remand to the district court to decide YUGM's motion for a

preliminary injunction in the first instance. *See, e.g.*, *Evans v. Shoshone-Bannock Land Use Pol'y Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013) (noting that whether to grant a preliminary injunction "is a matter committed to the discretion of the trial judge" (quoting *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984))); *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1111 (9th Cir. 2020) ("A district court is usually best positioned to apply the law to the record."); Fed. R. Civ. P. 65(d) (listing the required factual determinations in any order granting a preliminary injunction).

**REVERSED AND REMANDED.**