1    ROBERT W. FERGUSON
     Attorney General
2    DANIEL J. JEON
     Assistant Attorney General
3    Attorney General of Washington
     Civil Rights Division
4    800 Fifth Avenue, Suite 2000
     Seattle, WA 98104
5    (206) 464-7744

6

7

8

9                    **UNITED STATES DISTRICT COURT**
                     **EASTERN DISTRICT OF WASHINGTON**
10

11   UNION GOSPEL MISSION OF              NO. 1:23-CV-3027-MKD
     YAKIMA, WASH.,
                                          DEFENDANTS' RESPONSE
12              Plaintiff,                TO PLAINTIFF'S
                                          SUPPLEMENTAL
13          v.                            MEMORANDUM IN
                                          SUPPORT OF ITS MOTION
14   ROBERT FERGUSON, in his              FOR A PRELIMINARY
     official capacity as Attorney        INJUNCTION
15   General of Washington State;
     ANDRETA ARMSTRONG, in
16   her official capacity as Executive
     Director of the Washington State
17   Human Rights Commission; and
     DEBORAH COOK,
18   GUADALUPE GAMBOA, JEFF
     SBAIH, and HAN TRAN, in
19   their official capacities as
     Commissioners of the
20   Washington State Human Rights
     Commission,
21
                Defendants.
22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO          ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                            Civil Rights Division
                                                   800 Fifth Avenue, Suite 2000
                                                     Seattle, WA  98104
                                                       (206) 464-7744

1

# TABLE OF CONTENTS

2    I.    INTRODUCTION ................................................................................. 1

3    II.    ARGUMENT .................................................................................... 2

4         A.    This Case Is Moot Because Defendants Clearly Disavowed
               Enforcement with Respect to the Only Specific Job Positions and
5               Conduct UGM Alleged ............................................................. 3

6         B.    Even Assuming This Case Is Justiciable, UGM Does Not Satisfy
               Any Factor Required for a Preliminary Injunction ....................... 8

7
               1.    UGM is unlikely to succeed on the merits ............................ 8
8
                    a.    UGM cites no controlling authority for its sweeping
9                         church autonomy theory .................................................. 8

10                   b.    UGM's free exercise claim is meritless ........................ 11

11                   c.    UGM's right to expressive association does not include
                          the right to discriminate against individuals in non-
12                        ministerial positions ....................................................... 17

13                   d.    The WLAD does not infringe on UGM's
                          speech rights ................................................................ 18

14
               2.    UGM cannot show irreparable harm .................................... 18
15
               3.    The equities and public interest weigh strongly
16                   against UGM ...................................................................... 20

17    III.    CONCLUSION ............................................................................... 20

18

19

20

21

22

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3     *303 Creative v. Elenis*,
          600 U.S. 570 (2023) ..........................................................................17, 18

4

      *Am. Cargo Transp., Inc. v. United States*,
5         625 F.3d 1176 (9th Cir. 2010)..................................................................5

6     *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
          750 F.2d 1470 (9th Cir. 1985)................................................................19

7

      *Bayer v. Neiman Marcus Grp., Inc.*,
8         861 F.3d 853 (9th Cir. 2017)................................................................3, 8

9     *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
          941 F.3d 1195 (9th Cir. 2019)................................................................20

10

      *Behrend v. S.F. Zen Ctr.*,
11        108 F.4th 765 (9th Cir. 2024) ..................................................................5

12    *Billard v. Charlotte Catholic High Sch.*,
          101 F.4th 316 (4th Cir. 2024) ..................................................................9

13

      *Bollard v. Cal. Province of the Soc'y of Jesus*,
14        196 F.3d 940 (9th Cir. 1999)....................................................................9

15    *Boy Scouts of America v. Dale*,
          530 U.S. 640 (2000) ...............................................................................17

16

      *Bryce v. Episcopal Church in the Diocese of Colorado*,
17        289 F.3d 648 (10th Cir. 2002)................................................................10

18    *City & Cnty. of S.F. v. Garland*,
          42 F.4th 1078 (9th Cir. 2022) ..................................................................3

19

      *Coral Springs St. Sys., Inc. v. City of Sunrise*,
20        371 F.3d 1320 (11th Cir. 2004)................................................................5

21    *Corporation of Presiding Bishop of Jesus Christ of Latter-day Saints v. Amos*,
          483 U.S. 327 (1987) .................................................................................9

22

*Daniel v. Nat'l Park Servs.*,
   891 F.3d 762 (9th Cir. 2018) ............................................................................6

*Dean v. United States*,
   556 U.S. 568 (2009) .......................................................................................16

*Drs. for a Healthy Mont. v. Fox*,
   460 F. Supp. 3d 1023 (D. Mont. 2020) .........................................................20

*Fellowship of Christian Athletes v. San Jose Unified School District Board of
   Education*,
   82 F.4th 664 (9th Cir. 2023) ....................................................................13, 14

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) .......................................................................................15

*Green v. Miss U.S.*,
   52 F.4th 773 (9th Cir. 2022) ..........................................................................17

*Health Freedom Defense Fund Inc. v. Carvalho*,
   104 F.4th 715 (9th Cir. 2024) .......................................................................4, 5

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ........................................................................19

*Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*,
   565 U.S. 171 (2012) .................................................................................10, 11

*Lyons v. City of Los Angeles*,
   615 F.2d 1243 (9th Cir. 1980) .........................................................................4

*Masterpiece Cakeshop v. Colo. C.R. Comm.*,
   584 U.S. 617 (2018) .......................................................................................11

*Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*,
   254 F.3d 846 (9th Cir. 2001) ............................................................................1

*Ockletree v. Franciscan Health Sys.*,
   317 P.3d 1009 (Wash. 2014) ............................................................................2

*Serbian Eastern Orthodox Diocese for United States and Canada v.
   Milivojevich*,
   426 U.S. 696 (1976) .........................................................................................9

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
   506 F.3d 832 (9th Cir. 2007)...........................................................................3

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009)..............................................................11, 20

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064 (9th Cir. 2015).....................................................................16

*Tandon v. Newsom*,
   593 U.S. 61 (2021)................................................................................12, 13

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011).....................................................................20

*Tingley v. Ferguson*,
   47 F.4th 1055 (9th Cir. 2022) ...........................................................12, 13, 16

*Twitter, Inc. v. Paxton*,
   56 F.4th 1170 (9th Cir. 2022) .......................................................................7

*Vasquez v. Los Angeles Cnty.*,
   487 F.3d 1246 (9th Cir. 2007).......................................................................3

*Williams-Yulee v. Fla. Bar*,
   575 U.S. 433 (2015).....................................................................................17

*Woods v. Seattle's Union Gospel Mission*,
   481 P.3d 1060 (Wash. 2021).........................................................................2

*Yim v. City of Seattle*,
   63 F.4th 783 (2023)......................................................................................18

*Youth 71Five Ministries v. Williams*,
   No. 24-4101, 2024 WL 3749842 (9th Cir. 2024) .........................................14

Statutes & Regulations

Wash. Rev. Code § 49.60.180(1)......................................................................15

Wash. Rev. Code § 49.60.180(3)......................................................................15

Wash. Rev. Code § 49.60.180(4)......................................................................18

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

iv

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Wash. Rev. Code § 49.60.208(1)..........................................................................18

Wash. Admin. Code § 162-16-210....................................................................16

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

v

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# I.    INTRODUCTION

Defendants have disavowed enforcement related to the hiring practices that UGM claimed were chilled. That moots UGM's case. Appearing to concede as much, UGM submitted a new declaration in an effort to substantially broaden its allegations. But the case is still moot, and UGM's new declaration proves it: UGM has been engaging in the exact hiring practices it told this Court it was fearful of engaging in—without any threat of enforcement. Despite facing no harm at all, UGM continues to press this case in search of a controversy and asks the Court to issue an advisory order that would do nothing to alter UGM's or Defendants' conduct. An order enjoining Defendants from doing what they have agreed they will not do does not constitute a live case or controversy. This case should be dismissed as moot.

At a bare minimum, UGM's supplemental brief makes clear that its motion for a preliminary injunction should be denied outright. Preliminary injunctions are warranted only to address an "immediate threat of substantial or irreparable injury," *Midgett v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 850 (9th Cir. 2001), and all of the specific allegations regarding UGM's asserted injury have been addressed by Defendants' Notice. UGM cannot demonstrate irreparable injury where all that remains are conclusory and generalized allegations that it feels chilled. Despite the 18 months since the filing of this lawsuit, and UGM's practice of "hiring upwards of 50 [employees] per year," ECF No. 33 at 12, UGM still fails to identify a single threat of imminent

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

1

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  irreparable injury that urgently needs to be redressed through a preliminary

2  injunction.

3  ## II.    ARGUMENT

4      For more than a decade, Washington law has been clear that religious

5  employers like UGM are subject to the WLAD when they hire non-ministerial

6  employees, and not subject to the WLAD when they hire ministers. *See Ockletree*

7  *v. Franciscan Health Sys.*, 317 P.3d 1009, 1028 (Wash. 2014); *Woods v. Seattle's*

8  *Union Gospel Mission*, 481 P.3d 1060, 1070 (Wash. 2021). In spite of that, UGM

9  brought this case, alleging that its religious exercise is chilled because it feared

10  enforcement of the WLAD with respect to hiring an IT technician, operations

11  assistant, and posting its Religious Hiring Statement. ECF No. 1 at 5 ¶ 13.

12  Following Defendants' Notice and Stipulation of Enforcement Position (Notice),

13  ECF No. 31, UGM appears to concede that much of its case is moot. ECF No. 33

14  at 7 n.1 (narrowing its request for injunctive relief). It makes no argument that it

15  continues to face harm related to its IT technician, operations assistant, or

16  Religious Hiring Statement—the *only* specific positions or conduct that it

17  identified in its Complaint. *See, e.g.*, ECF No. 1 at 34 ¶ 145; ECF No. 14-1 at 14

18  ¶¶ 80–85 (alleging chill regarding its hiring of an operations assistant, IT

19  technician, and its Religious Hiring Statement). UGM instead argues that its 14

20  newly injected employment positions, not once mentioned in its Complaint,

21  along with UGM's other general disagreements with the WLAD, still present a

22  live case or controversy for this Court's review. They do not.

**A.    This Case Is Moot Because Defendants Clearly Disavowed Enforcement with Respect to the Only Specific Job Positions and Conduct UGM Alleged**

Between Defendants' Notice and UGM's admissions that it has been actively advertising and hiring for its "open positions" during the pendency of this lawsuit, ECF No. 33 at 13, there are no harms for this Court to redress. This case is moot and should be dismissed.

While "standing turns on the facts as they existed at the time the plaintiff filed the complaint," *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007), mootness addresses whether there is a "live" case or controversy "at all stages of the litigation, not simply at the time plaintiff filed the complaint," *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1253 (9th Cir. 2007). "A request for injunctive relief remains live only so long as there is some present harm left to enjoin." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). "[W]hat makes [a judicial pronouncement] a proper judicial resolution of a 'case or controversy' rather than an advisory opinion [is] the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *City & Cnty. of S.F. v. Garland*, 42 F.4th 1078, 1087 (9th Cir. 2022) (quoting *Bayer*, 861 F.3d at 868).

UGM's supplemental briefing underscores how the relief it seeks would have no effect on Defendants' "behavior" toward UGM, who now admits it is *already* engaged in the exact conduct it claimed to be refraining from in its Complaint. *Compare* ECF No. 1 at 38–39 ¶ 164 (alleging that UGM "is unable

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

3

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    to fully advertise its positions and is forced to fully self-censor, modify its

2    behavior, and chill its speech" because of Defendants and the WLAD); *id.* at 5 ¶

3    14 (alleging that Defendants have "chilled the Mission's religious exercise and

4    speech" and that UGM is harmed because it "cannot express its beliefs and hire

5    coreligionists who live them out"); *id.* at 38 ¶ 163 (alleging that UGM "would

6    continue hiring only coreligionists for its IT technician, operations assistant, and

7    other non-ministerial positions but for the WLAD and Defendants' enforcement

8    of the WLAD); *id.* at 43 ¶ 184 ("The Mission is, and will continue to be,

9    irreparably harmed if it cannot exercise its constitutional right to employ

10    coreligionists."), *with* ECF No. 34 at 2 ¶ 5–7 (listing open UGM positions that it

11    "intends to fill . . . as soon as possible"); ECF No. 34-1 (detailing positions it is

12    actively hiring for). The fact that UGM is actively engaged in the exact conduct

13    it wants to engage in free of any harm, means that there is no chilling effect and

14    no harm. UGM's case is moot because "given the change in policy, there is not a

15    strong possibility of a recurrence of the behavior of which [UGM] complains."

16    *Lyons v. City of Los Angeles*, 615 F.2d 1243, 1245, 1245 n.4 (9th Cir. 1980); *see*

17    *also* ECF No. 35 at 12–13.

18        To avoid this straightforward conclusion, UGM argues that Defendants'

19    Notice was "motivated 'by litigation tactics'" and urges the Court to disregard

20    the Notice and the representations of counsel. ECF No. 33 at 26. But UGM's

21    equivalence of Defendants' Notice to *Health Freedom Defense Fund Inc. v.*

22    *Carvalho*, 104 F.4th 715 (9th Cir. 2024), does not cure its arguments against

1    mootness. Defendants have *never* believed this case presents a justiciable

2    controversy—that consistent position has not changed at all, let alone as a result

3    of "litigation tactics." And to be clear, Defendants' Notice follows recent

4    decisions from the Ninth Circuit and UGM's admissions before that court during

5    oral argument. *See, e.g.*, *Behrend v. S.F. Zen Ctr.*, 108 F.4th 765, 767 (9th Cir.

6    2024); ECF No. 35 at 9–10 (citing oral argument where Judge Smith asked, "If

7    the Attorney General were to say, 'You know, we're not going to pursue this. We

8    promise.' Would that make any difference?" and UGM's counsel responded, "Oh

9    absolutely . . . . If they could stand up here right now and disavow, we'd all go

10    home.").

11        In contrast, *Carvalho* involved a "pattern of withdrawing and then

12    reinstating" the challenged government policy. *Id.* at 722–23 (noting that

13    defendant secured dismissal and then implemented a similar policy two weeks

14    later). While "[l]itigants who have *already* demonstrated their willingness to

15    tactically manipulate the federal courts in this way should *not* be given any

16    benefit of the doubt," Defendants have done no such thing. *Id.* (first emphasis

17    added). And courts have been clear that the government's representations

18    "present[] a special circumstance in the world of mootness" and are "treated with

19    more solicitude." *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180

20    (9th Cir. 2010) (citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir.1988));

21    *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir.

22    2004).

DEFS.' RESP. TO PL'S SUPP. MEM. ISO      5      ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                          Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    UGM also attempts to resist mootness by identifying "14 open positions"

2    for which it is currently hiring. ECF No. 33 at 13. None of those positions were

3    mentioned in UGM's Complaint. *See* ECF No. 1 at 38 ¶ 163. The conclusory

4    paragraphs in the Complaint mentioning that UGM applies its employment

5    policy to other, unidentified employees does not somehow incorporate these 14

6    open positions, with their distinct job titles and duties, and which UGM never

7    mentioned before, including in its prior preliminary injunction motion. *See* ECF

8    No. 14; *see generally Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990)

9    (disregarding conclusory allegations in affidavit); *Daniel v. Nat'l Park Servs.*,

10   891 F.3d 762, 765 (9th Cir. 2018) (dismissing complaint that makes only

11   "conclusory allegations").

12   Even if considered, however, UGM's supplemental briefing itself moots

13   this case because it makes clear that UGM faces no harm related to the

14   recruitment of those positions. While its Complaint alleges that it "would

15   continue hiring only coreligionists for its IT technician, operations assistant, and

16   *other non-ministerial positions but for* the WLAD and Defendants' enforcement

17   of the WLAD," ECF No. 1 at 38 ¶ 163 (emphasis added), UGM's supplemental

18   declaration confesses that it is engaging in that *precise* conduct right now. The

19   advertising and hiring for those 14 positions have been ongoing, even since UGM

20   filed its Complaint and requested urgent relief. ECF No. 34 at 2 ¶¶ 5–7 (providing

21   job descriptions for open positions UGM "intends to fill . . . as soon as possible");

22   ECF No. 34-1 (providing 50 pages of job ads that have already been posted). For

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

6

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    11 of those 14 positions, UGM has been actively hiring for more than 30 days

2    without WLAD enforcement. *Id.* at 2 (front desk coordinator), 5 (thrift store

3    associate), 8 (programs assistant), 12 (safety team), 19 (meal ministry

4    cook/mentor), 22 (detail ministry clinic dentist), 25 (director of adult shelter

5    ministries), 30 (director of workforce stewardship (HR)), 38 (nurse), 41 (retail

6    supervisor), 44 (store manager). And on September 9, 2024, two days before

7    UGM emailed the Court to press its request for a preliminary injunction, UGM

8    posted an ad for a new life program manager—apparently feeling no chill from

9    doing so. ECF No. 34-1 at 33 (printout from 9/19/24 reflecting job posted 10 days

10    ago).

11        According to UGM, those 14 open positions are only a handful of the

12    "upwards of 50 [employees]" UGM hires each year. ECF No. 33 at 26. As it

13    notes, there is "frequent turnover for many positions." *Id.* at 13. So while UGM

14    has not been categorically exempt from the WLAD for more than a decade, and

15    has had this suit pending for a year-and-a-half, its supplemental briefing makes

16    clear that there is no chilling effect or harm that would support jurisdiction. *See*

17    *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (dismissing case

18    where plaintiff's "naked assertion that its speech has been chilled is 'a bare legal

19    conclusion'"). UGM continues business as usual, and its claim that it "is required

20    to seek the government's permission for every position it hires," ECF No. 33 at

21    8, is directly contradicted by its own declaration. ECF No. 34 at 2 ¶ 7.

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

7

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1  Just as in *Bayer*, UGM "has produced no evidence to show [it] can

2  reasonably be expected to benefit from" the relief it seeks. *Bayer*, 861 F.3d at

3  865. This is particularly so when—since filing its Complaint—UGM has engaged

4  in the very employment practices for which it claims to need urgent relief, with

5  no allegations of threatened enforcement or complaints about those practices.

6  With "no basis upon which to conclude [UGM] has a reasonably certain need for

7  prospective relief pertaining to its future employment practices," UGM's claim

8  is moot. *Id.*

9  **B.    Even Assuming This Case Is Justiciable, UGM Does Not Satisfy Any**
**Factor Required for a Preliminary Injunction**

10  UGM's supplemental briefing also makes clear that it cannot carry its

11  burden of satisfying any of the *Winter* factors and its motion for a preliminary

12  injunction should be denied.

13  **1.    UGM is unlikely to succeed on the merits**

14
15  **a.    UGM cites no controlling authority for its sweeping**
**church autonomy theory**

16  Perhaps recognizing that it is unlikely to succeed on the merits after

17  admitting that the U.S. Supreme Court has never adopted the "coreligionist

18  exemption," ECF No. 24 at 56:5–7, UGM now reframes its argument as falling

19  under the "church autonomy" doctrine that allows it to "make decisions for *all*

20  employees free from penalty." ECF No. 33 at 14–15. But its old and new

21  arguments collapse into the same thing. ECF No. 1 at 41, ¶ 175 (arguing that

22

1    "religious autonomy" includes a "coreligionist exemption"). And however

2    characterized, it remains the case that the Supreme Court has never adopted

3    UGM's sweeping First Amendment theory. Nor has any federal appellate court.

4    *See Billard v. Charlotte Catholic High Sch.*, 101 F.4th 316, 328 (4th Cir. 2024).

5    That ends the likelihood of success inquiry.

6         As the Ninth Circuit has held, allowing "lay employees" to pursue federal

7    antidiscrimination claims under Title VII is "constitutionally permissible."

8    *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 947 (9th Cir. 1999).

9    This is so even after the U.S. Supreme Court purportedly "buttresse[d]" UGM's

10   argument in *Corporation of Presiding Bishop of Jesus Christ of Latter-day Saints*

11   *v. Amos*, 483 U.S. 327 (1987). ECF No. 33 at 16. But *Amos* addressed whether

12   Title VII permissibly exempted religious organizations from religious

13   discrimination claims. 483 U.S. at 339. It does not stand for the sweeping

14   proposition that the First Amendment requires religious organizations to be

15   exempt from all laws that contradict their faith. Nor does the only other precedent

16   UGM cites, *Serbian Eastern Orthodox Diocese for United States and Canada v.*

17   *Milivojevich*, 426 U.S. 696 (1976), carry its arguments. *Milivojevich* reversed a

18   state court that effectively reinstated a church bishop by holding that the church

19   did not properly abide by its own internal laws and regulations. *Id.* at 698. That

20   case does not address whether a religious employer may ignore state laws it

21   disagrees with. Neither case stands for the theory UGM asks this Court to adopt.

22

1    UGM also relies on other cases and concurrences outside this Circuit. But

2    none of those stands for the proposition UGM advances here. For example, take

3    UGM's most cited case, *Bryce v. Episcopal Church in the Diocese of Colorado*,

4    289 F.3d 648 (10th Cir. 2002). That case involved plaintiffs who made claims

5    "*based solely on communications* that are protected by the First Amendment."

6    *Id.* at 658 n.2 (emphasis added). The Tenth Circuit held that, in that claim about

7    *speech*, the First Amendment protects "allegedly sexually harassing remarks

8    made in written correspondence" between defendants and "other church leaders,"

9    as well as "remarks made at a series of church meetings." *Id.* at 657–58. While

10   UGM selectively quotes from *Bryce* to assert that it may "make decisions for *all*

11   employees free from penalty when those decisions are 'based on religious

12   doctrine,'" ECF No. 33 at 14–15, *Bryce* had a much more limited holding: "When

13   a church makes a personnel decision based on religious doctrine, *and holds*

14   *meetings to discuss that decision and the ecclesiastical doctrine underlying it*, the

15   courts will not intervene." *Id.* at 660 (emphasis added).

16   If there were any doubt that UGM's cases do not control, the U.S. Supreme

17   Court conclusively reaffirmed this Circuit's *Bollard* holding—that religious

18   employers are not exempt from laws they disagree with—in *Hosanna-Tabor*

19   *Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012). There,

20   the Court expressly held that the ministerial exception is an affirmative defense

21   "to an otherwise cognizable claim." *Id.* at 195 n.4. The Court went on to explain

22   that if the defense does not apply, "[d]istrict courts have power to consider ADA

1      claims in *cases of this sort*." *Id.* (emphasis added). Of course, that "sort" of case

2      involved a religious employer firing a plaintiff employee "for a religious reason."

3      *Id.* at 180. At no point did the Court state that district courts must first address

4      "church autonomy" before addressing claims involving employment decisions

5      based on religious reasons. The First Amendment readily protects religious

6      employers, but not in the sweeping fashion UGM suggests. However labeled,

7      UGM's coreligionist exemption theory is unlikely to succeed.

8            **b.      UGM's free exercise claim is meritless**

9            UGM free exercise claim also fails. "[A] neutral and generally applicable

10     law will usually survive a constitutional free exercise challenge." *Masterpiece*

11     *Cakeshop v. Colo. C.R. Comm.*, 584 U.S. 617, 643 (2018) (Gorsuch, J.,

12     concurring); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1137 (9th Cir.

13     2009) (subjecting neutral and generally applicable laws to rational basis review).

14     That is the case here: the WLAD is neutral and generally applicable, ECF No. 35

15     at 20–21, and easily passes muster given the widespread recognition of the

16     government's interest in curtailing discrimination. *Masterpiece Cakeshop*, 584

17     U.S. at 632 ("[T]he laws and the Constitution can, and in some instances must,

18     protect [gay persons and gay couples] in the exercise of their civil rights.").

19           UGM argues that the WLAD is not neutral or generally applicable, and

20     thus subject to strict scrutiny, because it (1) treats secular activity more favorably

21     than comparable religious activity and (2) the WLAD provides for individualized

22     exemptions. ECF No. 33 at 18–23. Neither is correct.

1       *First*, UGM continues to rely on a misreading of *Tandon* and its progeny.

2  True, laws that treat "comparable secular activity" more favorably than religious

3  activity are not neutral or generally applicable. *Tandon v. Newsom*, 593 U.S. 61,

4  62 (2021). The problem for UGM, however, is that it can identify no comparable

5  secular activity that the WLAD treats more favorably.

6       The WLAD addresses discrimination in particular settings, including

7  among employers with more than eight employees. And in that setting, religious

8  employers are not treated worse than secular ones. The law recognizes that the

9  risk posed by discrimination by an employer with more employees is greater than

10  the risk posed by discrimination among employers with few employees, and that

11  is what the WLAD addresses. The WLAD does not cover every class of

12  individuals, nor every employer, but the government can draw reasonable lines

13  without running afoul of the First Amendment.

14       The Ninth Circuit in *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022),

15  specifically rejected the notion that a law is not neutral or generally applicable

16  when it does not cover and address every conceivable related harm. "Whether

17  secular and religious activity are 'comparable' is evaluated 'against the asserted

18  government interest that justifies the regulation at issue' and requires looking at

19  the risks posed, not the reasons for the conduct." *Id.* at 1088 (citing *Tandon*, 593

20  U.S. at 62)). Thus in *Tingley*, the court rejected the plaintiff's arguments that

21  other secular conduct may lead to "the very types of psychological harms" that

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION     12     ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    the challenged law attempted to address. *Id.* at 1089. There was no constitutional

2    fatality because no law must address every conceivable harm.

3        UGM's cases are inapposite. In *Tandon*, the Supreme Court assessed

4    California's pandemic restrictions that prohibited more than three households

5    from gathering for religious exercise. 593 U.S. at 63. Because California allowed

6    more than three households to gather to go to hair salons, retail stores, or other

7    "comparable secular activities," the Supreme Court concluded that the law was

8    not generally applicable. *Id.* at 63–64. The Court did not hold that California

9    needed to prevent *all* potential risk of the spread of the coronavirus, or else its

10   restrictions were unconstitutional. It looked to the comparable activity—

11   gatherings of more than three households for secular activity. And unlike *Tandon*,

12   the WLAD treats religious employers with fewer than eight employees exactly

13   as it treats comparable secular employers—they are both exempt.

14       Nor does *Fellowship of Christian Athletes v. San Jose Unified School*

15   *District Board of Education*, 82 F.4th 664 (9th Cir. 2023), support UGM's

16   arguments. In that case, the plaintiff ministry group, FCA, lost recognition as an

17   official student group because of its policy that FCA student leaders could not be

18   gay. *Id.* at 674–75. FCA brought a free exercise challenge to the school board's

19   non-discrimination policy, which served as the basis for its loss of recognition.

20   *Id.* at 675. In assessing whether the non-discrimination policy was treating

21   secular activities more favorably than religious activities, the court looked to

22   other student groups that were *also* subject to the non-discrimination policy. *Id.*

DEFS.' RESP. TO PL'S SUPP. MEM. ISO              13
MOT. FOR PRELIM. INJUNCTION

1   at 689. And looking at the conduct of other, secular, student groups—the

2   comparable secular activity—some of those student groups restricted

3   membership based on sex, which was also prohibited by the same non-

4   discrimination policy. *Id.* And while those student groups violated the non-

5   discrimination policy just as FCA had, they retained their official status. *Id.* The

6   fact that both groups violated the non-discrimination policy, but only FCA's

7   religious conduct was proscribed, meant that the school had violated *Tandon*'s

8   requirement that laws not treat *comparable* secular activity more favorably than

9   religious activity. *Id.* at 689–90. Similarly, *Youth 71Five Ministries v. Williams*,

10  No. 24-4101, 2024 WL 3749842 (9th Cir. 2024), involved a plaintiff nonprofit's

11  challenge to the state's decision revoking its funding because its hiring policy

12  violated the state's non-discrimination policy. *Id.* at *2. The Ninth Circuit

13  concluded that other nonprofits also violated the non-discrimination policy but

14  retained state funding, mirroring the First Amendment violation in *FCA*. *Id.* at

15  *3–*4.

16      *FCA* and *Youth 71Five* both involved religious plaintiffs that were

17  penalized for violating a policy when secular parties were not. But here, UGM

18  identifies no secular employers who are exempt from complying with the WLAD

19  under circumstances where UGM must comply. Indeed, there are none. If

20  anything, the WLAD treats religious activity more *favorably*, because only

21  religious employers may avail themselves of the ministerial exemption.

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO
MOT. FOR PRELIM. INJUNCTION

14

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    *Second*, there are no "individualized exemptions" in the WLAD. UGM's

2    supplemental brief rightly sets aside its previous arguments regarding

3    RCW 49.60.180(3), which is not good law. *See* ECF No. 35 at 20. Now, UGM

4    argues that (1) the fact that the AGO can bring cases under the WLAD and, (2)

5    RCW 49.60.180(1)'s "bona fide occupational qualification" (BFOQ) provision

6    both create an individualized exemption of the kind addressed in *Fulton v. City*

7    *of Philadelphia*, 593 U.S. 522 (2021). Again, UGM misreads the law.

8    *Fulton* involved a challenge to a law prohibiting discrimination against

9    prospective same-sex foster parents "unless an exemption is granted by the

10   Commissioner or the Commissioner's designee, in his/her sole discretion." *Id.* at

11   535. The Supreme Court held that "the inclusion of a *formal system* of entirely

12   discretionary exceptions in [the challenged law] renders the contractual non-

13   discrimination requirement not generally applicable." *Id.* at 536–37 (emphasis

14   added).

15   In contrast to *Fulton*, there is no "formal system" of "discretionary

16   exceptions" that employers may seek under the WLAD. UGM argues that the

17   Attorney General's ability to choose his cases means that Defendants "exempt"

18   some employers but not others. ECF No. 33 at 21–22. But the fact that

19   Defendants must make case-selection decisions is not a "formal system" erected

20   by the WLAD, nor does it confer any exemption at all. Whether or not Defendants

21   bring a particular case does not *exempt* that employer's conduct under the

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO          15          ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                                Civil Rights Division
                                                          800 Fifth Avenue, Suite 2000
                                                          Seattle, WA  98104
                                                          (206) 464-7744

1    WLAD—particularly given that private parties could also enforce the WLAD

2    against UGM if it violated the law.

3          The same is true of the WLAD's exemption for BFOQs. BFOQ rules apply

4    to religious and non-religious employers alike. And while individuals may

5    "petition" the Washington State Human Rights Commission for its "opinion

6    determining whether protected status would be a bona fide occupational

7    qualification in particular circumstances," nothing about that "opinion" exempts

8    conduct under the WLAD. Wash. Admin. Code § 162-16-210. Unlike the

9    provision in *Fulton*, which allowed the government defendant to wholly exempt

10    parties from being subject to the law at all, the Human Rights Commission's

11    "opinion" cannot exempt an employer from the WLAD.

12          UGM's claim that Defendants can decide "what reasons for not complying

13    with the WLAD are permissible" has no basis in Washington law. ECF No. 33 at

14    23. No such provision exists in the text, and the Court should decline UGM's

15    request to read what is not there. *Dean v. United States*, 556 U.S. 568, 572 (2009).

16    "There is no provision in the Washington law for individual exceptions that

17    would allow secular exemptions but not religious ones. In fact, there is no

18    exemption system whatsoever, not even one that affords 'some minimal

19    governmental discretion.'" *Tingley*, 47 F.4th at 1089 (citing *Stormans, Inc. v.*

20    *Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015)).

21          The WLAD is neutral and generally applicable, and is subject to rational

22    basis review. But the WLAD is constitutional even if this Court were to apply

DEFS.' RESP. TO PL'S SUPP. MEM. ISO     16     ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                Civil Rights Division
                                              800 Fifth Avenue, Suite 2000
                                              Seattle, WA  98104
                                                (206) 464-7744

1    strict scrutiny. The First Amendment requires laws to be "narrowly tailored, not

2    that it be 'perfectly tailored.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454

3    (2015) (citing *Burson v. Freemon*, 504 U.S. 191, 209 (1992)). "The First

4    Amendment does not confine a State to addressing evils in their most acute

5    form." *Id.* The WLAD satisfies this test. Preventing discrimination is a

6    compelling government interest, and the best way to prevent discrimination is to

7    prohibit it while honoring the ministerial exception from the First Amendment as

8    set forth by the U.S. Supreme Court. The WLAD does exactly that.

9          c.    **UGM's right to expressive association does not include the**
               **right to discriminate against individuals in non-**
10              **ministerial positions**

11   As anticipated, UGM again stretches *Boy Scouts of America v. Dale*, 530

12   U.S. 640 (2000), beyond the record before the U.S. Supreme Court. That case

13   does not allow UGM and every other employer to hire only like-minded

14   individuals. *See* ECF No. 35 at 21–22. And UGM's remaining cases do not bind

15   this Court. *See Green v. Miss U.S.*, 52 F.4th 773, 804 (9th Cir. 2022)

16   ("[Plaintiff's] argument fails for multiple reasons, but the first is simple: a

17   concurrence is not binding on this court.") (VanDyke, J., concurring). No binding

18   authority holds that an employment relationship is a form of expressive

19   association.

20   In contrast to UGM's cases, the U.S. Supreme Court decision in *303*

21   *Creative v. Elenis*, 600 U.S. 570 (2023), is instructive. While the Court ruled in

22   favor of the plaintiff's right to expressive association, it rejected the assertion that

1    the right of expressive association extends to hiring decisions. *Id.* at 598

2    (rejecting the dissent's suggestion that "our decision today is akin to endorsing a

3    'separate but equal' regime that would allow law firms to refuse women

4    admission into partnership, restaurants to deny service to Black Americans, or

5    businesses seeking employees to post something like a 'White Applicants Only'

6    sign."). UGM's expressive association claim also is unlikely to succeed.

7                **d.    The WLAD does not infringe on UGM's speech rights**

8          UGM does not raise any colorable argument that it is likely to succeed on

9    its free speech claim. It simply points to the Ninth Circuit's decision addressing

10   standing to argue that this Court should grant a preliminary injunction because it

11   will succeed on the merits. This conclusory argument fails to add any new fodder

12   for its free speech claim, and thus it is unlikely to prevail for the reasons

13   previously explained. *See* ECF No. 35 at 22–23. Put simply, the WLAD does not

14   apply to speech in the way UGM thinks it does and, in any event,

15   RCW 49.60.180(4) and RCW 49.60.208(1) are both "speech related to hiring"

16   where restrictions like the WLAD are permissible. *Yim v. City of Seattle*, 63 F.4th

17   783, 801 (2023) (Wardlaw, J., concurring); *see also* ECF No. 17 at 22–24.

18           **2.    UGM cannot show irreparable harm**

19          Putting aside the merits, UGM is also unable to show that there is a

20   *likelihood* of *irreparable* injury when it is already engaged in the hiring practices

21   that it says it is chilled from engaging in—which UGM admits without asserting

22   a single communication from Defendants. *See generally* ECF No. 34-1. Ninth

DEFS.' RESP. TO PL'S SUPP. MEM. ISO    18    ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                Civil Rights Division
                                     800 Fifth Avenue, Suite 2000
                                     Seattle, WA  98104
                                     (206) 464-7744

1    Circuit authority is clear that UGM "must proffer evidence sufficient to establish

2    a likelihood of irreparable harm," as injunctions "grounded in platitudes rather

3    than evidence" are unwarranted. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,

4    736 F.3d 1239, 1250 (9th Cir. 2013). But UGM's own papers make clear that it

5    is engaged in the exact conduct it wishes to engage in with no injury at all. All of

6    UGM's prior evidence related solely to its operation assistant, IT technician, and

7    Religious Hiring Statement. ECF No. 14-1 at 14 ¶¶ 80–85 ("[T]he Mission has

8    chilled its own religious activity by pausing hiring for its IT technician and

9    operations assistant, and has chilled its own speech by pulling those postings

10    down and not publishing its Religious Hiring Statement."). That evidence is

11    meaningless in light of Defendants' Notice. So the *only* piece of evidence left is

12    a speculative statement in UGM's latest declaration, where its CEO says UGM

13    is "fearful of fines, penalties, and punishment for violating the Washington Law

14    Against Discrimination." ECF No. 34 at 5 ¶ 23. That is nowhere near the

15    evidentiary showing needed to support a preliminary injunction. *See Am. Passage*

16    *Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985)

17    (holding no irreparable harm when support affidavits are "conclusory and without

18    sufficient support in facts"); ECF No. 35 at 23–24. UGM's supplemental briefing

19    and declaration makes plain that there is no irreparable harm and no basis for a

20    preliminary injunction.

21

22

1              **3.      The equities and public interest weigh strongly against UGM**

2       UGM again raises no arguments that the last two *Winter* factors militate

3  toward a preliminary injunction, simply relying on its claimed likelihood of

4  success on the merits. Even if this Court assumes UGM is likely to succeed on

5  the merits, which it is not, it is UGM's burden to satisfy the remaining *Winter*

6  factors. *Stormans*, 586 F.3d at 1138. It cannot. *See Thalheimer v. City of San*

7  *Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011) ("[T]he district court correctly

8  examined each necessary element and did not assume that they merely 'collapse

9  into the merits' of the First Amendment claim."), *overruled on other grounds by*

10 *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199

11 (9th Cir. 2019); *see also Drs. for a Healthy Mont. v. Fox*, 460 F. Supp. 3d 1023,

12 1029 (D. Mont. 2020) (denying motion for preliminary injunction that does not

13 address all *Winter* factors).

14                       **III.    CONCLUSION**

15      This case should be dismissed as moot. But even if this Court considers

16 UGM's motion for a preliminary injunction, it should be denied.

17

18 //

19 //

20 //

21 //

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO          20          ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                                        Civil Rights Division
                                                                800 Fifth Avenue, Suite 2000
                                                                   Seattle, WA 98104
                                                                    (206) 464-7744

1    DATED this 27th day of September, 2024.

2                                    Respectfully Submitted,
                                     ROBERT W. FERGUSON
3                                    Attorney General

4                                    _____

5                                    DANIEL J. JEON, WSBA #58087
                                     Assistant Attorney General
6                                    Wing Luke Civil Rights Division
                                     Office of the Attorney General
7                                    800 Fifth Avenue, Suite 2000
                                     Seattle, WA 98104
8                                    (206) 464-7744
                                     daniel.jeon@atg.wa.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO          21          ATTORNEY GENERAL OF WASHINGTON
MOT. FOR PRELIM. INJUNCTION                                        Civil Rights Division
                                                               800 Fifth Avenue, Suite 2000
                                                                   Seattle, WA 98104
                                                                     (206) 464-7744

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that the foregoing document was electronically filed the

3    United States District Court using the CM/ECF system. I further certify that all

4    participants in the case are registered CM/ECF users and that service will be

5    accomplished by the CM/ECF system.

6          DATED this 27th day of September 2024.

7

8                                          *Tiffany Jennings*

9                                          TIFFANY JENNINGS

10                                         Paralegal

11

12

13

14

15

16

17

18

19

20

21

22

DEFS.' RESP. TO PL'S SUPP. MEM. ISO          22
MOT. FOR PRELIM. INJUNCTION

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744