FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 01, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNION GOSPEL MISSION OF YAKIMA, WASH.,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT FERGUSON, et al.<br><br>Defendants. | No. 1:23-CV-3027-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>**ECF No. 14** |

Before the Court is Plaintiff's Motion for Preliminary Injunction. ECF No. 14. On October 11, 2024, the Court held a hearing. ECF No. 38. Ryan Tucker, Jacob Reed, and Katherine Anderson appeared on behalf of Plaintiff. Daniel Jeon appeared on behalf of Defendants.

Plaintiff challenges the constitutionality of the Washington Law Against Discrimination ("WLAD"), RCW § 49.60 *et seq*., as interpreted by the Washington Supreme Court. ECF No. 1. Plaintiff seeks a preliminary injunction enjoining Defendants from enforcing (including through investigations) the WLAD against

Plaintiff for preferring and hiring only coreligionists for its non-ministerial positions.[1] ECF No. 14 at 7; ECF No. 33 at 7. The Court has reviewed the record, heard from counsel, and is fully informed. For the reasons discussed below, the Court grants the motion.

**BACKGROUND**

**A. The WLAD**

"As enacted, the WLAD exempted religious nonprofit organizations from its definition of 'employer.'"[2] *Union Gospel Mission of Yakima Washington v.*

---

[1] Plaintiff initially also requested an injunction to publish its Religious Hiring Policy without penalty. ECF No. 14 at 7. Defendants have since filed a stipulation purporting to disavow enforcement of the WLAD with respect to this policy and two positions. ECF No. 31 at 2. However, upon questioning during argument, it was not clear whether Defendants intend to take enforcement action with respect to the Religious Hiring Policy in conjunction with other non-ministerial positions. ECF No. 31 at 2.

[2] "'Employer' includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and *does not include any religious or sectarian organization not organized for private profit*." RCW § 49.60.040(11) (emphasis added).

*Ferguson*, No. 23-2606, 2024 WL 3755954, at *1 (9th Cir. Aug. 12, 2024) (unpublished) (quoting RCW § 49.60.040(11)). In 2021, the Washington Supreme Court issued its opinion in *Woods v. Seattle's Union Gospel Mission*, 481 P.3d 1060 (Wash. 2021) (en banc). There, the Washington Supreme Court analyzed an as-applied constitutional challenge to the WLAD's religious exemption with respect to non-ministerial positions. *Id.* at 1062-70. The Washington Supreme Court held that the religious exemption should parallel the ministerial exception set forth by the United States Supreme Court in *Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.*, 565 U.S. 171 (2012), and refined by the Supreme Court's decision in *Our Lady of Guadalupe School v. Morrissey-Berru*, 591 U.S. 732 (2020). *Woods*, 481 P.3d at 1070; *see id.* at 1069 ("Recognizing the need for a careful balance between the religious freedoms of the sectarian organization and the rights of individuals to be free from discrimination in employment, the Supreme Court has fashioned the ministerial exception to the application of antidiscrimination laws in accord with the requirements of the First Amendment."). The Attorney General has expressed an intention to enforce this new interpretation of the WLAD. *See, e.g.*, *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 60 (9th Cir. 2024) (observing "the Attorney General has not disavowed its intent to investigate and enforce the WLAD against SPU"); *Union Gospel Mission of Yakima Washington*, 2024 WL 3755954, at

*3 (noting "the State repeatedly refuse[d] to disavow enforcement to the extent that YUGM seeks to hire non-ministerial employees") (citation omitted).

**B. Plaintiff's Employment Practices and Staffing Needs**

Plaintiff is a private, nonprofit religious organization in Yakima, Washington, that operates a homeless shelter and thrift stores, the funding from which supports the homeless shelter, and provides other services to the community. ECF No. 1 at 2 ¶ 2, 9-12 ¶¶ 40-48. Plaintiff avers that "its overarching goal through all of its programs and services is to spread the Gospel of Jesus Christ and Christian teachings to others." *Id.* at 2 ¶ 4. Plaintiff asserts that it provides services to "everybody equally," but it simultaneously requires its employees to "adhere to certain Christian belief and behavior requirements—including abstaining from any sexual conduct outside of biblical marriage between one man and one woman[.]" *Id.* at 2-3 ¶¶ 5-6. Plaintiff requires its employees to be coreligionists, defined as "those who agree with its religious beliefs and who will adhere to its religious tenets and behavior requirements." *Id.* at 50-51 ¶ A(a). Plaintiff "requires all employees to embrace and follow its beliefs on marriage and sexuality and thus prohibits them from engaging in sexually immoral conduct." *Id.* at 15 ¶ 66.

Presently, Plaintiff has "at least 14 open positions that it needs and intends to fill with qualified candidates as soon as possible," including "Front Desk Coordinator, Thrift Store Associate(s), Meal Ministry Cook/Mentor, Nurse, Safety

Team, Retail Supervisor, Programs Assistant, Children and Family Specialist, New Life Program Manager, Director of Adult Shelter Ministries, Director of Workforce Stewardship (HR), Thrift Retail Manager, Store Manager, and Dental Ministry Clinic Dentist."[3] ECF No. 34 at 2. Plaintiff argues it "cannot—indeed need not—ask for the State's permission before it makes a decision for every single non-minister." ECF No. 37 at 8.

## LEGAL STANDARD

Fed. R. Civ. P. 65(a) provides for preliminary injunctions. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). To obtain a preliminary injunction, a movant must establish "that (1) [it] is likely to succeed on the merits of [its] claim, (2) [it] is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in [its] favor, and (4) a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter*, 555 U.S. at 20). "When . . . the nonmovant is the government, the last two *Winter* factors 'merge.'" *Id.* (quoting *Nken v. Holder*,

---

[3] As the Court noted in its order denying Defendants' motion to dismiss, these positions are, based on Defendants' representations, "unshielded from the WLAD's ministerial exception." ECF No. 39 at 5-6.

556 U.S. 418, 435 (2009)). The first factor is considered "a threshold inquiry" and "the most important factor." *Id.* (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)) (quotation marks omitted). Further, the Ninth Circuit applies a "sliding scale" approach to these factors, whereby "a stronger showing of one element may offset a weaker showing of another." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc) (citation and quotation marks omitted). If a plaintiff demonstrates that the "balance of equities 'tips sharply in [its] favor,' the plaintiff must raise only 'serious questions' on the merits—a lesser showing than likelihood of success." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Where a plaintiff alleges a constitutional injury, "the first factor is especially important." *Baird*, 81 F.4th at 1040. The likelihood of success on the merits for such a plaintiff is usually sufficient to establish the other factors. *Id.* (quoting *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)) (other citations omitted). However, a district court should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citation and quotation marks omitted).

## DISCUSSION

### A. Likelihood of Success on the Merits

Plaintiff is likely to succeed on the merits of its Free Exercise claim.[4] The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. The Supreme Court "has held the Clause applicable to the States under the terms of the Fourteenth Amendment." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). "A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (quotations and citation omitted).

---

[4] Because Plaintiff has demonstrated a likelihood of success on the merits of this claim, Court need not address Plaintiff's church autonomy, Expressive Association, and Free Speech claims. *See, e.g.*, *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 983 (D. Ariz. 2006) ("The Court need not address the validity of each and every claim.").

*1. Neutral or Generally Applicable*

"Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Kennedy*, 597 U.S. at 526 (citing *Lukumi*, 508 U.S. at 546). "[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam) (citation omitted). *Tandon* is dispositive here.

In *Tandon*, on application for injunctive relief pending appeal, the Supreme Court evaluated certain of California's COVID restrictions, which "treat[ed] some comparable secular activities more favorably than at-home religious exercise, permitting hair salons, retail stores, personal care services, movie theaters, private suites at sporting events and concerts, and indoor restaurants to bring together more than three households at a time." 593 U.S. at 63. Concluding that the restrictions triggered strict scrutiny, the Court reasoned that "[i]t is no answer that a State treats some comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Id* at 62. (citation omitted). The Court further instructed that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id*. (citation omitted).

Like the regulations at issue in *Tandon*, the WLAD likely is not neutral or generally applicable. While Plaintiffs argue the WLAD treats comparable secular activity more favorably than religious exercise in three respects, *see* ECF No. 37 at 12-13, it is sufficient to scrutinize just one of the WLAD's exemptions. *Tandon*, 593 U.S. at 62 ("[G]overnment regulations are not neutral and generally applicable … whenever they treat *any* comparable secular activity more favorably than religious exercise.") (citation omitted). The WLAD exempts employers with fewer than eight employees, RCW § 49.60.040(11), putting for-profit, non-religious organizations on unequal footing with Plaintiff and other religious organizations like it. That certain secular employers are shielded from WLAD enforcement and religious organizations are not—except with respect to ministerial positions—likely undermines the statute's stated interest in "eliminat[ing]" and "prevent[ing]" discrimination. RCW § 49.60.010; *see, e.g.*, *Fulton v. City of Philadelphia, Pennsylvania*, 593 U.S. 522, 534 (2021) ("A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.") (citing *Lukumi*, 508 U.S. at 542-46); *cf. id.* at 624 ("Exceptions for one means strict scrutiny for all.") (citation omitted) (Gorsuch, J., concurring in the judgment).

Defendants take a different view, noting that "the WLAD treats religious employers with fewer than eight employees exactly as it treats comparable secular

employers—they are both exempt." ECF No. 36 at 19. For purposes of examining whether a law is neutral or generally applicable, however, it is insufficient to examine how the law treats, for example, a religious employer with five employees and a secular employer with five employees. Since "[c]omparability is concerned with the risks various activities pose," *Tandon*, 593 U.S. at 62 (citation omitted), the Court must instead assess whether the WLAD treats Plaintiff—a religious organization—differently than secular employers with fewer than eight employees. *See id.* at 63-64 (considering as "comparable" public businesses, such as hair salons and movie theaters, and "at-home religious exercise"); *Roman Cath. Diocese of Brooklyn*, 592 U.S. at 17 ("In a red zone, while a synagogue or church may not admit more than 10 persons, businesses categorized as 'essential' may admit as many people as they wish. And the list of 'essential' businesses includes things such as acupuncture facilities, camp grounds, garages, as well as many whose services are not limited to those that can be regarded as essential, such as all plants manufacturing chemicals and microelectronics and all transportation facilities. While attendance at houses of worship is limited to 25 persons, even non-essential businesses may decide for themselves how many persons to admit. These categorizations lead to troubling results.") (internal citation omitted). Because it does, the WLAD likely is not neutral and generally applicable. The Court rejects Defendants' narrowing of *Tandon*. *See, e.g.*, *Hart v. Massanari,* 266

F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it.").

*2. Strict Scrutiny*

To withstand strict scrutiny, a law must "advance interests of the highest order" and be "narrowly tailored in pursuit of those interests." *Lukumi*, 508 U.S. at 546 (quotations and citation omitted). The "government has the burden to establish that the challenged law satisfies strict scrutiny." *Tandon*, 593 U.S. at 62.

Defendants address strict scrutiny as follows: "Preventing discrimination is a compelling government interest, and the best way to prevent discrimination is to prohibit it while honoring the ministerial exception from the First Amendment as set forth by the U.S. Supreme Court. The WLAD does exactly that." ECF No. 36 at 23. However, as Plaintiff correctly observes, "[f]or over 70 years Washington advanced its interests while exempting nonprofit religious organizations." ECF No. 33 at 24; *see Woods*, 481 P.3d at 1064 ("As originally enacted, WLAD exempted from the definition of 'employer' 'any religious, charitable, educational, social or fraternal association or corporation, not organized for private profit.'") (citation omitted). Because there is a "less restrictive measure[]" to advancing Defendants' interest, the WLAD likely fails the "tailoring prong of the strict scrutiny test." *Fellowship of Christian Athletes*, 82 F.4th at 694 (citation omitted).

The WLAD likely is also impermissibly underinclusive. *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (a law "is not narrowly tailored if it is either underinclusive or overinclusive in scope"). "A law is underinclusive when it 'plac[es] strict limits on' certain activities while allowing other activities that 'create the same problem.'" *Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015)). Notwithstanding its stated interest in "eliminat[ing]" and "prevent[ing]" discrimination, RCW § 49.60.010, the WLAD exempts employers with less than eight employees, *id.* at § 49.60.040(11). By contrast, the protections afforded to religious organizations post-*Woods* are much narrower.[5] Because the WLAD places stricter limits on religious activities than it does secular activities that "create the same problem," *Reed*, 576 U.S. at 172, the law is likely underinclusive. The Court finds the WLAD likely fails to satisfy strict scrutiny.

**B. Irreparable Harm**

It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman*

---

[5] And, again, it is of no moment that the WLAD "treats some comparable secular businesses … as poorly as or even less favorably than the religious exercise at issue," *Tandon*, 593 U.S. at 62 (citation omitted).

*Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)); *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted). The Ninth Circuit has instructed that "'[i]rreparable harm is relatively easy to establish in a First Amendment case' because the party seeking the injunction 'need only demonstrate the existence of a colorable First Amendment claim.'" *Fellowship of Christian Athletes*, 82 F.4th at 694-95 (quoting *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022)).

As discussed above, Plaintiff has demonstrated a colorable claim that the WLAD, as enforced by Defendants, violates its Free Exercise rights and would continue to violate these rights absent an injunction. This is sufficient to establish likelihood of irreparable harm. *See id.*

Nevertheless, the Court finds two interrelated considerations further satisfy this inquiry. First, Defendants' express refusal to disavow enforcement of the WLAD as it relates to all but two of Plaintiff's open positions—which seemingly is in tension with their stated reason for disavowing enforcement as to two of Plaintiff's open positions, as the Court previously discussed, *see* ECF No. 39 a 5-6—suggests Plaintiff is likely to suffer an irreparable injury if it engages in the process of hiring for these positions in a way that is consistent with its religious

views. Second, Plaintiff argues that if it "is forced to hire those who do not [share its religious views], or those who do not adhere to those views, it may eventually be extinguished from public life." ECF No 34 at 5. This "hamper[ing]" of Plaintiff's ability to hire staff consistent with its religious beliefs likely "constitut[es] an enduring harm that will irreparably risk [Plaintiff's] continued existence[.]" *See Fellowship of Christian Athletes*, 82 F.4th at 695 (citation omitted). The Court finds that Plaintiff is likely to suffer irreparable harm absent a preliminary injunction.

**C. Balance of Equities and Public Interest**

Finally, the balance of equities and public interest in this case favors issuing a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (explaining that when the government is a party, the last two factors merge). Because Plaintiff has "'raised serious First Amendment questions,' that alone 'compels a finding that the balance of hardships tips sharply in [its] favor.'" *Fellowship of Christian Athletes*, 82 F.4th at 695 (quoting *Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc)). Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted).

The Court thus finds all four *Winter* factors favor the grant of preliminary injunctive relief.

**CONCLUSION**

Because all four *Winter* factors favor the grant of preliminary injunctive relief, the Court grants Plaintiff's Motion for Preliminary Injunction, ECF No. 14. However, nothing in this order is to be construed as a comment on the ultimate merits of this action. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits[.]") (citations omitted); *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (noting "[a] preliminary injunction, of course, is not a preliminary adjudication on the merits") (citations omitted).

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Preliminary Injunction, **ECF No. 14**, is **GRANTED.**

2. Pursuant to Fed. R. Civ. P. 65(a), Defendants and their officers, agents, servants, employees, attorneys, and any person in active concert or participation are **PRELIMINARILY ENJOINED** from enforcing (including through investigations), the WLAD against Plaintiff for preferring and hiring only coreligionists—those who

agree with and will adhere to the religious tenets and behavior requirements—for its non-ministerial positions.

3. No bond shall be required. Fed. R. Civ. P. 65(c).

**IT IS SO ORDERED.** The Clerk's Office is directed to file this order and provide copies to counsel.

DATED November 1, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE